# NO. 20-1681

### IN THE
### UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

Neal Bissonnette, Individually and on behalf of all others similarly situated,
Tyler Wojnarowski, Individually and on behalf of all others similarly situated,

*Plaintiffs-Appellants*,

v.

LePage Bakeries Park St., LLC,
C.K. Sales Co., LLC,
Flowers Foods, Inc.,

*Defendants-Appellees*.

On appeal from an order and judgment of the
United States District Court for the District of Connecticut,
Civil Action No. 3:19-cv-00965 (KAD)

### PLAINTIFFS-APPELLANTS' OPENING BRIEF

Harold L. Lichten, Esq.
Matthew Thomson, Esq.
Zachary L. Rubin, Esq.
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
hlichten@llrlaw.com
mthomson@llrlaw.com
zrubin@llrlaw.com
Attorneys for *Plaintiff-Appellants*

# <u>TABLE OF CONTENTS</u>

JURISDICTIONAL STATEMENT ..........................................................................1

STATEMENT OF THE ISSUES FOR REVIEW ...................................................1

STATEMENT OF THE CASE................................................................................2

     I.    Description of the Nature of the Action ...............................................2

     II.    Procedural History...............................................................................3

SUMMARY OF THE ARGUMENT ....................................................................4

STATEMENT OF FACTS ...................................................................................8

     I.    Plaintiffs' Amended Complaint and Defendants' Answer ..................8

     II.    Exhibits Submitted in Relation to Defendants' Motion to
Compel Arbitration................................................................................10

     III.    Defendants' Prior Representations regarding their
Transportation Business .......................................................................14

     IV.    Additional Factfinding Related to this Same "Class" of
Transportation Workers.........................................................................15

STANDARD OF REVIEW ................................................................................19

ARGUMENT ......................................................................................................19

     I.    Workers who are Actually Engaged in the Movement of
Interstate Commerce, or are Closely Related Thereto, are
Exempt from the Federal Arbitration Act. .........................................19

     II.    The District Court Failed to Identify and Apply the Proper
Definition of a "Transportation Worker"............................................26

     III.    The Decision Should Also be Reversed because the District
Court Failed to Apply the Appropriate Standard for a
Motion to Compel Arbitration.............................................................31

CONCLUSION ...................................................................................................41

CERTIFICATE OF COMPLIANCE ........................................................43

CERTIFICATE OF SERVICE ...............................................................44

# TABLE OF AUTHORITIES

**Cases**

Bacon v. Avis Budget Grp., Inc.,
    357 F. Supp. 3d 401 (D.N.J. 2018) .................................................................. 41

Bensadoun v. Jobe-Riat,
    316 F.3d 171 (2d Cir. 2003) ........................................................................... 32

Berkeley Cty. Sch. Dist. v. Hub Int'l Ltd.,
    944 F.3d 225 (4th Cir. 2019) ......................................................................... 31

Bokanoski et al. v. Lepage Bakeries Park Street, LLC et al.,
    No. 15-CV-00021 (JCH) ......................................................................... 14, 35

Carr v. Flowers Foods, Inc.,
    2019 WL 2027299 (E.D. PA May 7, 2019) .................................................. 17

Circuit City Stores, Inc. v. Adams,
    532 U.S. 105 (2001) ............................................................................... passim

Erving v. Virginia Squires Basketball Club,
    468 F.2d 1064 (2d Cir. 1972) .................................................................... 5, 20

Guidotti v. Legal Helpers Debt Resolution, L.L.C.,
    716 F.3d 764 (3d Cir. 2013) .......................................................................... 40

Guydan v. Aetna, Inc.,
    544 F.3d 376 (2d Cir. 2008) .......................................................................... 31

Harper v. Amazon.com Servs. Inc.,
    No. CV 19-21735 (FLW), 2020 WL 4333791 (D.N.J. July 28,
    2020) ............................................................................................................. 40

Hill v. Rent-A-Center,
    398 F.3d 1286 (11th Cir. 2005) ......................................................... 22, 23, 33

Int'l Bhd. of Teamsters Local Union No. 50 v. Kienstra Precast, LLC,
    702 F.3d 954 (7th Cir. 2012) ........................................................................ 27

Katz v. Cellco P'ship,
    794 F.3d 341 (2d Cir. 2015) .......................................................................... 19

Kowalewski v. Samandarov,
    590 F. Supp. 2d 477 (S.D.N.Y. 2008) .................................................... 21, 28

Lamoureux v. AnazaoHealth Corp.,
    2012 WL 12537933 (D. Conn. Sept. 24, 2012) ...........................................35

Laterra v. GE Betz, Inc.,
    2017 WL 3485505 (D. Conn. Aug. 14, 2017)...............................................35

Lenz v. Yellow Transp., Inc.,
    431 F.3d 348 (8th Cir. 2005) ...................................................... 24, 25, 27, 28

Martins v. Flower Foods, Inc.,
    2020 WL 5223772 (M.D. Fla. Mar. 12, 2020) ................................. 15, 16, 18

Neff v. Flowers Foods, Inc.
    No. 5:15-cv-00254, 2019 WL 10750005 (May 16, 2019) ..................... 18, 37

Neff v. Flowers, Inc.,
    2018 WL 10374594 (D. Vt. Nov. 14, 2018) ................................................17

New Prime Inc. v. Oliveira,
    -- U.S. --, 139 S. Ct. 532 (2019) ................................................. 20, 28, 30, 41

Nicosia v. Amazon.com, Inc.,
    834 F.3d 220 (2d Cir. 2016) .......................................................................32

Noll v. Flowers Foods, Inc.,
    442 F. Supp. 3d 345 (D. Me. Jan. 29, 2020) ........................................ passim

Opals on Ice Lingerie v. Bodylines Inc.,
    320 F.3d 362 (2d Cir. 2003) .......................................................................19

Palcko v. Airborne Express, Inc.,
    372 F.3d 588 (3d Cir. 2004) ......................................................... 5, 20, 23, 30

Rehberg v. Flowers Baking Co. of Jamestown, LLC,
    162 F. Supp. 3d 490 (W.D.N.C. 2016)....................................... 16, 17, 37, 39

Richard v. Flower Foods, Inc.,
    222 F. Supp. 3d 516, 520-22 (W.D La. 2016)..............................................17

iv

Rittmann v. Amazon.com, Inc.,
    971 F.3d 904 (9th Cir. 2020) ................................................................ passim

Saab Cars USA, Inc. v. United States,
    434 F.3d 1359 (Fed. Cir. 2006) ....................................................................36

Schnabel v. Trilegiant Corp.,
    697 F.3d 110 (2d Cir. 2012) ................................................................ 19, 31

Singh v. Uber Techs. Inc.,
    939 F.3d 210 (3d Cir. 2019) .........................................................................40

Smith v. Allstate Power Vac, Inc. et al.,
    2020 WL 5086584 (E.D.N.Y. Aug. 26, 2020) .............................................21

Soares v Flower Foods, Inc.,
    320 F.R.D 464 (N.D Cal. 2017) ...................................................................17

Suburban Leisure Ctr., Inc. v. AMF Bowling Prods., Inc.,
    468 F.3d 523 (8th Cir. 2006) .......................................................................32

Tenney Eng'g, Inc. v. United Elec. Radio & Mach. Workers of Am.,
    (U.E.) Local 437,
    207 F.2d 450 (3d Cir. 1953) ................................................................ passim

U.S. Nutraceuticals, LLC v. Cyanotech Corp.,
    769 F.3d 1308 (11th Cir. 2014) ...................................................................31

Valdes v. Swift Transp. Co., Inc.,
    292 F. Supp. 2d 524 (S.D.N.Y. 2003) .........................................................21

Waithaka v. Amazon.com, Inc.,
    966 F.3d 10 (1st Cir. 2020)................................................................... passim

Wallace v. Grubhub Holdings, Inc.,
    970 F.3d 798 (7th Cir. 2020) .......................................................................23

Zambrano v. Strategic Delivery Solutions, LLC,
    2016 WL5339552 (S.D.N.Y. Sept. 22, 2016) .............................................21

**Statutes**

28 U.S.C. § 1291 ...............................................................................................1

28 U.S.C. § 1331 ........................................................................................1

28 U.S.C. § 1367 ........................................................................................1

29 U.S.C. § 207(a) .....................................................................................3

C.G.S. § 31-72 ...........................................................................................3

C.G.S. § 31-76C .........................................................................................3

Fair Labor Standards Act ("FLSA"),
    29 U.S.C. § 216(b) ..........................................................................1, 3

Fed. R. Civ. P. 23 .......................................................................................3

Federal Arbitration Act's ("FAA"),
    9 U.S.C. § 1 ............................................................................... passim

**Other Authorities**

*Incidental*, Lexico,
    https://www.lexico.com/en/definition/incidental (accessed
    October 5, 2020) ............................................................................34

## JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction over Plaintiffs' claims pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331. JA14 at ¶9. The district court also had supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. JA14 at ¶10. The district court granted Defendants' motion to dismiss or, in the alternative, to compel arbitration and entered final judgment in favor of Defendants by order dated May 15, 2020. SA1-15; SA16. The Plaintiffs timely filed a notice of appeal on May 26, 2020. JA416. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES FOR REVIEW

1. Whether the district court erred in concluding that the class of workers to which Plaintiffs belong are not subject to the Federal Arbitration Act's ("FAA") Section 1 transportation worker exemption (9 U.S.C. § 1), despite having found that they are personally engaged in the transportation of goods in interstate commerce.

2. Whether the district court applied the correct standard of review applicable to a motion to compel arbitration, including whether the lower court impermissibly drew factual inferences in favor of the moving party and made findings of fact without conducting an evidentiary hearing.

## STATEMENT OF THE CASE

### I.    Description of the Nature of the Action

Plaintiff-Appellants Neal Bissonnette and Tyler Wojnarowski ("Plaintiffs" or "Plaintiff-Appellants") initiated this action in the District Court of Connecticut on June 20, 2019, alleging violations of Connecticut and federal wage and hour laws and a claim of unjust enrichment. JA1-11. Plaintiffs filed their amended complaint on August 19, 2019 (the operative complaint). JA12-23.

Since 2017 and 2018, Plaintiffs have been delivering brand name baked goods to stores and supermarkets on behalf of Defendants Lepage Bakeries Park St., LLC, C.K. Sales., LLC, and Flowers Foods, Inc. (together "Defendants"), while being classified as independent contractors. JA13 at ¶¶ 2-3.

Plaintiffs work full time delivering Defendants' branded bakery goods from various regional terminals to supermarkets and other outlets within the state of Connecticut. JA13 at ¶¶ 30-33. Plaintiffs work at least 40 hour per week, and often as many as 55 hours per week. Id. at ¶¶ 32-33. Plaintiffs do not make deliveries for any company other than Defendants. Id. at ¶ 33. Defendants deduct significant amounts from the pay of Distributors. For example, Distributors are forced to pay hundreds of dollars each week to lease Defendants trucks and to pay so-called "distribution rights." Id. at ¶ 36. Because Defendants treat Plaintiffs as non-employee independent contractors, Defendants do not pay Plaintiffs any overtime

premium for those hours worked over forty per week. JA18 at ¶ 36.

Plaintiffs asserted their claims on behalf of themselves and on behalf of all others similarly situated in the State of Connecticut under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) and under Fed. R. Civ. P. 23 (as to their state wage law claims). JA18-19 at ¶¶ 38-43. Specifically, Plaintiffs allege that they were employees entitled to the protections of state and federal wage laws, and they seek to recover unpaid or withheld wages in violation of C.G.S. § 31-72, unpaid overtime wages under C.G.S. § 31-76C and 29 U.S.C. § 207(a), and for unjust enrichment. JA19-23.

## II. Procedural History

Defendants answered the Amended Complaint on September 3, 2019 and subsequently moved to dismiss or, in the alternative, to compel arbitration. JA24-44; JA45. On October 9, 2020, Plaintiffs opposed Defendants' motion. JA160-189. The Honorable Kari A. Dooley held oral argument on December 5, 2020. JA245; JA418.

On May 14, 2020, the Court entered an Order and Opinion granting Defendants' motion to dismiss and to compel arbitration. SA1-15. The Court analyzed whether the Plaintiffs were exempt from the FAA and concluded that "[a] review of the case law reveals that typically those 'engaged in the movement of goods in interstate commerce' fall within the statutory heartland.'" SA9, quoting

Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 112 (2001). The Court found, that "the Plaintiffs check this box given that Defendants' products are manufactured out of state (*see* Defs.' Mem. at 18 n. 10) and are delivered to warehouses in-state and ultimately to store shelves by Plaintiffs." SA9. However, despite finding that Plaintiffs' work falls within the transportation worker exemption's "statutory heartland," the Court ultimately concluded that Plaintiffs were not transportation workers because "Plaintiffs' Distributor Agreements [allegedly] evidence a much broader scope of responsibility that belies the claim that they are only or even principally truck drivers." SA9. By order dated May 15, 2020, the Court entered final judgment in favor of Defendants. SA16. The Plaintiffs timely filed a notice of appeal on May 26, 2020. JA416.

## SUMMARY OF THE ARGUMENT

The Federal Arbitration Act ("FAA") generally provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA, however, exempts certain contracts from its scope, specifically the employment contracts of "seamen, railroad employees, [and] any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1; Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 118-19 (2001). The residual clause of "any other class of workers engaged in… interstate commerce" exempts from the FAA

4

"contracts of employment of transportation workers…." Circuit City, 532 U.S. at 119.

In this Action, the District Court correctly observed that Plaintiffs delivered goods within the flow of interstate commerce, even though they themselves did not cross state lines. SA9. However, the lower court erred in its ruling that Plaintiffs—who literally work full-time driving commercial delivery trucks full or breads and baked goods in the flow of interstate commerce—were not "transportation workers" exempt from the FAA. This error supports reversal.

A number of Circuits have addressed the definition of a transportation worker for purposes of the FAA's Section 1 exemption with varying but similar conclusions. In its decision in Erving v. Virginia Squires Basketball Club, 468 F.2d 1064 (2d Cir. 1972), this Court cited favorably to the definition of a Section 1 "transportation worker" as including those "classes of workers who are actually engaged in the movement of interstate or foreign commerce or in work so closely related thereto as to be in practical effect part of it." Erving, 468 F.2d at 1069 (citing Tenney Eng'g, Inc. v. United Elec. Radio & Mach. Workers of Am., (U.E.) Local 437, 207 F.2d 450, 452 (3d Cir. 1953)).[1]

---

[1] See also Palcko v. Airborne Express, Inc., 372 F.3d 588, 593 (3d Cir. 2004), cert. denied 543 U.S. 1049 (2005); Rittmann v. Amazon.com, Inc., 971 F.3d 904, 911 (9th Cir. 2020) (describing that a worker either had to directly deliver packages which were in the stream of interstate commerce or engage in work "so closely related to interstate and foreign commerce as to be in practice effect part of it" to qualify for the Section 1 residual exemption) (citing Palcko,

The lower court in this case failed to identify and apply the correct "transportation worker" definition. As discussed above, the District Court agreed that Plaintiffs were personally engaged in the interstate transportation of goods because they drove delivery trucks full of Defendants' baked good products to stores and retailers, and many of the baked goods originated out of state. SA9. However, the lower court then failed to apply the proper definition of a "transportation worker" who is exempt from the FAA, essentially holding that because the Defendants' form contracts with Plaintiffs purport to require them to undertake certain sales and marketing responsibilities, they were either not the type of transportation workers that Congress intended to exempt from forced arbitration in Section 1 or their alleged additional duties "transform[ed]" them into something other than a transportation worker within the scope of the exemption. SA13. The District Court's analysis neither properly analyzes nor applies the correct test for determining the Section 1 exemption. Rather, to come within the exemption the "class of workers" involved must actually be engaged in the transportation of goods in interstate commerce or "so closely related" to such transportation as to fall within the exemption (and such involvement must not be just "incidental").

---

372 F.3d at 593; Waithaka v. Amazon.com, Inc., 966 F.3d 10, 20 n. 9 (1st Cir. 2020) (noting that "[s]ome of our sister circuits have described Section 1 as covering workers 'who are actually engaged in the movement of interstate or foreign commerce or in work so closely related thereto as to be in practical effect part of it.'").

See Rittmann, 971 F.3d at 911; see also n. 1 supra.   The District Court's failure to identify and apply that definition requires reversal.

Reversal is also appropriate because regardless of the "transportation worker" definition that informed the lower court's decision, the District Court failed to apply the correct standard applicable to a motion to compel arbitration. The District Court's findings regarding the nature of Plaintiffs' transportation duties were premature and are not supported by the record.  Indeed, the record reveals that Plaintiffs operated trucks that were commercial motor vehicles at least five days per week to deliver Defendants' bakery products from the company's warehouses to the supermarkets, retail outlets, and institutions that sell or utilize the product.  Plaintiffs and similar delivery drivers are Defendants' exclusive means for transporting their product from their warehouse location to their retailer customers.  In other words, without the Plaintiffs and their trucks to continuously deliver fresh product to Flowers' customers five days per week, Defendants would essentially have no business at all, because its products would remain at its warehouse and its operations would come to a standstill. While it may be that the drivers had other related duties, such as stocking shelves and entering product orders for their assigned customers, such duties did not negate Plaintiffs' detailed assertions (supported by many other cases involving Flowers Foods), that actual delivery of product constituted a substantial part of their jobs.  In any event, given

the very limited record in this case, where Defendants filed a motion to dismiss, and where there was no discovery, the record did not permit the lower court to find that the Defendants had shown that there were no disputes of material fact, such that the determination could be made as a matter of law that Plaintiffs were not transportation workers under Section 1 of the FAA. This alone requires reversal.

## STATEMENT OF FACTS

### I.    Plaintiffs' Amended Complaint and Defendants' Answer

The Plaintiffs filed an Amended Class Action Complaint on August 19, 2019.  JA12-23. The Amended Complaint describes in detail how Plaintiffs' work consists primarily of picking up products at the Defendants' warehouse and operating a commercial motor vehicle to deliver those products to stores and other retail outlets within a specified geographical territory assigned by Defendants.  For example, Plaintiffs' amended complaint contains the following assertions:

- The Plaintiffs performed delivery of baked goods products on behalf of Defendants in Connecticut.  JA13 at ¶¶ 2-4.

- "Defendants utilize a large workforce of delivery drivers in Connecticut to deliver baked goods and stock the shelves at retail locations in the state." JA15 at ¶ 14.

- Before it classified him as an independent contractor, Plaintiff Bissonnette performed the same delivery work for Defendants as an employee. JA15 at ¶ 15.

- Plaintiffs deliver baked goods to retailers and other customers in Connecticut, thereby providing an integral service to the baked goods business of Defendants.  JA15 at ¶ 18.

- The Plaintiffs and other distributors pick up "products at a warehouse that have been delivered from one of Defendants' commercial bakery locations, and then transport those goods within the flow of interstate commerce by delivering them to various stores and retail locations." JA15 at ¶ 18.

- Defendants require distributors to return to the warehouse each day after completing their deliveries so that they may "upload" data to Defendants' system and to transport stale items from the shelves back to the warehouse. JA16 at ¶ 26.

- Plaintiffs pick up and drop off products at the Defendants' warehouse in Waterbury, Connecticut approximately five days per week, and perform their deliveries within a territory designated by Defendants and at retail locations that Defendants frequently visit to review Plaintiffs' job performance. JA17 at ¶ 30.

- "Based on all the hours that Defendants require Plaintiffs to spend making deliveries and servicing their route(s), there is little or no time left for Plaintiffs to make deliveries for any other company besides Defendants." JA17 at ¶ 31.

- Distributors such as Plaintiffs "work at least forty hours per week delivering the baked goods for defendants" and "[t]his work mainly consists of driving vehicles to stores within a territory designated by Defendants, delivering Defendants' products to these stores, and arranging the products on the shelves according to Defendants' standards." JA17 at ¶ 33.

In their Answer to the Amended Complaint, Defendants admit that Plaintiffs "delivered baked goods to customers in Connecticut", JA25 at ¶ 3, and that Defendant CK Sales contracts with distributors in Connecticut who distribute certain baked goods to customers, including various stores and retail locations, from warehouses where Distributors pick up the product. JA27 at ¶ 18. As to the allegations in Plaintiffs' complaint detailing the number of hours and days

Plaintiffs spend delivering Defendants' products, Defendants responded by saying they "are without knowledge" as to the truth of those matters. JA29 at ¶¶ 32-33. Defendants also pleaded that Plaintiffs are exempt from FLSA overtime protections because "Plaintiffs and those individuals Plaintiffs seek to represent drive or drove vehicles … subject to transporting certain goods originating out of state, and because there is a practical continuity of movement of these goods until they reach retail customers and other customers." JA36, Tenth Defense.

## II.   Exhibits Submitted in Relation to Defendants' Motion to Compel Arbitration

Shortly after Plaintiffs filed their Amended Complaint, Defendants filed their Motion to Dismiss and/or to Compel Arbitration. JA45. Defendants attached to the motion Plaintiffs' so-called Distributor Agreement and a Declaration by the Distributor Enablement Operations Coordinator for LePage Bakeries, a wholly-owned subsidiaries of Flowers Foods. JA78-159.

The Declaration briefly describes the relationship between Flowers Foods and its two subsidiaries. JA78 at ¶¶ 1-2. The Declarant states that Defendants use a "direct-store-delivery" ("DSD") model whereby it contracts with so-called independent contractor distributors to distribute its bakery products to customers in a defined territory. JA78 at ¶ 3. In one paragraph, the affidavit lays out the alleged duties of Plaintiffs and other distributors, but does not address at all, let alone quantify, how many days or hours Plaintiffs spend operating commercial motor

10

vehicles to deliver commercial baked goods to their assigned stores.  JA79-80 at ¶ 8.[2]  The Declaration further states that Plaintiffs do not cross state lines to deliver goods, though Defendants concede that the goods being delivered come from out-of-state.  JA80 at ¶ 10.  On the face of the Declaration, the Declarant does not purport to have any direct knowledge of Plaintiffs' day-to-day activities.

Defendants' motion to compel arbitration also included reference to Plaintiffs' Distributor Agreements (see Distributor Agreement at JA85-159).  The Agreements contain numerous provisions describing Plaintiffs' primary duties as distributors and delivery drivers.  The title of the document itself— "Distributor Agreement" —sheds light on the purpose of Plaintiffs' "Distributor" position, and the first page of the document explains (in Defendants' terms) that Plaintiffs will be operating a "distributorship business."  JA86.  Consistent with what other courts have held in connection with the Flowers Foods distributor arrangement, see discussion, infra, there is overwhelming evidence that delivering bakery products within the flow of interstate commerce is a primary or integral duty of the distributors, and the significant restrictions imposed by the Distributor Agreement make it far from clear whether the distributor has any bona fide duties with respect to sales or marketing.

---

[2]     Aside from one paragraph generally discussing the duties of a distributor, the rest of the Declaration relates to issues not relevant to the transportation worker exemption raised in this appeal.

Specifically, the Agreement designates Plaintiffs (the DISTRIBUTOR) as responsible for "maintaining an adequate and fresh supply" of products in the stores at which they delivery, and Plaintiffs must ensure "proper service ***and delivery*** to all Outlets in the territory." JA87 at § 2.6. (emphasis added). Plaintiffs also must agree that they will obey all motor vehicle and Department of Transportation rules. Id. The contract obligated Plaintiffs to maintain a "Delivery Vehicle," stating that "DISTRIBUTOR is responsible for obtaining DISTRIBUTOR'S own delivery vehicle(s) and purchasing adequate insurance thereon…. DISTRIBUTOR agrees to keep the delivery vehicle(s) clean at all times and in a manner consistent with the professional image customers and the public associates with COMPANY, and to ***maintain the delivery vehicle(s) in such condition as to provide safe, prompt, and regular service to all customers.***" JA93 at § 9.1 (emphasis added). If the Distributor is unable to perform deliveries on a given day, Defendants reserve the right to perform the deliveries for him, charging him a fee for "fuel, truck rental and travel costs." JA96 at §14.2. Accordingly, it is clear that the "delivery" of Defendants' interstate goods are a substantial and primary part of the job of a Distributor.

Section 13.2 of the Agreement requires the distributor to adhere to all promotions and feature pricing with respect to major chain accounts, and the Distributor is required to designate Defendants to act as his agent to negotiate

12

pricing and space with the chain stores. JA90-91, 95 at §§ 6.1, 13.2.  Finally,

Exhibit B to the agreement list those products distributor can allegedly sell to the

chain stores, with no other products being authorized.  JA108.  Section 8.3 of the

Agreement authorizes the company—not the distributor—to bill the chain store,

and it is the  company that can decide whether to give credit to the store: the

distributor must go along with any credit decision.  JA92 at § 8.3.  Rather than

independently marketing products to customers, Distributor must "cooperate with

COMPANY on its marketing and sales efforts," JA89 at § 5.1, using "COMPANY

initiated advertising material."  JA95 at § 13.1.  Plaintiffs may not engage in any

marketing activity without "the prior written consent of COMPANY."  JA101 at

§19.2.  Moreover, Plaintiffs "may not sell products in the Territory which are

competitive with the [Defendants'] Products or Authorized Products."  JA89 at §

5.1

      These provisions—particularly when viewed in the light most favorable to

Plaintiffs—demonstrate that the responsibility for "sales efforts" belongs

exclusively to Defendants, and that Plaintiffs did not have authority to make

"sales" in the traditional sense, as all marketing, customer negotiations, pricing,

promotions, billing, and decisions on which products to sell are handled by

Defendants.

13

**III.    Defendants' Prior Representations regarding their Transportation Business**

Additional documents submitted in relation to the motion to compel arbitration included an argument by these same Defendants in an earlier proceeding in which they argued vehemently that they were a transportation company, because they sought to take advantage of the federal statute deregulating the trucking industry.  JA372.  Specifically Defendants asserted that LePage Bakeries and CK Sales "are a motor carrier of property" because "through their own employees and contracting with independent contractor franchisees, they deliver products in the stream of interstate commerce to customers in Connecticut and throughout New England" and Defendants "use motor vehicles as defined in the statute."  JA367 (Sur-Reply, Dkt. 48 at 3, quoting D's Mot. for Summ. J. in Bokanoski et al. v. Lepage Bakeries Park Street, LLC et al., No. 15-CV-00021 (JCH), see JA372). Relatedly, the record in this matter contains a picture of Plaintiff Bissonnette's large delivery truck, which is emblazoned in large letters with the name "Lepage Bakeries, Auburn, Maine" and with the United States Department of Transportation number for Lepage Bakeries just below that signage. JA407-408.

**IV.    Additional Factfinding Related to this Same "Class" of Transportation Workers**

The decisions in similar proceedings involving Defendants are ***factually*** relevant here, because Section 1 of the FAA does not apply to contracts of employment for "any other ***class*** of workers engaged in … interstate commerce," thus the inquiry does not focus so much a particular Plaintiff, but rather on the "class of workers" to which they belong.  Waithaka v. Amazon.com, Inc., 966 F.3d 10, 17 (1st Cir. 2020) (holding that the question under the Section 1 exemption is "does [plaintiff] belong to a 'class of workers engaged in … interstate commerce'").  At the very least, the "class of workers" to which the Plaintiffs belong are Flowers Foods workers who distribute Flowers' bakery products under Defendants' "direct-store-delivery" ("DSD") model.  Several court decisions in which the factual record was far more developed describe that model in significant detail, consistent with the facts asserted in Plaintiffs' Complaint and the limited record that was before the lower court in this Action.

For example, in Martins v. Flower Foods, Inc., 2020 WL 5223772 (M.D. Fla. Mar. 12, 2020), a federal district court has already held that Defendants' distributors were transportation workers subject to the Section 1 exemption.  In that case, the court commented; "in Flower Foods' own words, Plaintiffs' primary duty as distributors is to 'sell and distribute certain Flower Food products within a

defined geographical footprint.'" Id. at * 5 (internal citations omitted).[3] Thus,

"[s]imply put, Plaintiffs are engaged in the transportation industry because their

'mission as distributors is to move goods'", and they work for the "distribution

arm of Flower Foods, which means they are employed in the transportation

industry." Id. (internal citations omitted).[4]

    In their Brief in the lower court, Plaintiffs also cited to nearly identical

litigation involving the Defendant Flower Foods in a case called Rehberg v.

Flowers Baking Co. of Jamestown, LLC, 162 F. Supp. 3d 490, 501-03 (W.D.N.C.

2016). JA368. The court in Rehberg made findings regarding the Distributors'

duties:

> The distributor position … entails picking up Flowers bakery products from
> [one of several warehouses] and delivering them to customers in a defined

---

[3]    The decision in Martins is currently on appeal at the Eleventh Circuit. See Appeal No. 20-11378.

[4]    In Noll v. Flowers Foods, Inc., 442 F. Supp. 3d 345 (D. Me. Jan. 29, 2020), the plaintiffs belonged to the same class of workers—distributors working under Defendants' DSD model, just like Plaintiffs here. For purposes of the substantive FLSA claims asserted in Noll, the court found that this same class of workers had very little involvement with sales. Id. at 351–52. Specifically, the court found, as Plaintiffs allege here, that there was a serious factual dispute as to how much sales work—if any—was conducted by the plaintiffs, since the prices at both ends were determined by the defendants and defendants "leave them little to no discretion to deviate from the suggested orders preloaded on their handheld computers". Id. at 352. The court emphasized that "[a]pproximately 95% of total sales are generated by large chain accounts like Hannaford and Walmart, which accounts acquire products on a credit basis through separate agreements with Defendants", and that Defendants have "primary responsibility for setting the terms for pricing, products, and volumes, as well as setting delivery expectations and customer requirements for these large accounts." Id. The court next addressed the quantity of time plaintiffs normally spend making deliveries: "[p]laintiffs make deliveries five days a week, and on the other two days of the week they perform 'recalls' or 'pull-ups' (two alternative names for the same thing) to adjust the stock on the shelves in the major customers' stores." Id. at 359.

geographic territory…. Distributors' job duties including delivering Flowers products to customers, restocking shelves with fresh product, removing stale product, and—to an extent <u>disputed by the parties</u>—making sales of Flower products to account customers.

<u>Rehberg</u>, 162 F. Supp. at 493-94 (emphasis supplied).[5]   The court concluded that "there is scant evidence" that sales are distributors' primary function.  <u>Id.</u> at 501; <u>see</u> <u>also</u> <u>Neff v. Flowers, Inc.</u>, 2018 WL 10374594 at *1 (D. Vt. Nov. 14, 2018) ("This case concerns claims by bakery distributor drivers who perform delivery services for defendants. Plaintiffs are sometimes known as 'route drivers' and may be seen driving the familiar bakery delivery vans or other vehicles.").[6]

---

[5]    The court further noted that Plaintiffs asserted that they "begin their workdays by arriving at their respective warehouses to load products onto their trucks, which [defendants'] employees have sorted, organized, and packed for Distributors", and then "proceed on their delivery route, as defined by the territory set forth in their Distributor Agreements." <u>Id.</u> at 494.  The court also found that distributors "are required to deliver products to retailers within certain time frames every service day…." <u>Id.</u>  The <u>Rehberg</u> court also described how each Distributor used a box truck to deliver baked goods to the customers on their routes on five days per week using large box trucks with a weight over 10,001 pounds, and which are thereby subject to the Motor Carrier Act. <u>Id.</u> at 495.

[6]    Other nearly identical cases relating to Flower Foods and their subsidiaries have made similar factual findings on records far more developed than is the case here.  <u>See</u> <u>Richard v. Flower Foods, Inc.</u>, 222 F. Supp. 3d 516, 520-22 (W.D La. 2016) (describing the plaintiffs as "distributors that deliver Defendants' bakery products from Defendants' local warehouses to their local retailers bakery and bread products at the time and place specified by Defendants" and noting that the agreements provide "Defendants the ability to negotiate directly with its retail customers set pricing terms, and control essentially all facets of the customer relationship."); <u>accord</u> <u>Soares v Flower Foods, Inc.</u>, 320 F.R.D 464, 469 (N.D Cal. 2017) ("Flowers uses distributors to move its bread products to stores in the segment of its business known as 'direct store delivery'"); <u>Carr v. Flowers Foods, Inc.</u>, 2019 WL 2027299 at *1 (E.D. PA May 7, 2019) (agreeing that "[p]laintiffs in this suit are distributor drivers for a baked goods retailer…. Plaintiffs are individual distributors who collect baked goods from [warehouses] and deliver them to customers…. Their job also includes delivery of product to customers stores and stock management of the product at those stores…. Generally, distributors make deliveries five days out of the week, and on the other two days they will perform "pull ups").  In a similar case, <u>Neff</u>

As can be seen from the above decisions, although no discovery was conducted in this case and no real record was established beyond the Complaint and the single Declaration from Defendants (which did not even address whether, in reality, delivery of product constituted a substantial part of Plaintiffs' job duties), the Complaint amply described the significant delivery duties of the Plaintiffs in this Action. And importantly, there is no dispute that Defendants' breads and baked good products were produced in bakeries and regions throughout the United States and shipped over state lines by Defendants to a regional warehouse in Connecticut, where Plaintiffs then ***personally*** operated commercial trucks to deliver the baked goods to supermarkets, restaurants, and other retailers for purchase by consumers. It is therefore not disputed that the deliveries were being made as part of the flow of goods in interstate commerce, as the lower court held. See SA9 ("Here as a threshold matter, the Plaintiffs check this box [of moving goods in interstate commerce] given that Defendants' products are manufactured out of state … and are delivered to warehouses in-state and ultimately to store shelves by the Plaintiffs."); see also Martins v. Flowers Foods, Inc., 2020 WL 5223772, at *4 (finding that the transportation worker exemption applies to an identical class of distributors).

---

v. Flowers Foods, Inc. No. 5:15-cv-00254, 2019 WL 10750005, at *2 (May 16, 2019), in granting class certification, the court also described the delivery duties of these same distributors in great detail, concluding that "[a]ll Plaintiffs have the same core job responsibilities, which are delivering bread and snacks, straightening up store displays, and removing stale products."

## STANDARD OF REVIEW

The Court reviews *de novo* a district court's order granting a motion to dismiss and compelling arbitration. See Katz v. Cellco P'ship, 794 F.3d 341, 344, n. 4 (2d Cir. 2015) ("We review *de novo* …the grant of a motion to compel arbitration."), citing Opals on Ice Lingerie v. Bodylines Inc., 320 F.3d 362, 368, n. 2 (2d Cir. 2003). When reviewing an order on a motion to compel arbitration, this Court "accept[s] as true for purposes of th[e] appeal factual allegations in the plaintiffs' complaint that relate to the underlying dispute between the parties. Schnabel v. Trilegiant Corp., 697 F.3d 110, 113 (2d Cir. 2012).

## ARGUMENT

### I. Workers who are Actually Engaged in the Movement of Interstate Commerce, or are Closely Related Thereto, are Exempt from the Federal Arbitration Act.

The Federal Arbitration Act ("FAA") generally provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA, however, exempts certain contracts from its scope, specifically the employment contracts of "seamen, railroad employees, [and] any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1; Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 118-19 (2001). The residual clause of "any other class of workers engaged in… interstate commerce" exempts from the FAA "contracts of employment of transportation workers…." Circuit City, 532 U.S. at

19

119. This exemption applies with equal force to "independent contractor" agreements of transportation workers. See New Prime Inc. v. Oliveira, -- U.S. --, 139 S. Ct. 532 (2019).

In its Erving decision, this Court cited favorably to the definition of a Section 1 "transportation worker" that was identified by the Third Circuit in Tenney Engineering Inc. v. United Electrical Radio & Machine Workers, Local 437, 207 F.2d 450 (1953). See Erving v. Virginia Squires Basketball Club, 468 F.2d 1064, 1069 (2d Cir. 1972) (noting that "[o]ur interpretation of the exception clause follow[s] that of the Third Circuit in Tenney"). In Tenney, the Third Circuit held that the residual clause of the FAA's Section 1 exemption includes "classes of workers who are actually engaged in the movement of interstate or foreign commerce or in work so closely related thereto as to be in practical effect part of it." Tenney, 207 F.2d at 452. The Third Circuit has subsequently affirmed this definition in Palcko v. Airborne Express, Inc., 372 F.3d 588 (3d Cir. 2004). See id. at 593 (applying Tenney definition and holding that although plaintiff did not personally transport packages, her "direct supervision of package shipments makes [plaintiff's] work so closely related to interstate and foreign commerce as to be in practical effect part of it," and therefore plaintiff was subject to the Section 1 exemption); accord Rittman, 971 F.3d at 911(describing that a worker either had to directly deliver packages which were in the stream of interstate commerce or

engage in work "so closely related to interstate and foreign commerce as to be in practice effect part of it" to qualify for the Section 1 residual exemption).

Because it has been widely understood that a worker who is personally transporting goods in interstate commerce is exempt under Section 1 pursuant to the first part of the <u>Tenney</u> definition (i.e., one who is "actually engaged in the movement" of goods), courts in this Circuit have consistently held that individuals who transport goods in commercial trucks are exempt from the FAA.[7]

One aspect of the Section 1 exemption that is not at issue here is whether the work was "interstate." Indeed, much of the recent caselaw has discussed the "interstate commerce" issue, addressing whether a transportation worker must deliver products across state lines to satisfy the Section 1 exemption. Here, there is little doubt that the Plaintiffs are moving goods in interstate commerce notwithstanding that they are not crossing state lines, and the lower court so held. <u>See</u> SA9 (holding that Plaintiffs were engaged in the movement of goods in interstate commerce "given that Defendants' products are manufactured out of state … and are delivered to warehouses in-state and ultimately to store shelves by

---

[7]     "The handful of cases in this Circuit that have found that a worker falls under the residuary [transportation worker] exemption…. all involved workers who either physically move goods through interstate commerce, such as truck drivers, or workers who are closely tied to this movement". <u>Kowalewski v. Samandarov</u>, 590 F. Supp. 2d 477, 485 (S.D.N.Y. 2008). <u>See</u> <u>also</u> <u>Valdes v. Swift Transp. Co., Inc.</u>, 292 F. Supp. 2d 524, 528 (S.D.N.Y. 2003); <u>Zambrano v. Strategic Delivery Solutions, LLC</u>, 2016 WL5339552 at *3 (S.D.N.Y. Sept. 22, 2016); <u>Smith v. Allstate Power Vac, Inc. et al.</u>, 2020 WL 5086584 (E.D.N.Y. Aug. 26, 2020).

the Plaintiffs."). Moreover, two recent decisions by the First Circuit and Ninth

Circuit put this issue beyond reach and hold that a delivery driver who does not

personally cross state lines remains subject to the Section 1 exemption where he or

she hauls "goods on the final legs of interstate journeys." See Waithaka, 966 F.3d

at 26 (workers who "haul goods on the final legs of interstate journeys are

transportation workers 'engaged in … interstate commerce' regardless of whether

the workers themselves physically cross state lines."); Rittmann v. Amazon.com,

Inc., 971 F.3d 904, 915 (same class of last-leg delivery drivers are engaged in

interstate commerce under the FAA where they carry goods that have crossed state

lines and "remain in the stream of interstate commerce until they are delivered.").

Though there appears to be universal agreement that one who actually

transports goods in interstate commerce is a transportation worker exempt from the

FAA, the one limitation that courts have arguably placed on this first part of the

Tenney definition is the activity of transporting goods must be more than

"incidental" to a worker's job duties. See Rittmann, 971 F.3d at 911.[8] For

example, in Hill v. Rent-A-Center, the Eleventh Circuit concluded that "workers

---

[8] The Rittmann court, in discussing the primary case relied on by the District Court here, Hill v. Rent-A-Center, 398 F.3d 1286, 1289 (11th Cir. 2005), seemingly agreed with the Eleventh Circuit's conclusion that "workers who incidentally transport goods intrastate as part of their job in an industry that would otherwise be unregulated" did not fall within the exemption. "An account manager for a rent-to-own business who occasionally made out-of-state deliveries was not part of a class of workers in the transportation industry for purposes of the § 1 exemption." Rittmann, 971 F.3d at 911 (citing Hill, 398 F.3d at 1289).

22

who incidentally transported goods interstate" did not fall within the exemption.

Hill v. Rent-A-Center, Inc., 398 F.3d 1286, 1289 (11th Cir. 2005) (holding that an account manager for a furniture and equipment rental business who only occasionally made out-of-state deliveries was not part of a class of workers in the transportation industry who transport goods in interstate commerce).[9]

Of course, even when a worker's transportation of goods was merely "incidental," such an individual may still be a "transportation worker" under the second part of the Tenney test if his or her work is so "closely related" to movement of goods interstate commerce; indeed, a worker may be a transportation worker even where he or she performed *no deliveries at all* if his or her work was so closely related to transportation of goods to be considered part of interstate commerce. See Palcko, 372 F.3d at 593 (although plaintiff did not personally transport packages, her "direct supervision of package shipments makes [plaintiff's] work so closely related to interstate and foreign commerce as to be in

---

[9]    A review of the factual record in Hill suggests that the case is not remotely similar to the one here.  In Hill, the plaintiff only occasionally delivered rental furniture out of state. See Hill v. Rent-A-Ctr., Inc., 398 F.3d at 1289.  And unlike here, where the district court found that Plaintiffs deliver goods in the flow of interstate commerce, in Hill the rental furniture was indefinitely at rest at the Rent-A-Center.  See Defendant-Appellee's Brief (Hill), 2004 WL 3314614, at *24 ("Most of the deliveries that Hill made were of merchandise that came directly off the sales-floor or was in inventory at the store.")  Indeed in this sense, the facts of Hill are more akin to the Seventh Circuit's opinion in Wallace v. Grubhub Holdings, Inc., 970 F.3d 798 (7th Cir. 2020), which holds that the local delivery of prepared foods from restaurants does not meet the definition of goods in interstate commerce. That is certainly not the case here.  Here, where the workers have been found to transport goods in interstate commerce and they work for a registered motor carrier, it is not clear that the analysis in Hill would even be applicable.

practical effect part of it," and therefore plaintiff was subject to the Section 1 exemption) (internal quotation marks omitted); but see Lenz v. Yellow Transp., Inc., 431 F.3d 348, 351-52 (8th Cir. 2005) (holding that "[i]ndisputably, if [plaintiff] were a truck driver, he would be considered a transportation worker under § 1 of the FAA," but because he as a "customer service representative" who never transported goods in interstate commerce, he was not subject to the Section 1 exemption where his work was not "closely related" to transportation of goods).

In Lenz, the Eighth Circuit developed a list of non-exhaustive factors that a court may analyze to determine whether an individual is a transportation worker who is "engaged in" or "so closely related" to interstate commerce such that the Section 1 exemption applies.  See Lenz v. Yellow Transp., Inc., 431 F.3d 348, 351-52 (8th Cir. 2005).  The factors are as follows:

> first, whether the employee works in the transportation industry; second, whether the employee is directly responsible for transporting the goods in interstate commerce; third, whether the employee handles goods that travel interstate; fourth, whether the employee supervises employees who are themselves transportation workers, such as truck drivers; fifth, whether, like seamen or railroad employees, the employee is within a class of employees for which special arbitration already existed when Congress enacted the FAA; sixth, whether the vehicle itself is vital to the commercial enterprise of the employer; seventh, whether a strike by the employee would disrupt interstate commerce; and eighth, the nexus that exists between the employee's job duties and the vehicle the employee uses in carrying out his duties (i.e., a truck driver whose only job is to deliver goods cannot perform his job without a truck).

Lenz, 431 F.3d at 352. Though other Circuits have not explicitly adopted the Lenz

factors, courts have analyzed similar factors to guide their analysis of whether a

worker's job is so closely related to interstate commerce to qualify under the

Section 1 exemption. See, e.g., Waithaka v. Amazon.com, Inc., 404 F. Supp. 3d

335, 343 (D. Mass. 2019), aff'd, 966 F.3d 10 (1st Cir. 2020). All of the Lenz

factors lead to the conclusion that Plaintiffs are among a class of transportation

workers exempt from the FAA.[10] However, here, the District Court erred in the

first instance by failing to identify and apply the definition of workers who are

"engaged in… interstate commerce," which has been outlined in other decisions,

and this supports reversal of the District Court's decision.

---

[10]     First, Plaintiffs undoubtedly work in the transportation industry since it is indisputable
that they must have trucks, and regularly conduct deliveries of bread products to stores in their
territory. Put another way, without Plaintiffs and the class of workers of which they are a part,
there would be no deliveries of critical bread products to supermarkets and stores throughout the
country. And in a number of court filings Defendants have emphasized their status as a motor
carrier, in order to claim motor carrier act preemption (see Plaintiffs' sur-reply at JA367).
Second, it is undeniable that the Plaintiffs are responsible for transporting goods within the flow
of interstate commerce, since Plaintiffs are directly transporting goods, on the last leg of their
interstate journey. Similarly, it is axiomatic that the Plaintiffs are directly handling these goods
as they load, deliver, and unload them. While Plaintiffs cannot say that special arbitration
procedures existed for truck drivers when the FAA was enacted, certainly the concern regarding
work stoppages and strikes among truck drivers would have been just as concerning as such
stoppages in the railroad industry because the need to have bread on the shelves during the 1920s
was undoubtedly important. The next factor, whether the vehicle itself is vital to the commercial
enterprise, is hardly an issue. Without Plaintiffs' trucks and the class of workers to which they
belong, there would be no deliveries to the stores and supermarkets within the entire country.
And of course, a strike by bread distributors, thereby creating a shortage of bread products on the
shelves of stores would cause extreme disruption of interstate commerce. Finally, regarding the
eighth criteria, the nexus that exists between the employee's job duties and the vehicle is a factor
again dramatically favoring exempt status because the truck is the means of delivery for the
Plaintiffs (and Plaintiffs are expressly obligated under the contract to maintain a vehicle meeting
certain requirements in order to perform their work).

## II.     The District Court Failed to Identify and Apply the Proper Definition of a "Transportation Worker"

As discussed above, the District Court concluded that the Plaintiffs were responsible for transporting goods in the flow of interstate commerce and further assumed that Plaintiffs spend the majority of their working hours delivering products.  See SA14.  Under the definition in Tenney, which has been cited favorably by this Court as well as in a number of other Circuits, Plaintiffs are undoubtedly transportation workers, because they transported goods in the flow of interstate commerce and their transportation work was more than incidental.  However, the lower court failed to identify and apply the correct definition.  Instead, the lower court became engrossed in several considerations that either find no support in the caselaw, or that otherwise have no relevance in the instant case.

First, the court focused on a question that does not find support in any of the caselaw defining a transportation worker under the Section 1 exemption—"whether Plaintiffs' role is sufficiently confined to driving, delivery, and distribution so as to make them 'transportation workers' for purposes of the Section 1 exemption" SA9.  This definition used by the District Court does not derive from the statutory text of the FAA or its interpreting cases, as no court has held that a worker who personally transports products in the flow of interstate commerce ceases to be "engaged in… interstate commerce" if he or she also performs non-transportation duties.  In other words, there is no support in this

26

Court's decisions or the decisions in Circuit City or from the other Courts of

Appeals suggesting that a truck driver may ***only*** be found to be exempt from the

FAA if his work was "confined to" driving the truck, and he assumed no other

responsibilities. In fact, this requirement - if incorporated into to the

"transportation worker" definition - would be inconsistent with a large body of

case law. See e.g., Int'l Bhd. of Teamsters Local Union No. 50 v. Kienstra Precast,

LLC, 702 F.3d 954, 958 (7th Cir. 2012) ("there is no basis in the text of § 1 for

drawing a line between workers who do a lot of interstate transportation work and

those who cross state lines only rarely; both sorts of worker are 'engaged in foreign

or interstate commerce.'").

Second, relying almost exclusively on various sections of the distribution

agreement, the court held, without any real evidence to support its conclusion (and

while straying far beyond the plain text of the FAA), that "even allowing that

Plaintiffs spend the majority of their working hours delivering products, moreover,

the Court is doubtful the Plaintiffs' role as distributor franchisees is sufficiently

analogous to that of early 20th century railroad workers or seamen to warrant a

finding that Congress would have envisioned the FAA exception as embracing

such workers." SA14. Though courts have identified a comparison to railroad

workers and seamen as one of several considerations used to determine if one is

exempt under Section, they have usually done so (as in Lenz) only when the

worker *was not personally transporting goods*.  See generally Kowalewski v. Samandarov, 590 F. Supp. 2d 477, 483 (S.D.N.Y. 2008) (noting that the Lenz factors, although informative, are formulated for the "specific context" determining whether one who does not personally deliver goods and is instead "one step removed from the actual physical delivery of goods" may be exempt under Section 1).  Once the individual has been found to be personally transporting goods, they are comparable to a seamen or railroad employee who undoubtedly would be exempt from the FAA.  Indeed, even seamen and railroad employees who never personally moved goods are covered by the Section 1 exemption.  See New Prime Inc. v. Oliveira, 139 S. Ct. 532, 542-43, 202 L. Ed. 2d 536 (2019)  (explaining that "shipboard surgeons who tendered injured sailors were considered 'seaman'" and that "railroad employees" likely referred to "anyone 'engaged in customary work directly contributory to the operations of the railroads.'").

Third, relying on several cases suggesting that *one* consideration under Section 1 is "whether a strike by the employee would disrupt interstate commerce," the court held that Plaintiffs presented no evidence "to indicate that the effects of such a strike would be felt outside of their individual franchise territories within Connecticut."  SA14.  However, it is the "class of workers" that the Section 1 exemption focuses on, not the specific Plaintiffs, as every court has so held.  Here, that class constitutes at the very least, the sizeable group of DSD distributors

throughout the country that together account for the delivery of millions of Flowers' bakery products to supermarkets and other outlets throughout the United States. Indeed, as the First Circuit and many other courts have pointed out, "our ultimate inquiry is whether a class of workers is engaged in … interstate commerce". <u>Waithaka</u>, 966 F.3d at 22. Thus, the lower court's analysis focusing on whether if a single Plaintiff went on strike is fundamentally flawed; the proper focus must be on the class of workers involved. Clearly if Flowers Foods distributors went on strike—whether statewide, New England wide, nationally or internationally—the result—no bread on store shelves—would be exactly the type of work stoppage that Congress intended to prevent.

Fourth, the lower court suggested that the possibility that the Plaintiffs could delegate their responsibility to drive the delivery vehicle "undercuts the suggestion that Plaintiffs are personally indispensable to the flow of goods in a manner akin to a traditional truck driver, or that Plaintiffs are 'so closely related to interstate commerce as to be a part of it.'" SA14-15. As discussed below, there is no evidence in this record that Plaintiffs ever delegated their work duties to others or whether such delegation was even practical given the economic realities of the relationship. The only evidence in the record regarding what Plaintiffs actually do is the evidence that they work full-time transporting goods in interstate commerce. Moreover, given that workers who supervise individuals performing deliveries in

interstate commerce are themselves transportation workers – even if they perform no deliveries at all - if the District Court's assumption that Plaintiffs were hypothetically able to delegate their deliveries to another driver whom they would supervise proves true, they would remain transportation workers under the second part of the Tenney definition because their work would be closely related to the movement of goods in interstate commerce.[11]  See Palcko, 372 F.3d at 593.

    In sum, the considerations that drove the District Court's analysis of whether Plaintiffs were "transportation workers" were mostly irrelevant and strayed far from the Tenney definition (which has been adopted by this Court), and failed to properly determine whether Plaintiffs are among a "class[] of workers who are actually engaged in the movement of interstate or foreign commerce or in work so closely related thereto as to be in practical effect part of it."  Tenney, 207 F.2d at 452.  This is particularly true because the District Court even assumed that Plaintiffs spent the majority of their time transporting goods, and therefore clearly their work was more than "incidental" to their job.

---

[11]     The consideration that Plaintiffs could hypothetically hire another driver to perform the deliveries for them is not part of the "transportation worker" analysis.   and is foreclosed by Supreme Court's New Prime decision, under which a legitimate "independent contractor" driver (who is almost always capable of delegating his work to another) is nevertheless transportation workers, based on the history and plain text of the FAA.[11]  See New Prime Inc., 139 S. Ct. at 542.

**III.    The Decision Should Also be Reversed because the District Court Failed to Apply the Appropriate Standard for a Motion to Compel Arbitration**

Regardless of whether the District Court's analysis centered on the proper "transportation worker" definition, the lower court did not apply the appropriate standard for a motion to compel arbitration, relying upon improper assumptions and fact-finding.  This provides separate grounds for reversal.

On a motion to compel arbitration, the trial court was required to interpret the record as a whole in the light most favorable to the non-moving party. Schnabel v. Trilegiant Corp., 697 F.3d 110, 113 (2d Cir. 2012). Moreover, when reviewing an order on a motion to compel arbitration, this Court "accept[s] as true for purposes of th[e] appeal factual allegations in the plaintiffs' complaint that relate to the underlying dispute between the parties.  Id. at 113 (2d Cir. 2012); Guydan v. Aetna, Inc., 544 F.3d 376, 379 n. 1 (2d Cir. 2008) ("Because the district court dismissed [plaintiff's] complaint [as subject to arbitration] without addressing its merits, we treat the allegations therein as true"); see also Berkeley Cty. Sch. Dist. v. Hub Int'l Ltd., 944 F.3d 225, 233-34 (4th Cir. 2019) (holding that in review of an arbitration order under 9 U.S.C. § 4, "we accept as true the allegations of the Operative Complaint"); see also U.S. Nutraceuticals, LLC v. Cyanotech Corp., 769 F.3d 1308, 1311 (11th Cir. 2014) ("When we rule on motions to compel arbitration, we look to the facts alleged in the ... complaint.") (internal quotation omitted); Suburban Leisure Ctr., Inc. v. AMF Bowling Prods., Inc., 468 F.3d 523,

31

525 (8th Cir. 2006) (accepting allegations of complaint as true in reviewing court's denial of motion to compel arbitration).

A court then considers the facts in the complaint and the additional materials submitted by the parties and applies a "standard similar to that applicable for a motion for summary judgment." Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003). "In doing so, the court must draw all reasonable inferences in favor of the non-moving party." Nicosia v. Amazon.com, Inc., 834 F.3d 220, 229 (2d Cir. 2016).

Here, the District Court first correctly relied upon the facts in Plaintiffs' Complaint, SA2-3, and Defendants did not dispute or object to consideration of these facts. See JA190-201. However, the District Court then disregarded the most essential facts of the Complaint that bore directly on Plaintiffs' transportation work and made a number of assumptions and inferences in favor of Defendants. The inferences made by the court in Defendants' favor are also not supported by the evidence and are directly refuted by all the Flowers Foods cases around the country, as well as the record evidence here (including a picture of the commercial truck, with Defendant Lepage's DOT number painted on it, that Plaintiff Bissonnette drove).

The District Court's holding can be summarized as follows: although the Plaintiffs may spend the majority of their time delivering Flowers bakery products

to stores, nevertheless, the sales and marketing activities described in the Distributor Agreement take them out of the category of transportation workers protected from forced arbitration under Section 1. As discussed above, the holding that additional duties may take a delivery drivers' work outside the category of a transportation worker is not supported by the text of the FAA or any definition adopted the Circuit courts.[12] Even relying on the Eleventh Circuit's opinion in <u>Hill</u> (398 F.3d at 1289)—which holds that transportation work that is only "incidental" does not make one a transportation worker—there is no evidence in the record supporting such a conclusion. It is impossible to conclude on this record that the daily hours Plaintiffs spent delivering bread products to their assigned stores was merely "incidental" work (even if Plaintiffs spent some time fulfilling sales duties).[13] The word "incidental" is commonly defined as "accompanying but not a

---

[12]    The Court's conclusion also does not square with the plain statutory text or common sense. For example, a police officer has duties other than responding to emergencies (e.g., patrolling, assisting in social services, training), but those non-emergency duties do not "transform" a police officer into something other than a first responder.

[13]    The Declaration Defendants' relied on suggests that Plaintiffs are engaged in real sales because they "purchase products from CK sales" and then "resell to customers at a higher price". JA80 at ¶9. But the declaration omits that both prices are set by the Defendants, and there is really no resale going on at all; rather, distributors are merely paid a commission on the sale of Defendants' products. <u>See</u> <u>Noll</u>, 442 F. Supp. 3d at 356 (finding that an identical class of Defendants workers in Maine, working under nearly identical terms, are "pa[id] a commission based on the net sales occurring in Plaintiffs' territories. That is, Plaintiffs' compensation is derived from an accounting process that affords them a fee measured by the volume of sales in their territories.").

33

major part of something."[14]  The District Court could not reasonably conclude that transportation was merely an "incidental" part of the work of this class of Flowers Foods Distributors, all of whom drive box trucks, deliver products to supermarkets at least five days per week, have Department of Transportation numbers on the cabs of their trucks, and deliver well-known bakery product brands from Defendants' warehouses to store shelves.  Indeed, on this record, the evidence supports the conclusion that making bread deliveries in their trucks is a primary and substantial aspect of their jobs, not an incidental part.

First, Plaintiffs' Complaint clearly sets forth facts supporting the conclusion that Plaintiffs' transportation work is more than incidental and is in fact essential to their jobs.  The Complaint contains detailed allegations regarding Plaintiffs' delivery duties, explains that Defendants have an entire workforce of delivery drivers who perform the same work as Plaintiffs, that one of the Plaintiffs previously performed this same work as an employee of Defendants, and that Distributors such as Plaintiffs "work at least forty hours per week delivering the baked goods for defendants" and "[t]his work mainly consists of driving vehicles to stores within a territory designated by Defendants, delivering Defendants' products to these stores, and arranging the products on the shelves according to

---

[14]  See *Incidental*, Lexico, https://www.lexico.com/en/definition/incidental (accessed October 5, 2020).

Defendants' standards." JA12-23 at ¶¶ 14, 15, 26, 33. In both their Answer and filings in previous matters, these same Defendants have attested that "Plaintiffs and those individuals Plaintiffs seek to represent drive or drove vehicles … subject to transporting certain goods originating out of state, and [] there is a practical continuity of movement of these goods until they reach retail customers and other customers." JA36. And in a previous lawsuit, Defendants argued that they are a motor carrier of property because "through their own employees and contracting with independent contractor franchisees, they deliver products in the stream of interstate commerce to customers in Connecticut and throughout New England" and Defendants "use motor vehicles as defined in the statute." JA367 (Sur-Reply Dkt. 48 at 3, quoting D's Mot. for Summ. J. in <u>Bokanoski et al. v. Lepage Bakeries Park Street, LLC et al.</u>, No. 15-CV-00021 (JCH), <u>see</u> JA370-406).

Second, the single Declaration submitted by the Defendants to counter the allegations in the Complaint did not contain any specific admissible evidence as to Distributors' precise duties and thus Defendants' did not carry their burden at this stage. <u>See</u> <u>Laterra v. GE Betz, Inc.</u>, 2017 WL 3485505, at *4 (D. Conn. Aug. 14, 2017) (party seeking to compel arbitration must present sufficient evidence to establish that they are entitled to arbitration); <u>Lamoureux v. AnazaoHealth Corp.</u>, 2012 WL 12537933, at *2 (D. Conn. Sept. 24, 2012) (a party moving for summary judgment must first present sufficient evidence to demonstrate that there are no

material issues of fact that would preclude summary judgment) citing <u>Saab Cars USA, Inc. v. United States</u>, 434 F.3d 1359, 1368 (Fed. Cir. 2006) (where the moving parties evidentiary showing is inadequate, the opposing party is not required to submit opposing evidence). Most of the Declaration relates to other matters, such as who had signed arbitration agreement and who was a prior class member to a previous lawsuit involving Defendants. <u>Id.</u> Only two conclusory paragraphs of the six-page declaration purport to relate to the Plaintiffs' duties, and several of those are neither true, nor rooted in any facts. For example, in the first sentence of Paragraph 8, the Declarant states that the two named Plaintiffs "are responsible for … hiring employees at their discretion to run their businesses, identifying and engaging potential new customers, and developing relationships with key customer contacts." JA79-80 at ¶ 8. But nowhere does he say that Plaintiffs actually do these things, and in fact there is not one shred of evidence that the Plaintiffs have ever hired an employee, and the Complaint makes clear that they have not because it states that they personally perform the deliveries on their own. Nor have Plaintiffs ever developed business with new accounts, as their work consists almost exclusively of servicing supermarkets which are expressly listed in the Distribution Agreement and which were assigned to them by Defendants. JA85-159.

The Declarant goes on to state that their duties include "other activity necessary to promote sales", but never states what those are, nor whether these Plaintiffs ever actually performed such "other activities." JA79 at ¶ 8.  He also states that the Plaintiffs are responsible for "recommending new products" when in fact the Complaint asserts, and the courts in <u>Neff</u>, <u>Rehberg</u>, and <u>Noll</u> demonstrate that the Defendants arranged directly with the chain stores what products to place on the shelves. <u>See</u> <u>Neff v. Flowers Foods, Inc.</u> No. 5:15-cv-00254, 2019 WL 10750005, at *2 (D. Vt. May 16, 2019); <u>Rehberg</u>, 162 F. Supp. 3d at 501; <u>Noll</u>, 442 F. Supp. 3d at 351–52.  In sum, the Declaration does not cite one example of the Plaintiffs or other Distributors in Connecticut ever performing any of the "duties" summarized, and thus it does not support the conclusion that these other duties rendered Plaintiffs' delivery work "incidental."

Thus, to the extent the District Court suggested that it was making undisputed findings based upon the failure of the Plaintiffs to refute the limited evidence proffered by Defendants in the Declaration, this was error because the record also contains factual details supported by competent evidence to demonstrate at this early stage that the transportation of goods is an indispensable part of Plaintiffs' work.  The fact that Plaintiffs did not controvert a few of Defendants' assertions in the one Declaration submitted, does not mean that those assertions support the granting of Defendants' motion because those assertions are

vague, gave no specifics, and did not actually establish the facts necessary to show that Plaintiffs in fact performed any work other than deliveries (particularly where all inferences must be drawn in favor of the non-moving party).

Third, many provisions in the Distributor Agreement upon which the court relied also directly support Plaintiffs' contention that any sales duties are minimal, because the distributors have no discretion as to sales and marketing, and the central function of their job is to perform deliveries of products.[15]  As discussed above, Distributors like Plaintiffs must adhere to all promotions and feature pricing with respect to major chain accounts, and the Distributor is required to designate Defendants to act as his agent to negotiate pricing and space with the chain stores. JA90, JA95 at §§ 6.1, 13.2.  An Exhibit to the agreement limits Plaintiffs' ability to purported sell only a particular list of actual products, with no other products being authorized.  JA146.  Section 8.3 of the Agreement authorizes the company—not the Distributor—to bill the chain store.  JA92 at § 8.3.  And rather than independently marketing products to customers, Distributor must "cooperate with COMPANY on its marketing and sales efforts," JA89 at § 5.1, using "COMPANY

_____

[15]     Indeed, as Plaintiffs point out the fact section of this brief, even the Distributor Agreement which defendant relies upon, has a number of provisions, which themselves call into question, whether the distributors have any real sales duties at all.  See Distributor Agreement, JA85-106, §§ 2.6, 6.1, 8.3, and 13.2, which discuss the distributors obligation to appoint the defendants as their agent for the purposes of negotiating prices and products at the various chain stores that they service.

initiated advertising material," JA95 at §13.1, and Plaintiffs may not engage in any marketing activity without "the prior written consent of COMPANY." JA101 at § 19.2. These provisions – particularly when viewed in the light most favorable to Plaintiffs – demonstrate that the responsibility for "sales efforts" belongs exclusively to Defendants, and that Plaintiffs could not actually make "sales" in the traditional sense.

The reasonable inferences from the Distributor Agreement and all other evidence is that Plaintiffs do not actually perform any sales at all, and their work is like that of a traditional bread delivery truck driver. This conclusion is supported by factfinding and analysis in similar cases involving these same Defendants. Indeed, other courts have found based on the identical facts and defendants, that deliveries are the primary duty of the distributor, and that real questions exist whether there any real sales duties involved. See e.g., Noll, 442 F. Supp. 3d at 358–59; Rehberg, 162 F. Supp. at 493–94. There is a multitude of decisions involving Flower Foods, some with detailed factual findings at the summary judgment stage following completion of discovery, demonstrating (consistent with Plaintiffs' Complaint) that delivery work is the primary responsibility of Distributors like Plaintiffs, and it is the so-called sales and marketing work which is, at most, an "incidental" part of Plaintiffs' jobs. This is because Flowers sets the price with chain stores, determines when to run a promotion in the store, and

39

negotiates the products to be placed in stores and total shelf space available.  See

e.g. Noll, 442 F. Supp. 3d at 358–59 (recognizing that sales may not be a

significant part of the job at all, and therefore the FLSA outside sales exemption

may not apply).

Courts in the Third Circuit have held that granting a motion to compel

arbitration when the trial court must look beyond the Complaint is inappropriate

without developing a fuller factual record in discovery.  See Singh v. Uber Techs.

Inc., 939 F.3d 210, 226 (3d Cir. 2019) (vacating a motion to dismiss and compel

arbitration and holding that "discovery must be allowed" on application of the

transportation worker exemption); Guidotti v. Legal Helpers Debt Resolution,

L.L.C., 716 F.3d 764, 776 (3d Cir. 2013) (internal quotes and citations omitted)

("[w]hen it is apparent, based on the face of a complaint, and documents relied

upon in the complaint, that the claims are subject to an arbitration clause, a motion

to compel arbitration should be considered under a Rule 12(b)(6) standard…But if

the complaint and its supporting documents are unclear regarding the agreement to

arbitrate or if the plaintiff has responded to a motion to compel arbitration with

additional facts…The parties should be entitled to discovery on the question of

arbitrability before a court entertains further briefing on the question.").[16] This

---

[16]    See also Harper v. Amazon.com Servs. Inc., No. CV 19-21735 (FLW), 2020 WL
4333791, at *6 (D.N.J. July 28, 2020) (holding that discovery would be needed before

court should adopt a similar standard.

## CONCLUSION

For the foregoing reasons, the District Court should not have granted Defendants' motion to compel arbitration and dismissed the case. The District Court failed to identify and apply the correct definition of a transportation worker that is exempt under Section 1 of the FAA. Moreover, to the extent the Court believed there were factual disputes beyond the initial pleadings, the Court should have ordered some discovery to develop the factual record before drawing any and inferences assumptions in Defendants' favor regarding Plaintiffs' transportation work. Even assuming that Plaintiffs were remiss in not more fully developing the factual record at the pleading stage, given the very early stage of the litigation, and the unsettled state of the law, that should not be dispositive. Indeed, application of the transportation worker exemption to the modern workplace is still developing in light of the U.S. Supreme Court's decision in New Prime Inc. v. Oliveira, -- U.S. -- 139 S. Ct. 532 (2019). Many of the leading cases discussed in this brief were not even decided when the lower court issued its decision. See, e.g., Waithaka, 966 F.3d at 17; Rittmann, 971 F.3d at 911. Accordingly, the decision should be reversed.

---

determining whether section 1 transportation worker exemption applied); see also Bacon v. Avis Budget Grp., Inc., 357 F. Supp. 3d 401, 407 (D.N.J. 2018), aff'd, 959 F.3d 590 (3d Cir. 2020) ("Because the defendants motion [to compel arbitration]..... presented issues of fact, [the court] denied those motions.... and ordered limited discovery on the issue of arbitrability").

**Dated:** October 13, 2020

Respectfully submitted,

 */s/ Harold L. Lichten*
Harold L. Lichten,
Matthew W. Thomson
Zachary L. Rubin
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
hlichten@llrlaw.com
mthomson@llrlaw.com
zrubin@llrlaw.com

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rules of Appellate Procedure 32(a)(7)(B), and 29(d),  I hereby certify that this brief contains 10,879 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii), as established by the word count of the computer program used for preparation of this brief.

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 14-point size Times New Roman font.

Dated: October 13, 2020

/s/ Harold L. Lichten
Harold L. Lichten, Esq.
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
hlicten@llrlaw.com

*Attorney for Plaintiffs-Appellants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 13, 2020, true and correct copies of the

foregoing Opening Brief and Addendum was served on counsel of record for each

of the Defendants-Appellees, via the CM/ECF system.

Dated: October 13, 2020          /s/ Harold L. Lichten
Harold L. Lichten, Esq.
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
hlichten@llrlaw.com

*Attorney for Plaintiffs-Appellants*