# NO. 20-1681

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

Neal Bissonnette, Individually and on behalf of all others similarly situated,
Tyler Wojnarowski, Individually and on behalf of all others similarly situated,

*Plaintiffs-Appellants*,

v.

LePage Bakeries Park St., LLC,
C.K. Sales Co., LLC,
Flowers Foods, Inc.,

*Defendants-Appellees.*

On appeal from an order and judgment of the
United States District Court for the District of Connecticut,
Civil Action No. 3:19-cv-00965 (KAD)

**PLAINTIFFS-APPELLANTS' REPLY BRIEF**

Harold L. Lichten, Esq.
Matthew Thomson, Esq.
Zachary L. Rubin, Esq.
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
hlichten@llrlaw.com
mthomson@llrlaw.com
zrubin@llrlaw.com
Attorneys for *Plaintiff-Appellants*

# TABLE OF CONTENTS

I.    Introduction ..................................................................................1

II.   The Facts Before the Court...........................................................3

III.  There is No Support for Defendants' Assertion that the Court
      Should Sidestep the Dispositive, Threshold Question of Federal
      Law that was the Basis of the District Court's Decision................6

IV.   Under the Threshold Question, Plaintiffs are Exempt from the
      FAA because they Drive Delivery Trucks on a Full-Time Basis to
      Deliver Defendants' Bread Products to Markets............................8

      A.    Plaintiffs are Transportation Workers .....................................9

      B.    Defendants' Proposed "Transportation Worker" Test is Not
            Supported by the Law............................................................12

            i.     There is No Requirement that Transportation Workers
                   Must be Employed in Specific Industries .....................12

            ii.    *New Prime* Holds that Even Legitimate Independent
                   Contractors Are Transportation Workers......................17

            iii.   There is No Requirement that Plaintiffs Cross State
                   Lines.............................................................................19

      C.    There Was Ample Evidence Presented to the District Court
            to Support a Finding that Plaintiffs are Transportation
            Workers .................................................................................20

V.    Defendants' Arbitration Agreement Does Not Permit the
      Application of Connecticut Law....................................................22

VI.   The Question of Arbitrability Must be Decided by a Court..........26

VII.  Conclusion ...................................................................................27

# TABLE OF AUTHORITIES

**Cases**

Bensadoun v. Jobe-Riat,
  316 F.3d 171 (2d Cir. 2003) ...............................................................20

Brown v. Soh,
  280 Conn. 494, 909 A.2d 43 (2006) ...................................................23

Butler v. Hartford Tech. Inst., Inc.,
  243 Conn. 454, 704 A.2d 222 (1997) .................................................23

Carr v. Transam Trucking, Inc.,
  2008 WL 1776435 (N.D. Tex. Apr. 14, 2008) ...................................10

Ecological Rights Found. v. Pac. Gas & Elec. Co.,
  874 F.3d 1083 (9th Cir. 2017) ...........................................................24

Erving v. Virginia Squires Basketball Club,
  468 F.2d 1064 (2d Cir. 1972) ............................................. 2, 8, 15, 16

Gold v. Rowland,
  156 A.3d 477 (Conn. 2017) ...............................................................24

Gove v. Career Sys. Dev. Corp.,
  689 F.3d 1 (1st Cir. 2012) ....................................................................4

Green v. U.S. Xpress Enterprises, Inc.,
  434 F. Supp. 3d 633 (E.D. Tenn. 2020)...................................... 25, 26

Hill v. Rent-A-Center,
  2004 WL 3314614 (11th Cir. May 29, 2004) ....................................11

Hill v. Rent-A-Center, Inc.,
  398 F.3d 1286 (11th Cir. 2005) .........................................................11

In re Van Dusen,
  654 F.3d 838 (9th Cir. 2011) ...............................................................3

Intellivision v. Microsoft Corp.,
  484 F. App'x 616 (2d Cir. 2012) ..........................................................5

Jefferson Radiology, P.C. v. Baldwin,
    2017 WL 3000714 (Conn. Super. Ct. June 8, 2017) ..........................................23

Kowalewski v. Samandarov,
    590 F. Supp. 2d 477 (S.D.N.Y. 2008) ......................................................... 10, 15

Latimer v. Adm'r, Unemployment Comp. Act,
    216 Conn. 237, 579 A.2d 497 (1990) ...................................................................21

Lenz v. Yellow Transp., Inc.,
    431 F.3d 348 (8th Cir. 2005) ....................................................................... 10, 15

Martins v. Flowers Foods, Inc.,
    463 F. Supp. 3d 1290 (M.D. Fla. 2020)................................................. 14, 16, 25

Martins v. Flowers Foods, Inc.,
    Appeal No. 20-11378 (11th Cir.)........................................................................14

Maryland Cas. Co. v. Realty Advisory Bd. on Labor Relations,
    107 F.3d 979 (2d Cir. 1997) ....................................................................... 15, 16

Neff v. Flowers Foods, Inc.,
    2019 WL 10750005 (D. Vt. May 16, 2019) ........................................................6

New Prime Inc. v. Oliveira,
    139 S. Ct. 532, -- U.S. -- (2019) ............................................................. passim

New Prime, Inc. v. Oliveira,
    2018 WL 2278112 (U.S. May 14, 2008) ...........................................................18

Nicosia v. Amazon.com, Inc.,
    834 F.3d 220 (2d Cir. 2016) ..............................................................................20

Palcko v. Airborne Express,
    372 F.3d 588 (3d Cir. 2004) ..............................................................................10

Penguin Grp. (USA) Inc. v. Am. Buddha,
    609 F.3d 30 (2d Cir.) ...........................................................................................8

Pierce v. Emigrant Mortg. Co.,
    463 F. Supp. 2d 221 (D. Conn. 2006)...................................................................7

Ramirez v. Health Net of Ne., Inc.,
    938 A.2d 576 (Conn. 2008) ................................................................24

Rittmann v. Amazon.com, Inc.,
    971 F.3d 904 (9th Cir. 2020) ..................................................... passim

Schnabel v. Trilegiant Corp.,
    697 F.3d 110 (2d Cir. 2012) ............................................................4, 9

Smith v. Allstate Power Vac, Inc.,
    2020 WL 5086584 (E.D.N.Y. Aug. 26, 2020) ..................................15

Smith v. Delaney,
    64 Conn. 264, 29 A. 496 (1894) ........................................................23

Solomon v. Gilmore,
    248 Conn. 769, 731 A.2d 280 (1999) ................................................23

State v. Lynch,
    287 Conn. 464 (2008) ........................................................................23

Tenney Eng'g, Inc. v. United Elec. Radio & Mach. Workers of Am.,
    (U.E.) Local 437,
    207 F.2d 450 (3d Cir. 1953) ...................................................... passim

Veliz v. Cintas Corp.,
    2004 WL 2452851 (N.D. Cal. Apr. 5, 2014)....................................10

Waithaka v. Amazon.com, Inc.,
    966 F.3d 10 (1st Cir. 2020)............................................. 7, 14, 19, 23

Wallace v. Grubhub Holdings, Inc.,
    970 F.3d 798 (7th Cir. 2020) ............................................................11

**Statutes**

Connecticut Arbitration Act
    Conn. Gen Stat. § 52-417..................................................................25

Federal Arbitration Act ("FAA"),
    9 U.S.C. § 1, *et seq.* ................................................................ passim

## I.    Introduction

As set forth in Plaintiffs' Opening Brief, this Action presents the straightforward question of whether individuals who operated commercial trucks on a daily basis to deliver brand name bread and baked goods manufactured outside of Connecticut to supermarkets in Connecticut are "transportation workers" exempt from the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA").  The lower court erred in holding that Plaintiffs — who clearly deliver products within the flow of interstate commerce — were not "transportation workers," as provided in Section 1 exemption of the FAA.

Defendants have submitted their Response Brief in which they ask this Court on appeal to take two unprecedented steps.  First, they ask the Court to disregard the threshold question of federal law at the heart of this appeal under the FAA, and to render a decision based solely on the application of state law. However, the Court should not sidestep this threshold question of federal law and must address head-on whether the lower court erred in interpreting and applying the FAA, an issue that the district court found to be dispositive of the entire motion to compel arbitration.

Next, Defendants ask the Court to disregard its precedent, and that of nearly every other Court of Appeals which has addressed the scope of the FAA's transportation worker exemption and to instead create a new "three-part test" for

determining whether one is a transportation worker.  <u>See</u> Resp. Br. at 26. However, Defendants' purported "test" has never been applied by any court in the country, and it is inconsistent with Supreme Court precedent. The Court should decline to adopt this newly-invented "transportation worker" definition and reaffirm that the Section 1 exemption of the FAA covers those "classes of workers who are actually engaged in the movement of interstate or foreign commerce or in work so closely related thereto as to be in practical effect part of it." <u>Tenney Eng'g, Inc. v. United Elec. Radio & Mach. Workers of Am., (U.E.) Local 437</u>, 207 F.2d 450, 452 (3d Cir. 1953), cited in <u>Erving v. Virginia Squires Basketball Club</u>, 468 F.2d 1064, 1069 (2d Cir. 1972) ("Our interpretation of the exception clause followed that of the Third Circuit in <u>Tenney</u>…).  The lower court has already held that Plaintiffs are actually engaged in the movement of interstate or foreign commerce.  <u>See</u> SA009. Thus, Plaintiffs are clearly among a "class of workers" engaged in interstate transportation, as set forth in numerous judicial decisions that have discussed the work performed by Defendants' delivery drivers. <u>See</u> Opening Br. at 16-18. Therefore, Plaintiffs are exempt from the FAA under the first part of the <u>Tenney</u> definition, and there was ample evidence before the district court to support this conclusion.

As discussed in greater detail below, should the Court venture beyond the question of the FAA's applicability that was the sole basis of the district court's

decision, this Court must affirm the district court's decision that Defendants' arbitration agreement cannot be enforced under Connecticut state law because it is inconsistent with the FAA -- a result not permitted by the plain contractual language drafted by Defendants.[1]

Finally, there is no validity to Defendants' argument that the question of arbitrability was one that needed to be sent to an arbitrator. The Supreme Court has rejected that argument explicitly in New Prime Inc. v. Oliveira, 139 S. Ct. 532, -- U.S. -- (2019).

## II.  The Facts Before the Court

In their summary of the facts of the case, Defendants virtually ignore the facts pled in the Amended Complaint. Instead, Defendants fault Plaintiffs for not submitting declarations (which would describe the same allegations in the

---

[1]     The district court summarized as follows:

…[T]he parties' Arbitration Agreement not only states that covered claims "shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act," but it also specifically provides that the "Agreement shall be governed by the FAA and Connecticut law to the extent Connecticut law is not inconsistent with the FAA." (Ex. K at 1, 3.) Because "a district court has no authority to compel arbitration under Section 4 where Section 1 exempts the underlying contract from the FAA's provisions," In re Van Dusen, 654 F.3d 838, 843 (9th Cir. 2011), the Court concludes that it would be "inconsistent with the FAA" for the Court to exercise its authority under Connecticut law to compel arbitration if the Court would lack authority to do the same under the FAA.

See SA0007.

Amended Compliant) despite not disputing that when reviewing an order on a motion to compel arbitration, this Court "accept[s] as true for purposes of th[e] appeal factual allegations in the plaintiffs' complaint that relate to the underlying dispute between the parties." Schnabel v. Trilegiant Corp., 697 F.3d 110, 113 (2d Cir. 2012); accord Gove v. Career Sys. Dev. Corp., 689 F.3d 1, 2 (1st Cir. 2012) (on motion to dismiss and to compel arbitration, court may consider the "complaint as well as documents submitted to the district court in support of [defendant]'s motion….); Resp. Br. at 39 (agreeing that the complaint and documents incorporated therein were properly before the district court on a motion to dismiss or to compel arbitration).[2]  The facts of the Amended Complaint clearly spell out that Plaintiffs work full-time for Defendants delivering breads and other baked goods in trucks.  Plaintiffs submitted a declaration reflecting that these trucks are operated pursuant to Lepage's DOT authorization. JA407-08.  Plaintiffs allege that Defendants operate bakeries throughout the United States and that the goods that Plaintiffs deliver are therefore "within the flow of interstate commerce." JA14-15. In their Answer to the Amended Complaint, Defendants admit that Plaintiffs

---

[2]     Based on the rule in Schnabel, the parties and the district court relied upon the facts pled in the Amended Complaint when briefing and deciding the motion below.  If the Court intends to alter this rule and hold that the facts of the Amended Complaint *cannot* be considered on a motion to dismiss and to compel arbitration, the case should then be remanded and Plaintiffs should be permitted to submit additional sworn evidence regarding their full-time delivery duties.

"delivered baked goods to customers in Connecticut." JA25 at ¶ 3.  Defendants

also pled that "Plaintiffs … drive or drove vehicles… transporting certain goods

originating out of state…" JA36.  Defendants have also stated in prior litigation

that "through their own employees and contracting with independent contractor

franchisees, they deliver products in the stream of interstate commerce to

customers in Connecticut and throughout New England…." JA367.  Defendants

ask the Court to disregard this this assertion and similar statements because,

according to Defendants, they constitute "legal arguments," as opposed to

"evidence."  See Resp. Br. at 41.  However, this is quite clearly a factual statement

regarding Defendants' business model, and Defendants should be estopped from

now taking the complete opposite factual position to argue that their delivery

drivers do not deliver products in the stream of interstate commerce. See

Intellivision v. Microsoft Corp., 484 F. App'x 616, 619 (2d Cir. 2012) (applying

judicial estoppel where a party unfairly took a clearly inconsistent prior litigation

position).

As summarized in Plaintiffs' Opening Brief, see Dkt. 62 at 8-9, Plaintiffs'

Amended Complaint also contains the following assertions:

- The Plaintiffs performed delivery of baked goods products on behalf of Defendants in Connecticut.  JA13 at ¶¶ 2-4.

- "Defendants utilize a large workforce of delivery drivers in Connecticut to deliver baked goods and stock the shelves at retail locations in the state." JA15 at ¶ 14.

- The Plaintiffs and other distributors pick up "products at a warehouse that have been delivered from one of Defendants' commercial bakery locations, and then transport those goods within the flow of interstate commerce by delivering them to various stores and retail locations." JA15 at ¶ 18.

- Plaintiffs pick up and drop off products at the Defendants' warehouse in Waterbury, Connecticut approximately five days per week …. JA17 at ¶ 30.

- Distributors such as Plaintiffs "work at least forty hours per week delivering the baked goods for defendants" and "[t]his work mainly consists of driving vehicles to stores within a territory designated by Defendants, delivering Defendants' products to these stores, and arranging the products on the shelves according to Defendants' standards." JA17 at ¶ 33.

Consistent with these facts, numerous courts have discussed the type of work performed by Defendants' "distributors" like Plaintiffs and reaffirmed that Plaintiffs here are among a class of workers engaged in interstate transportation. See Dkt. 62 at 16-18 (summarizing cases). This includes Neff v. Flowers Foods, Inc., a similar case brought by Flowers Foods distributors, in which the court described the delivery duties of these same distributors in great detail. 2019 WL 10750005, at *2 (D. Vt. May 16, 2019).

## III. There is No Support for Defendants' Assertion that the Court Should Sidestep the Dispositive, Threshold Question of Federal Law that was the Basis of the District Court's Decision

In the Response Brief, Defendants-Appellees offer the unorthodox argument that this Court should ignore the threshold, dispositive issue of federal law that is at the heart of this appeal. It is true that in the absence of the FAA, state law may provide grounds to determine whether to enforce Defendants' arbitration

agreement. However, in the decisions exploring whether state law provides an independent basis to enforce an arbitration agreement purportedly governed by the FAA, the courts first must determine whether the FAA applies, and only where the FAA is inapplicable would the court turn to the enforceability of the agreement under state law. See, e.g., Waithaka v. Amazon.com, Inc., 966 F.3d 10, 26 (1st Cir. 2020) ("Having concluded that the FAA does not govern the enforceability of the dispute resolution section of the Agreement, … we must now decide whether such arbitration may still be compelled pursuant to state law."). The Court should follow this same process here.

Indeed, the Court also cannot sidestep the application of the FAA because in their own Response Brief, Defendants ask the Court to decide whether Connecticut state law is "not inconsistent" with the FAA under the plain language of the arbitration agreement. It is impossible to determine whether state law is "inconsistent" with the FAA unless the Court first determines whether Plaintiffs' contracts are covered by the FAA.[3]

---

[3] The state law issues that the Defendants-Appellees ask the Court to address involve the enforceability of the arbitration agreement under state law, which is potentially fact-intensive. For example, Plaintiffs argued in Opposition to the motion to compel arbitration that enforcement of the arbitration agreement would be unconscionable and would violate Connecticut public policy. See JA186. These arguments are by their nature fact intensive. Pierce v. Emigrant Mortg. Co., 463 F. Supp. 2d 221, 225 (D. Conn. 2006) ("determining whether a particular agreement is unconscionable requires a fact-intensive examination of the agreement at issue"). The district court did not reach these arguments because it

**IV. Under the Threshold Question, Plaintiffs are Exempt from the FAA because they Drive Delivery Trucks on a Full-Time Basis to Deliver Defendants' Bread Products to Markets**

The threshold question before the district court and before this Court is whether Plaintiffs are transportation workers who are exempt from the FAA. As set forth in Plaintiffs' Brief, the correct definition of transportation workers exempt from the Act are those classes of workers who are 1) "actually engaged in the movement of interstate or foreign commerce" (as long as that work is more than incidental to their job duties), see New Prime Inc., 139 S. Ct. at 536; Rittmann v. Amazon.com, Inc., 971 F.3d 904, 911 (9th Cir. 2020) or 2) are engaged in work "so closely related thereto" as to be in practical effect part the movement of interstate commerce. See Erving, 468 F.2d at 1069 (citing Tenney, 207 F.2d at 452).[4] Plaintiffs meet the first part of the definition and they are transportation workers exempt from the FAA.

---

correctly held that the interpretation of the parties' agreement did not permit application of state law. These potentially fact-intensive arguments of unconscionability should not be addressed for the first time on appeal. See Penguin Grp. (USA) Inc. v. Am. Buddha, 609 F.3d 30, 41 (2d Cir.) ("Inasmuch as these issues likely involve additional questions of fact, they would best be decided by the district court, if necessary, in the first instance.").

[4]    The Third Circuit's opinion in Tenney, which has been approved by this Court, was based on the Supreme Court's construction of similar statutory text. See Tenney, 207 F.2d at 453 ("This language had been construed by the Supreme Court to include only employees engaged in interstate transportation or in work so closely related to it as to be practically a part of it.").

In their Responsive Brief, Defendants invent a purported "three-part test" that they ask this Court to adopt in defining whether someone is a "transportation worker." <u>See</u> Resp. Br. at 26. This novel "test" is cobbled together from case law that either does not stand for the proposition Defendants say it does or simply does not apply—or both. Not surprisingly, Defendants do not cite to any decision **<u>from any court</u>** adopting such a three-part definition. Defendants' proposed definition is inconsistent with the Supreme Court's decision in <u>New Prime</u> as well as numerous other appellate decisions.

## A.      <u>Plaintiffs are Transportation Workers</u>

Here, the District Court correctly concluded that the Plaintiffs were responsible for transporting goods in the flow of interstate commerce and the court correctly assumed that Plaintiffs spend the majority of their working hours delivering products. <u>See</u> SA14. The facts set forth in the Complaint, which must be accepted at this stage, <u>see</u> <u>Schnabel</u>, 697 F.3d at 113, clearly explain that Plaintiffs personally operate delivery trucks on a full-time basis to distribute baked goods to retailers. Moreover, Defendants acknowledge, and the district court held, that these deliveries are part of interstate commerce because Defendants' products are manufactured out of state and are delivered to warehouses in-state and ultimately to store shelves by Plaintiffs. SA9.

The Supreme Court has been clear that when a worker personally operates a commercial truck to deliver products, he or she is among the class of transportation workers exempt from the FAA.  See New Prime Inc., 139 S. Ct. at 536 ("his agreement to drive trucks for New Prime qualifies as a 'contract[ ] of employment of ... [a] worker[ ] engaged in ... interstate commerce.'");see also Kowalewski v. Samandarov, 590 F. Supp. 2d 477, 485 (S.D.N.Y. 2008) ("The handful of cases in this Circuit that have found that a worker falls under the residuary [transportation worker] exemption…. all involved workers who either physically move goods through interstate commerce, such as truck drivers, or workers who are closely tied to this movement."); Lenz v. Yellow Transp., Inc., 431 F.3d 348, 351 (8th Cir. 2005) ("Indisputably, if Lenz were a truck driver, he would be considered a transportation worker under § 1 of the FAA."); Palcko v. Airborne Express, 372 F.3d 588, 593-94 (3d Cir. 2004) (assuming that truck drivers fall within the scope of the exemption); Carr v. Transam Trucking, Inc., 2008 WL 1776435, at *2 (N.D. Tex. Apr. 14, 2008) ("Truck drivers, like plaintiff, are considered 'transportation workers' within the meaning of this exemption."); Veliz v. Cintas Corp., 2004 WL 2452851, at *5 (N.D. Cal. Apr. 5, 2014) ("The most obvious case where a plaintiff falls under the FAA exemption is where the plaintiff directly transports goods in interstate [commerce], ….").  Thus, Plaintiffs easily satisfy the first part of the Tenney "transportation worker" definition and they are exempt from the FAA.

It is true that Courts have held that an employee's work moving goods in interstate commerce must be more than "incidental" for the exemption to apply. See Rittmann, 971 F.3d at 911. For example, if Plaintiffs only occasionally operated a commercial vehicle to move goods in interstate commerce, their membership among a class of workers who move goods in interstate commerce may be a harder question. See Hill v. Rent-A-Center, Inc., 398 F.3d 1286, 1289 (11th Cir. 2005) (holding that an account manager for a furniture and equipment rental business who only occasionally made out-of-state deliveries was not part of a class of workers in the transportation industry who transport goods in interstate commerce).[5] However, here the undisputed facts are that Plaintiffs personally drive trucks to deliver bread on a full-time basis, the products originate out-of-state, and the district court further allowed (as have the other courts looking at the

_____

[5]     The factual record in Hill is not remotely similar to the one here.  In Hill, the plaintiff only occasionally delivered rental furniture out of state.  See Hill, 398 F.3d at 1289.  And unlike here, where the district court found that Plaintiffs deliver goods in the flow of interstate commerce (i.e., from a warehouse to the store shelves), in Hill the rental furniture had already been indefinitely at rest at the Rent-A-Center store location.  See Defendant-Appellee's Brief (Hill), 2004 WL 3314614, at *24 (11th Cir. May 29, 2004) ("Most of the deliveries that Hill made were of merchandise that came directly off the sales-floor or was in inventory at the store.").  In this sense, the facts of Hill are more akin to the Seventh Circuit's opinion in Wallace v. Grubhub Holdings, Inc., 970 F.3d 798 (7th Cir. 2020), which holds that the local delivery of prepared foods from restaurants does not meet the definition of moving goods in interstate commerce, because even if the ingredients for the foods originated out-of-state, they ended their interstate journey at the restaurant. That is certainly not the case here, where the bread products do not end their interstate journey until the Plaintiffs transport them to the store's shelves.

Flowers Foods model, <u>see</u> Opening Br. at 16-18) that this transportation work filled the "majority" of their working hours nearly every day. <u>See</u> SA14. Accordingly, their work was far from incidental or occasional.[6]  Indeed, the only way the products made it to the shelves in markets in Connecticut, is that plaintiffs delivered them to the stores --- there was no other mode of delivery.

### B.  <u>Defendants' Proposed "Transportation Worker" Test is Not Supported by the Law</u>

Defendants' ask the Court to apply an alleged "three-part test" to determine whether Plaintiffs are transportation workers.  However, Defendants' suggested "test" is foreclosed by the Supreme Court's decision in <u>New Prime</u> and consists of various considerations that are not relevant here, where the workers are truck drivers who are personally engaged in the interstate movement of goods.

### i.  <u>There is No Requirement that Transportation Workers Must be Employed in Specific Industries</u>

Defendants first contend that a transportation worker is limited only to a worker who is employed in the "transportation industry," and therefore only those workers employed by "shipping companies, trucking companies, and airlines" may be covered by the residual clause of the Section 1 exemption.  <u>See</u> Resp. Br. at 27.

---

[6]     The fact that distribution of products is central to Plaintiffs' work is evident from the most basic fact that Defendants required them to sign "Distribution Agreements" that outline countless transportation and distribution duties that the Plaintiffs personally fulfill.  <u>See</u> Dkt. 62 at 10-13.

Such a requirement is inconsistent with the text of the FAA and has been rejected by numerous courts. Defendants cite <u>Tenney</u> for the proposition that workers must be employed in a definitive transportation industry. <u>See</u> Resp. Br. at 29. <u>Tenney</u> states no such rigid requirement. To the contrary, the Court held that the "class of workers" covered by the exemption are any such workers "engaged in interstate transportation or in work so closely related to it as to be practically a part of it." <u>Tenney</u>, 207 F.2d at 453.

A "transportation industry" limitation would be inconsistent with the plain text in Section 1, which states that the residual exemption applies to "any other **class of workers** engaged in foreign or interstate commerce." (emphasis added). If Congress had intended to limit "workers engaged in foreign or interstate commerce" to only include employees for trucking companies, shipping companies, and airlines, it certainly could have said so.[7]

Moreover, even if this were a required element of the transportation worker definition, ***Plaintiffs are employed in the transportation industry***. As one court

---

[7]     Moreover, Defendants' "transportation industry" requirement that they seek to write into the Section 1 exemption would lead to absurd results. Under Defendants' formulation, a truck driver who was hired by a trucking company to deliver furniture across state lines would be employed in the "transportation industry" and would be exempt from the FAA, while a truck driver hired directly by a furniture retailer or manufacturer who transported those same goods on an identical interstate journey would be part of the "furniture industry" for purposes of the FAA analysis.

has already held, "in Flower Foods' own words, Plaintiffs' primary duty as distributors is to 'sell and distribute certain Flower Food products within a defined geographical footprint.'" Martins v. Flowers Foods, Inc., 463 F. Supp. 3d 1290, 1297-1298 (M.D. Fla. 2020) (internal citations omitted).[8] Thus, "[s]imply put, Plaintiffs are engaged in the transportation industry because their 'mission as distributors is to move goods'", and they work for the "distribution arm of Flower Foods, which means they are employed in the transportation industry." Id. (internal citations omitted).

However, it is not necessary to characterize the nature of Plaintiffs' "industry," because the Section 1 exemption is not limited only to people employed by trucking companies and airlines. In Waithaka v. Amazon, the First Circuit held that delivery drivers *for an online retailer* were transportation workers exempt from the FAA. The Court took into account the scope of Amazon's business, but refused to adopt any bright line rule that "transportation workers" were confined to particular industries: "to be clear, we do not hold that a class of workers must be employed by an interstate transportation business or a business of a certain geographic scope to fall within the Section 1 exemption." Waithaka, 966 F.3d at 23. Other courts have similarly held that truck drivers may be

---

[8]     The decision in Martins is currently on appeal at the Eleventh Circuit.  See Appeal No. 20-11378.

"transportation workers" even if their work is limited to an exclusive type of commerce or a niche market, because regardless of the actual product that they transport, the workers in question remain personally involved in the movement of interstate commerce. See Smith v. Allstate Power Vac, Inc., 2020 WL 5086584, at *3 (E.D.N.Y. Aug. 26, 2020) (driver of waste removal truck who was employed in the waste-removal industry was transportation worker exempt from the FAA).

Though it is true that some courts have analyzed whether workers may be employed in the "transportation industry" as part of the residual clause analysis, they have mainly done so after first determining that the worker did not personally transport goods in interstate commerce. See Kowalewski v. Samandarov, 590 F. Supp. 2d 477, 483 (S.D.N.Y. 2008) (noting that the issue of the workers' "industry," which is the first of the Lenz factors, is formulated for the "specific context" of determining whether one who does not personally deliver goods may still be exempt under the second part of the Tenney definition). Similarly, in Erving, 468 F.2d 1064 and Maryland Cas. Co. v. Realty Advisory Bd. on Labor Relations, 107 F.3d 979, 982 (2d Cir. 1997), it was obvious that neither of the workers at issue (a basketball player and commercial cleaners, respectively) personally transported goods in interstate commerce. The Court then went on to state in summary fashion that these workers also were not employed in the

transportation industry; however, these decisions do not alter the definition of a transportation worker under the FAA.[9]

Here, unlike in <u>Erving</u> and <u>Maryland Casualty</u>, the district court has found that the workers personally moved goods in interstate commerce, and thus there is no reason to draw any characterization regarding Defendants' "industry." Regardless, as the court held in <u>Martins</u>, Flowers Foods delivery drivers like Plaintiffs do perform their work in the transportation industry because they are literally truck drivers for the distribution arm of one of the largest bakeries in the country.

---

[9] Defendants also argue that a court must consider whether a strike of Flowers delivery drivers like Plaintiffs would result in a work stoppage. This consideration is likewise not relevant here. Courts have only employed this analysis when attempting to divine whether a worker is akin to a railroad employee or seamen under the Act, where such a comparison is not obvious based on other considerations. However, where Plaintiffs here personally moved goods in interstate commerce, they are akin to seamen and railroad employees exempt from the FAA, and there is no need to draw further comparisons between these types of workers. However, even if the court were to consider the effect that a strike would have on interstate commerce, the question is not (as Defendants pose) what a strike of these two Plaintiffs would look like, but whether a strike of the entire class of bread delivery drivers across Connecticut would disrupt the flow of interstate commerce. Clearly a cessation of all bread deliveries to grocery stores in Connecticut would cause serious economic unrest. Indeed, the role delivery drivers play in maintaining a functional interstate economy has only been underscored by the COVID-19 pandemic.

*New Prime* Holds that Even Legitimate Independent Contractors Are Transportation Workers

For the second part of their purported "three-part test," Defendants next seek to resurrect an argument that was flatly rejected by the Supreme Court in <u>New Prime</u>. Defendants contend that the definition of a transportation worker excludes those who are "business owner franchisees." <u>See</u> Resp. Br. at 30 ("Plaintiffs Are Primarily Business Owner Franchisees, Not Transportation Workers."). Here, Defendants argue that Plaintiffs "own[] a business" and have "the ability to delegate responsibilities to others," and that they obtain their own delivery vehicles. Resp. Br. at 31-32.[10] According to Defendants, these facts alone require that Plaintiffs cannot be "transportation workers" exempt from the FAA because they are "business owners." <u>See</u> <u>id.</u> However, the Supreme Court in <u>New Prime</u> squarely rejected the argument that workers allegedly misclassified as independent contractors are not covered by the Section 1exemption.

In <u>New Prime</u>, a group of truck drivers asserted claims to recover unpaid wages. The putative employer, New Prime, required the drivers to sign "Operating Agreements" designating them independent contractors. The defendant in <u>New</u>

---

[10] As an initial matter, the facts in the Amended Complaint clearly establish that for purposes of the Connecticut wage laws and the FLSA, Plaintiffs are not independent business owners, but they are employees of Defendants; Defendants control all prices of products, retain the power to terminate Plaintiffs for unsatisfactory delivery services, prohibit Plaintiffs from performing their delivery services for competitors. <u>See</u> JA0012-0023.

Prime made the identical arguments that Appellees assert here -- contending that the truck drivers were not transportation workers because the contracts permitted them "to hire other drivers to provide shipping services under the Agreements," Petitioner's Br. at 4, New Prime, Inc. v. Oliveira, 2018 WL 2278112, at *4 (U.S. May 14, 2008).  The contracts required the drivers to "lease" their own equipment, rather than operate the employer's vehicle, id. at *34; and the named plaintiff owned and established "an independent business, Hallmark Truck LLC."  Id. at *33.  However, the Supreme Court held that the drivers were transportation workers whose contracts were exempt from the FAA, refusing to draw any distinction between transportation workers who signed independent contractor agreements and those who signed employment agreements.  See New Prime Inc. v. Oliveira, 139 S. Ct. 532, -- U.S. -- (2019) (holding that the transportation worker exemption excludes both employer-employee contracts and contracts involving independent contractors from FAA's coverage).  Here, Defendants' purported "transportation worker" definition that somehow excludes purported "business owners" is directly contrary to the holding in New Prime.

At bottom, New Prime makes clear that Congress intended the Section 1 exemption to cover all "classes of workers" engaged in the flow of interstate commerce and Congress in 1925 did not intend to draw any distinction between workers who might be (mis)labeled independent contractors in modern times.

### iii. There is No Requirement that Plaintiffs Cross State Lines

Finally, the third part of Defendants' new "three-part test" seeks to impose a requirement that numerous Circuit Courts have already rejected. They contend that in order to qualify for the Section 1 exemption, workers must personally cross state lines. See Resp. Br. at 34-37. This rigid distinction is nowhere to be found in the plain text or Supreme Court precedent. Accordingly, two recent decisions by the First Circuit and Ninth Circuit put this issue beyond reach and hold that a delivery driver who does not personally cross state lines remains subject to the Section 1 exemption where he or she hauls "goods on the final legs of interstate journeys." See Waithaka, 966 F.3d at 26; Rittmann, 971 F.3d at 915 (same class of last-leg delivery drivers are engaged in interstate commerce under the FAA where they carry goods that have crossed state lines and "remain in the stream of interstate commerce until they are delivered.").

Defendants attempt to dismiss the holdings of Waithaka and Rittmann by arguing that, unlike Amazon drivers, the workers here are "business owners." Resp. Br. at 36. This makes no sense. As discussed above, the Supreme Court held in New Prime that the FAA exemption applies to all workers, including those whose employers have (mis)labeled them independent contractor "business owners," and not just those workers who are labelled employees. New Prime, 139 S. Ct. at 542. The holdings of Waithaka and Rittmann are not contingent on the

worker being considered an employee of Amazon, as opposed to an independent

business that merely contracts with Amazon.  Indeed, both of those cases concern

delivery drivers *who were labelled by Amazon as independent contractors*, as

opposed to employees, and they are therefore indistinguishable from the facts and

legal questions at issue in this case.

      **C.**      **There Was Ample Evidence Presented to the District Court to Support a Finding that Plaintiffs are Transportation Workers**

In attempting to minimize Plaintiffs' transportation duties, Defendants not

only seek to rewrite the transportation worker definition, but they continue to

describe the facts in a manner that betrays the standard applicable on a motion to

compel arbitration.  On a motion to compel arbitration, the Court considers the

facts in the complaint and the additional materials submitted by the parties and

applies a "standard similar to that applicable for a motion for summary judgment."

Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003).  "In doing so, the court

must draw all reasonable inferences in favor of the non-moving party."  Nicosia v.

Amazon.com, Inc., 834 F.3d 220, 229 (2d Cir. 2016).

Here, the District Court first correctly relied upon the facts in Plaintiffs'

Complaint, SA2-3, and Defendants do not dispute or object to consideration of

these facts.  See Resp. Br. at 36.  However, on appeal the Defendants disregard the

most essential facts of the Complaint that bear directly on Plaintiffs' transportation

work and wrongly ask the Court to make numerous assumptions and inferences in

their favor.  As alleged in the operative complaint, Plaintiffs are delivery drivers

who personally drive trucks full of Defendants' goods that are manufactured

throughout the United States and delivered by Plaintiffs from Defendants'

warehouse to Connecticut retailers.  As discussed in Plaintiffs' Opening Brief, Dkt.

62 at 36-37, Defendants relied upon two paragraphs of a Declaration that only

generally summarized other duties that Flowers Foods has written into its

distributor agreements.  However, there was never any evidence presented that any

of the Plaintiffs or any other distributors actually perform those duties, let alone

that those duties were so substantial as to somehow transform a delivery driver into

a worker that is no longer engaged in transportation work.[11]  For example,

Defendants' Declarant stated that Plaintiffs' duties include "other activity

necessary to promote sales," but the Declaration does not identify what those other

duties might be, and in fact the Distributor Agreement itself plainly states that it is

Defendants (not Plaintiffs) who are responsible for all pricing, promotions, and

---

[11]     Indeed, the list of purported non-transportation "duties" included in the
Distributor Agreement is not indicative of the true nature of the employment
relationship.  For decades, sophisticated companies have cleverly drafted
"independent contractor agreements" for delivery drivers in order to conceal the
company's control over the drivers' work and evade state and federal employment
laws.  This is why the Connecticut Supreme Court has held that when determining
whether a worker is an employee or an independent contractor, "[t]he primary
concern is what is done under the contract and not what it says."  Latimer v.
Adm'r, Unemployment Comp. Act, 216 Conn. 237, 251, 579 A.2d 497, 505
(1990).

marketing materials, see JA0089-0091, 0095 (¶¶ 6.1, 8.9 and 13.2). Accordingly, Plaintiffs could not possibly have spent significant time "promoting sales" because Defendants had the exclusive authority to do so. As other courts have held, Plaintiffs and other Flowers distributors were not salespersons and it was Defendants who negotiated directly with the chain stores regarding shelf-space and the prices at which products would sell. See Dkt. 62 at 16-18 (summarizing these cases). There was no evidence presented below to establish that Plaintiffs' personal work moving goods in interstate commerce was somehow "incidental" to other undefined "activit[ies] necessary to promote sales" – and the Court may not draw inferences in Defendants' favor according to the appropriate legal standard.

## V. Defendants' Arbitration Agreement Does Not Permit the Application of Connecticut Law

As explained above, Plaintiffs are transportation workers engaged in interstate commerce and are therefore exempt from the FAA under the transportation worker exemption, 9 U.S.C. § 1. Contrary to Defendants' argument, the district court correctly held that in the absence of the FAA, Connecticut law cannot be applied to compel arbitration based on the language of Defendants' contract. It was Defendants who drafted the arbitration provision at issue, with the goal of ensuring that the Federal Arbitration Act would trump any application of state law that may lead to a result inconsistent with the FAA. Defendants now ask this Court to rewrite the contract to permit the application of state law even where

it is ***inconsistent with the FAA*** -- exactly what the contract Defendants drafted said may not happen. [12]

Here, the arbitration agreement states that all covered disputes "shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act (9 U.S.C. §§ 1, et seq.) ("FAA")…" JA0117.  The governing law provision of the arbitration agreement further states: "This Arbitration Agreement

---

[12]   Even if Connecticut could apply, under Connecticut law, "[i]t is well established that 'contracts that violate public policy are unenforceable.'" Brown v. Soh, 280 Conn. 494, 501, 909 A.2d 43, 48 (2006), quoting Solomon v. Gilmore, 248 Conn. 769, 774, 731 A.2d 280 (1999).  The Connecticut Supreme Court has found that the Connecticut General Assembly, "in promulgating both civil and criminal penalties [under Connecticut wage laws], recognized the important public policy of ensuring that employees receive wages due them." Butler v. Hartford Tech. Inst., Inc., 243 Conn. 454, 463, 704 A.2d 222, 227 (1997).  Equally important here, whether a contract is contrary to public policy turns on "the totality of the circumstances of any given case against the backdrop of current societal expectations." Brown v. Soh, 280 Conn. 494, 501 (2006).  Under Connecticut law, a court will not enforce a contract that "negate[s] laws enacted for the common good [,]" State v. Lynch, 287 Conn. 464, 477 (2008).; see also Jefferson Radiology, P.C. v. Baldwin, 2017 WL 3000714, at *2 (Conn. Super. Ct. June 8, 2017) ("if the contract contemplates acts against public policy, or forbidden by statute, it is inoperative." quoting Smith v. Delaney, 64 Conn. 264, 276, 29 A. 496 (1894).[12]
Here it is likely that in the absence of any FAA precedent, the Connecticut Supreme Court would hold that it would frustrate the public policy embodied in the Connecticut wage laws to enforce the arbitration agreement and class action waiver at issue.  In similar circumstances in Massachusetts, the Supreme Judicial Court has held and the First Circuit has affirmed that the SJC would therefore invalidate a class waiver in an employment contract…." Waithaka, 966 F.3d at 33. Connecticut has a similarly strong public policy favoring enforcement of its wage laws.  See generally Butler, 243 Conn. at 463.

shall be governed by the FAA and Connecticut law to the extent Connecticut law is not inconsistent with the FAA."  See JA0119.

In interpreting a contract, Connecticut courts "accord the language employed in the contract a rational construction based on its common, natural and ordinary meaning and usage as applied to the subject matter of the contract… where the language is unambiguous, we must give the contract effect according to its terms." Ramirez v. Health Net of Ne., Inc., 938 A.2d 576, 586 (Conn. 2008).  Where an agreement contains "definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law."  Gold v. Rowland, 156 A.3d 477, 484 (Conn. 2017).  The "dictionary definition" of "inconsistent" is "incompatible, incongruous, [or] inharmonious," Ecological Rights Found. v. Pac. Gas & Elec. Co., 874 F.3d 1083, 1095 (9th Cir. 2017).

The only reasonable interpretation of this governing law provision is to preclude application of Connecticut law when it is inconsistent with the FAA.  As explained above, the FAA expressly exempts transportation workers like Plaintiffs from its coverage and thus the FAA intentionally excludes any rule upon which to enforce the arbitration agreement at issue in this case.[13]

---

[13]      Assuming the transportation worker exemption did not apply, there are a number of scenarios in which the FAA and the Connecticut Arbitration Act would be *consistent*, and these are likely the scenarios contemplated by Defendants (as the drafters) where Connecticut law could also apply to govern the arbitration provision and any arbitration proceedings thereunder.  For example, the CAA

When faced with an identical contractual provision in <u>Martins v. Flower Foods</u> (albeit one that referenced Florida and Georgia law, not Connecticut), the district court for the Middle District of Florida interpreted the contract language as follows:

> The FAA does not govern the agreements because… Plaintiffs are transportation workers exempt from the Act. Florida or Georgia law are in that regard both "inconsistent with" the FAA because neither contains a similar transportation worker exemption. Given this fundamental inconsistency, it appears that it is precisely *against* the parties' intent to apply Florida or Georgia law to the arbitration agreements.

<u>Martins v. Flowers Foods, Inc.</u>, 463 F. Supp. 3d at 1299 (internal quotation marks and citations omitted).

Just as the Ninth Circuit noted in <u>Rittmann</u>, if the Parties had intended Connecticut law to apply as an alternative basis to compel arbitration if the FAA was later held to be inapplicable, they certainly could have stated as much. In fact, Defendants cite to caselaw providing numerous examples of how they could have drafted their arbitration clause if they intended for Connecticut law to apply to compel arbitration in the absence of the FAA. In <u>Green v. U.S. Xpress Enterprises, Inc.</u>, 434 F. Supp. 3d 633 (E.D. Tenn. 2020), the arbitration clause was governed

---

permits parties to an arbitration to confirm their awards in a civil action in Connecticut Superior Court. <u>See</u> Conn. Gen. Stat. § 52-417. This is consistent with - and in addition to - the right of a party under Section 9 of the FAA to confirm an award in federal court. <u>See</u> 9 U.S.C. § 9.

by "the Federal Arbitration Act . . . or, if the Federal Arbitration Act is held not to apply, the arbitration laws of the State of Tennessee." Id. at 637. Here, the intent was that under no circumstances would Connecticut law apply to the arbitration clause if it would be "inconsistent" with the FAA, a far cry from the clear instructions of the agreement at issue in Green.

Defendants cannot claim now that they want Connecticut law to apply - even where inconsistent with the FAA – where the language it drafted says the opposite.

Finally, it is noteworthy that Defendants drafted the arbitration provision. Thus, if it was ambiguous as to whether the parties intended Connecticut state law to apply if the FAA was held not to apply, any ambiguity must be resolved against Defendants. As in Rittmann, "[b]ecause it is not clear that the parties intended to apply Washington law to the arbitration provision in the event the FAA did not apply, we construe ambiguity in the contract against Amazon to avoid that result." Rittmann v. Amazon.com, Inc., 971 F.3d 904, 920 (9th Cir. 2020).

## VI. The Question of Arbitrability Must be Decided by a Court

In a final effort to avoid an adverse decision on the merits of this appeal, Defendants-Appellees contend that the question of arbitrability should have been decided by the arbitrator. This argument is incorrect and is foreclosed by the Supreme Court's decision in New Prime. There, the Court held that even where there is an enforceable delegation clause in an arbitration agreement, "a court

should decide for itself whether § 1's 'contracts of employment' exclusion applies before ordering arbitration." New Prime, 139 S. Ct. at 537. The district court correctly cited to the holding of New Prime in explaining its authority to decide the Section 1 exemption question in this case. Defendants' suggestion that the FAA's applicability must be determined by an arbitrator is incorrect and foreclosed New Prime. At bottom, before a court can delegate any portion of a dispute to an arbitrator (under federal or state law) it must first decide whether there is an enforceable arbitration agreement to arbitrate in the first instance.

## VII. Conclusion

As explained herein and in Plaintiffs-Appellants' Opening Brief, the district court's decision should be reversed and remanded.

**Dated:** January 25, 2021                     Respectfully submitted,

 _/s/ Harold L. Lichten_
Harold L. Lichten,
Matthew W. Thomson
Zachary L. Rubin
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
hlichten@llrlaw.com
mthomson@llrlaw.com
zrubin@llrlaw.com

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rules of Appellate Procedure 32(a)(7)(B), 29(d), and Local Rule 32.1(a)(4)(B), I hereby certify that this brief contains 6,938 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii), as established by the word count of the computer program used for preparation of this brief.

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 14-point size Times New Roman font.

Dated: January 25, 2021

/s/ Harold L. Lichten_____
Harold L. Lichten, Esq.
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
hlicten@llrlaw.com

*Attorney for Plaintiff-Appellants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 25, 2021, true and correct copies of the foregoing Reply Brief was served on counsel of record for each of the Defendant-Appellees, via the CM/ECF system.

Dated: January 25, 2021

/s/ Harold L. Lichten
Harold L. Lichten, Esq.
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
hlichten@llrlaw.com

*Attorney for Plaintiff-Appellants*