# NO. 20-1681

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

Neal Bissonnette, Individually and on behalf of all others similarly situated,
Tyler Wojnarowski, Individually and on behalf of all others similarly situated,

*Plaintiffs-Appellants*,

v.

LePage Bakeries Park St., LLC,
C.K. Sales Co., LLC,
Flowers Foods, Inc.,

*Defendants-Appellees*.

On appeal from an order and judgment of the
United States District Court for the District of Connecticut,
Civil Action No. 3:19-cv-00965 (KAD)

**PLAINTIFFS-APPELLANTS' PETITION FOR REHEARING *EN BANC***

Harold L. Lichten, Esq.
Matthew Thomson, Esq.
Zachary L. Rubin, Esq.
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
hlichten@llrlaw.com
mthomson@llrlaw.com
zrubin@llrlaw.com
Attorneys for *Plaintiff-Appellants*

# TABLE OF CONTENTS

RULE 35(b) STATEMENT OF RATIONALE FOR GRANTING
    *EN BANC* REVIEW .......................................................................4

STANDARD OF REVIEW ..........................................................................7

ARGUMENT.................................................................................................7

    I.      Summary of the Record and the Panel's Decision ...........................7

    II.     The Panel's Decision Compelling Plaintiffs' Claims to
          Arbitration Warrants *En Banc* Review ...........................................11

          A.     The Panel's Interpretation of the Worker
                Exemption from the FAA Conflicts with the
                Supreme Court's Decision in *Southwest Airlines
                Co. v. Saxon* ...............................................................11

          B.     Even Without the Benefit of Saxon, the Panel's
                 Decision Created an Intercircuit Conflict
                 Requiring *En Banc* Review ...................................15

          C.     There Were No Facts in the Record Supporting
                 the Panel's Finding Regarding the Nature of
                 Defendants' Business ...............................................18

CONCLUSION.............................................................................................19

CERTIFICATE OF COMPLIANCE ........................................................21

CERTIFICATE OF SERVICE ..................................................................22

<u>**TABLE OF AUTHORITIES**</u>

**CASES**

<u>Bissonnette v. LePage Bakeries Park St., LLC</u>,
 2022 WL 4457998 (2d Cir. Sept. 26, 2022) ......................................... passim

<u>Bissonnette v. LePage Bakeries Park St., LLC</u>,
 33 F.4th 650 (2d Cir. 2022) ...........................................................................18

<u>Canales v. Lepage Bakeries Park St. LLC</u>,
 2022 WL 952130 (D. Mass. Mar. 30, 2022) ............................................6, 16

<u>Circuit City Stores, Inc. v. Adams</u>,
 532 U.S. 105 (2001).......................................................................................9

<u>Hamrick v. Partsfleet, LLC</u>,
 1 F.4th 1337 (11th Cir. 2021) ......................................................................10

<u>Int'l Broth. of Teamsters Loc. Union No. 50 v. Kienstra Precast, LLC</u>,
 702 F.3d 954 (7th Cir. 2012) .................................................................. 11, 16

<u>Kowalewski v. Samandarov</u>,
 590 F. Supp. 2d 477 (S.D.N.Y. 2008) .................................................... 12, 15

<u>Lenz v. Yellow Transp., Inc.</u>,
 431 F.3d 348 (8th Cir. 2005) ........................................................................16

<u>Loc. 50, Bakery & Confectionery Workers, Intern Union of Am., AFL v.</u>
 <u>Gen. Baking Co</u>,
 97 F. Supp. 73 (S.D.N.Y. 1951) ...................................................................17

<u>Rittmann v. Amazon.com, Inc.</u>,
 971 F.3d 904 (9th Cir. 2020) ..........................................................................6

<u>Saxon v. Sw. Airlines Co.</u>,
 993 F.3d 492 (7th Cir. 2021) .................................................................. 11, 16

<u>Smith v. Allstate Power Vac, Inc.</u>,
 482 F. Supp. 3d 40 (E.D.N.Y. 2020) ..............................................................6

Southwest Airlines v. Saxon,
        142 S. Ct. 1783 (2022)............................................................... passim

Waithaka v. Amazon.com, Inc.,
        966 F.3d 1 (1st Cir. 2020)...........................................................6, 16

**STATUTES**

9 U.S.C. § 1 ...................................................................................11

Fed. R. App. P. 35...........................................................................6, 7

Federal Arbitration Act ("FAA"),
        9 U.S.C. § 1, *et seq.* ............................................................. passim

## RULE 35(b) STATEMENT OF RATIONALE
## FOR GRANTING *EN BANC* REVIEW

As persuasively pointed out by Judge Pooler, the Panel's Opinion in this case directly conflicts with the Supreme Court's recent decision in <u>Southwest Airlines v. Saxon,</u> 142 S. Ct. 1783 (2022) and therefore Plaintiffs-Appellants respectfully request rehearing *en banc*. The Panel's holding that the Plaintiffs - individuals who work full-time driving commercial trucks and delivering products within the flow of interstate commerce - are not transportation workers exempt from the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA"), is not only irreconcilable with <u>Saxon</u>, but it also articulates a new standard that NO court has ever endorsed or applied, and it directly conflicts with decisions from other Circuits holding that the question of whether a worker is exempt from the FAA is based on the work actually being performed and not for whom it is being performed.

Specifically, the Panel here held that regardless of the actual work performed by an individual, he or she cannot be a transportation worker exempt from the FAA unless the work is completed for a business in the "transportation industry," such as a trucking company that "pegs its charges chiefly to the movement of goods." <u>Bissonnette v. LePage Bakeries Park St., LLC,</u> 2022 WL

4457998, at *5 (2d Cir. Sept. 26, 2022).[1] But in Saxon, the Supreme Court held the opposite and rejected an industry-based approach to the Section 1 exemption, holding that a worker is engaged in interstate commerce based on "what [the worker] does, not what [her employer] does generally." Saxon, 142 S. Ct. at 1788 (agreeing with the lower court's rejection of an "industrywide approach" to the Section 1 exemption).[2] For that reason alone, rehearing *en banc* is warranted so that the Court "as a whole" may "correct the majority's mistakes." Bissonnette v. LePage Bakeries Park St., LLC, 2022 WL 4457998, at *16 (Pooler, J., dissenting).

Second, even in the absence of Saxon, rehearing *en banc* would be necessary. As outlined in Judge Pooler's well-reasoned dissent, the Panel decision also conflicts with the authoritative decisions of other United States Courts of Appeals that have addressed the issue, including the Seventh Circuit's decision in Saxon that was affirmed by the Supreme Court as well as decisions from other

---

[1] The Panel initially issued an Opinion on May 5, 2022. The Saxon decision was issued on June 6, 2022. In light of Saxon, the Panel granted rehearing and vacated its Opinion. See Dkt. 160. No oral argument was conducted, and on September 26, 2022, the Panel issued a new Opinion. As discussed at length in the dissent of Judge Pooler, the new Opinion "ignore[s]" the recent binding precedent of Saxon. Bissonnette, 2022 WL 4457998, at *11 (2d Cir. Sept. 26, 2022) (Pooler, J., dissenting).

[2] Indeed, according to the Panel's decision, truck drivers who drive large trucks over the road who are employed by large manufacturers and retailers like Walmart would be subject to the FAA, while drivers doing the exact same work for trucking companies that contract with Walmart would be exempt, even though the work of the individual driver is identical. This makes no sense whatsoever.

Circuits. See Waithaka v. Amazon.com, Inc., 966 F.3d 10, 23 (1st Cir. 2020), cert. denied, —— U.S. ——, 141 S. Ct. 2794 (2021) ("[A] class of workers [need not] be employed by an interstate transportation business or a business of a certain geographic scope to fall within the Section 1 exemption[.]"); see also Fed. R. App. P. 35 (Committee Notes on Rules – 1998 Amendment) ("Intercircuit conflict is cited as one reason for asserting that a proceeding involves a question of 'exceptional importance.' …. [A]n *en banc* proceeding provides a safeguard against unnecessary intercircuit conflicts.").

Third, even if the Panel's industry-specific approach to the worker exemption were permitted post-Saxon, *en banc* review is appropriate because there were no facts in the record from which the Panel could conclude that all Defendants – including C.K. Sales Co., LLC – operated within the "bakery industry," as opposed to the transportation industry.

Thus *en banc* review is necessary to clarify the intercircuit conflicts and considerable confusion sewn by the panel`s decision.[3]

---

[3]    See, e.g., Canales v. Lepage Bakeries Park St. LLC, 2022 WL 952130, at *5-*6 (D. Mass. Mar. 30, 2022) (holding that distributors who performed identical tasks to plaintiffs were transportation workers exempt from the FAA), appeal pending at No. 22-1268 (1st Cir.); Smith v. Allstate Power Vac, Inc., 482 F. Supp. 3d 40, 46 (E.D.N.Y. 2020) (truck driver for waste removal company exempt from FAA); Rittmann v. Amazon.com, Inc., 971 F.3d 904, 917 (9th Cir. 2020) (delivery driver for online retailer exempt from FAA), cert. denied, —— U.S. ——, 141 S. Ct. 1374 (2021); Waithaka v. Amazon.com, Inc., 966 F.3d 10, 26 (1st Cir. 2020)

**STANDARD OF REVIEW**

Under Federal Rule of Appellate Procedure 35, an *en banc* hearing is not

favored and ordinarily will not be ordered *unless*:

(1) *en banc* consideration is necessary to secure or maintain uniformity of the
court's decisions; or

(2) the proceeding involves a question of exceptional importance.

Fed. R. App. P. 35 (a). Here, both conditions are satisfied. Given the recent

decision in <u>Southwest Airlines v. Saxon</u>, there is direct conflict between the

Panel's decision and a decision of the United States Supreme Court. In addition,

the issue is one of exceptional importance because even without the benefit of

<u>Saxon</u>, the Panel's decision created an intercircuit conflict. <u>See</u> Fed. R. App. P. 35

(Committee Notes on Rules – 1998 Amendment) ("Intercircuit conflict is cited as

one reason for asserting that a proceeding involves a question of 'exceptional

importance.'").

**ARGUMENT**

**I.      Summary of the Record and the Panel's Decision**

Plaintiffs are commercial truck drivers who worked full-time transporting

breads and bakery products from their manufacturer to supermarkets and other

grocery stores for Defendants Lepage Bakeries, Flowers Foods, and CK Sales.

---

(same), <u>cert. denied</u>, —— U.S. ——, 141 S. Ct. 2794 (2021), <u>reh'g denied</u>, —— U.S.
——, 141 S. Ct. 2886 (2021).

They all signed a so called "Distributor" Agreement in order to work. As stated in the complaint, Distributors such as Plaintiffs "work at least forty hours per week delivering [] baked goods for defendants…." JA17 at ¶ 33.[4] Specifically, the Plaintiffs operate DOT-registered trucks to pick-up bakery products "that have been delivered from one of Defendants' commercial bakery locations, and then transport those goods within the flow of interstate commerce by delivering them to various stores and retail locations." JA15 at ¶ 18.

The Panel held that despite Plaintiffs' full-time work delivering products in commercial, DOT-registered trucks, they are not exempt from the Federal Arbitration Act. The Federal Arbitration Act exempts from its coverage "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. The final category of "any other class of workers…" is referred to as the "residual clause." The Supreme Court has held that the residual clause does not exempt the contracts of all

---

[4]       As noted in the Dissent, "the defendants offer no evidence to counter the complaint's allegations that the actual delivery of product constituted the lion's share of the plaintiffs' work." <u>Bissonnette v. LePage Bakeries Park St., LLC</u>, 2022 WL 4457998, at *12 n.1 (2d Cir. Sept. 26, 2022) (Pooler, J., dissenting). "Like [the plaintiff in] <u>Saxon</u>, the plaintiff truckers handle goods traveling in interstate commerce every day. If Saxon is intimately involved with the transportation of those goods, the truckers here are, too." <u>Id.</u> at *12.

employees, but only contracts involving "transportation workers." <u>Circuit City Stores, Inc. v. Adams</u>, 532 U.S. 105, 109 (2001).

The Panel correctly observed that the classes of workers exempt from the statute should be defined "by affinity" in reference to the two examples that the FAA provides as exempt workers, i.e. "seamen" and "railroad employees." <u>Bissonnette v. LePage Bakeries Park St., LLC</u>, 2022 WL 4457998, at *4. However, the Panel went on to hold, without the benefit of any court decision or textual language supporting its interpretation, that "[t]hese examples are telling because they locate the 'transportation worker' in the context of a *transportation industry*." <u>Id.</u> But, as discussed below, the Supreme Court held in <u>Saxon</u> that the terms "seamen" and "railroad employee" are *not* industry-specific or industry-wide terms. To the contrary, the Court explicitly held that courts must look to what the worker does, not what industry the company is in. <u>See</u> <u>Sw. Airlines Co. v. Saxon</u>, 142 S. Ct. at 1788.[5]

---

[5]     The Opinion cites <u>Saxon</u> for the proposition that "seamen" were considered a subset of workers in the maritime shipping industry, thus excluding (for example) accountants and bookkeepers who worked for a shipping business but never stepped foot on a ship. The Panel's Opinion misinterprets the meaning of this statement in <u>Saxon</u>, by which the Supreme Court reiterated that the determination of whether one is a transportation worker is based on what the worker actually does, as opposed to the industry in which he or she is employed. This holding in <u>Saxon</u> fundamentally conflicts with the Panel's industry-specific approach to the transportation worker exemption.

Without citation to any authority, the Panel went on to hold that the residual clause is limited to only those individuals employed by a company that "pegs its charges chiefly to the movement of goods or passengers, and the industry's predominant source of commercial revenue is generated by that movement." Bissonnette v. LePage Bakeries Park St., LLC, 2022 WL 4457998, at *5 (2d Cir. Sept. 26, 2022). Applying those facts here, the Panel held that the Plaintiffs in this case are merely employed in the "bakery industry," and because they work full-time moving the employer's baked goods (as opposed to the goods of a third-party), plaintiffs are not transportation workers exempt from the FAA. See id. at *5 (holding that "those who work in the bakery industry are not transportation workers, even those who drive a truck from which they sell and deliver the breads and cakes").[6]

Judge Pooler authored a thoughtful and well-reasoned dissent, pointing out that the majority's interpretation of the Section 1 exemption is "textually baseless and inconsistent with the decisions of courts nationwide," including now the Supreme Court. Bissonnette, 2022 WL 4457998, at *11 (Pooler, J., dissenting).

---

[6]     The Panel cited favorably to the transportation worker "test" articulated by the Eleventh Circuit in Hamrick v. Partsfleet, LLC, 1 F.4th 1337 (11th Cir. 2021), which considered in part whether a worker was "employed in the transportation industry…" Id. at 1340.  The Hamrick decision predates the Supreme Court's decision in Saxon and is no longer good law.

Judge Pooler's dissent agrees with the majority of Circuits that have held that "a trucker is a transportation worker regardless of whether he transports his employer's goods or the goods of a third party[.]" Bissonnette, 2022 WL 4457998, at *14 (Pooler, J., dissenting), quoting Int'l Broth. of Teamsters Loc. Union No. 50 v. Kienstra Precast, LLC, 702 F.3d 954, 957 (7th Cir. 2012). Judge Pooler noted that "Section 1 asks whether a worker belongs to a class of workers 'engaged in interstate or foreign commerce.' 9 U.S.C. § 1. It does not ask for whom the worker undertakes her transportation work." Bissonnette, 2022 WL 4457998, at *14 (Pooler, J., dissenting). Therefore, "a transportation worker need not work for a transportation company.'" Bissonnette v. LePage Bakeries Park St., LLC, 2022 WL 4457998, at *14 (Pooler, J., dissenting), quoting Saxon v. Sw. Airlines Co., 993 F.3d 492, 497 (7th Cir. 2021), aff'd Saxon, 142 S. Ct. 1783.

## II. The Panel's Decision Compelling Plaintiffs' Claims to Arbitration Warrants *En Banc* Review

### A. The Panel's Interpretation of the Worker Exemption from the FAA Conflicts with the Supreme Court's Decision in <u>Southwest Airlines Co. v. Saxon</u>

As discussed above, the Panel in this case was tasked with determining whether Plaintiffs who worked full-time driving commercial trucks to deliver commercial goods within the flow of interstate commerce were members of a "class of workers engaged in foreign or interstate commerce." As Judge Pooler observed in dissent, the "one area of clear common ground" among federal courts

addressing the Section 1 exemption is that commercial truck drivers are exempt from the FAA. Bissonnette, 2022 WL 4457998, at *10 (Pooler, J., dissenting), quoting Kowalewski v. Samandarov, 590 F. Supp. 2d 477, 482-83 (S.D.N.Y. 2008) (collecting cases). The Panel disagreed and held that because Plaintiffs were truckers for a bakery company, they were not exempt. The Panel's holding conflicts with the recent decision in Saxon.

In Southwest Airlines v. Saxon, the Supreme Court considered whether a "ramp supervisor" for Southwest Airlines belonged to a "class of workers engaged in foreign or interstate commerce" that is exempt from the Federal Arbitration Act. The ramp supervisor's job responsibilities included supervising individuals who loaded and unloaded cargo from airplanes, as well as physically loading and unloading cargo on and off airplanes "on a frequent basis." Sw. Airlines Co. v. Saxon, 2022 WL 1914099, at *4. The Court held that "one who loads cargo on a plane bound for interstate transit is intimately involved with the commerce (*e.g.,* transportation) of that cargo," Sw. Airlines Co. v. Saxon, 142 S. Ct. at 1790, and therefore "[w]orkers, like Saxon, who load cargo on and off airplanes belong to a "'class of workers in foreign or interstate commerce.'" Id.

In so holding, the Supreme Court emphasized a two-step process to determining whether one is among a class of workers engaged in interstate commerce. First, the Court sought to "defin[e] the relevant 'class of workers' to

which Saxon belong[ed]." Id. at 1788-89. Saxon argued that "because air transportation as an industry is engaged in interstate commerce, airline employees constitute a class of workers covered by § 1." Id. at 1788 (alterations and internal quotation marks omitted). The Court "rejected Saxon's industrywide approach." Id. Instead, it reasoned, "[t]he word 'workers' directs the interpreter's attention to the *performance* of work," and "the word 'engaged' ... similarly emphasizes the actual work that the members of the class, as a whole, typically carry out." Id. (emphasis in original). Accordingly, Saxon was "a member of a 'class of workers' based on what she does …, not what [her employer] does generally." Id.

Second, the Court determined that this class of workers was "engaged in foreign or interstate commerce." Id. at 1789. Because "to be 'engaged' in something means to be 'occupied,' 'employed,' or 'involved' in it," and because commerce "includes, among other things, 'the transportation of ... goods, both by land and by sea,'" the Court explained that "***any class of workers directly involved in transporting goods across state or international borders falls within § 1's exemption***." Id. (emphasis added).

Contrary to the analysis in Saxon, the Panel's Decision holds in essence that "the plaintiffs are not transportation workers because they do not work for a trucking company." Bissonnette, 2022 WL 4457998, at *13 (Pooler, J., dissenting). As Judge Pooler explained, the "majority's revised decision continues to hold that

the plaintiffs are not transportation workers, even though they 'spend appreciable parts of their working days moving goods from place to place by truck,' because of what their employer, a baked goods company, does generally." Id. at *11 (Pooler, J. dissenting). This ignores the Supreme Court's instruction that a transportation worker is defined by the work that he or she actually does, not on what her employer does.

The implications of the Panel's Opinion are far-reaching. It is common for a company to hire its own drivers as opposed to contracting with a third-party trucking company to move its products interstate. "Scores of truckers in the United States work directly for beverage companies, furniture companies, retailers, food manufacturers, energy companies, and grocery stores. One cannot get far on an interstate without seeing an eighteen-wheeler soliciting for 'Drive4Walmart.com.'" Bissonnette, 2022 WL 4457998, at *13 (Pooler, J., dissenting). Under the Panel's reasoning, if Walmart used a third-party trucking company that pegged its charges to providing transportation services to move its retail products from a warehouse to a retail store, then the truck driver would be an exempt "transportation worker" because the trucking company would be charging Walmart for transporting the goods. However, if Walmart employed a truck driver directly to deliver the same products in the same truck on the same route, the driver would be covered by the FAA because Walmart is a retailer that charges customers for products;

transportation services are not Walmart's source of revenue. If that same driver then formed her own delivery company, though, which Walmart then hired, the driver would be back to being exempt. That makes no sense—and it conflicts with <u>Saxon</u>.

<u>Saxon</u> "makes plain that the drivers these companies [such as Walmart and other retailers] hire do not cease to be transportation workers the moment they are brought in-house. If the workers' principal daily tasks involve them in the actual movement of goods through interstate commerce, they are transportation workers." <u>Bissonnette</u>, 2022 WL 4457998, at *13, quoting <u>Saxon</u>, 142 S. Ct. at 1790 (describing as the "central feature of a transportation worker" the "active[ ] engage[ment] in transportation of ... goods across borders via the channels of foreign or interstate commerce" (internal quotation marks omitted)). "By focusing on the nature of the defendants' business, and not on the nature of the plaintiffs' work, the majority offers the sort of industrywide approach <u>Saxon</u> proscribes." <u>Bissonnette</u>, 2022 WL 4457998, at *13.

**B.**     **Even Without the Benefit of <u>Saxon</u>, the Panel's Decision Created an Intercircuit Conflict Requiring *En Banc* Review**

As Judge Pooler observed in dissent, even prior to the <u>Saxon</u> decision, the "one area of clear common ground" was that truck drivers were the types of workers excluded from the FAA. <u>See</u> <u>Bissonnette</u>, 2022 WL 4457998, at *14, quoting <u>Kowalewski v. Samandarov</u>, 590 F. Supp. 2d 477, 482-83 (S.D.N.Y. 2008)

(collecting cases) and <u>Lenz v. Yellow Transp., Inc.</u>, 431 F.3d 348, 351 (8th Cir. 2005) ("Indisputably, if Lenz were a truck driver, he would be considered a transportation worker under § 1 of the FAA."). The Panel's decision abandoned this "universally recognized principle." <u>Bissonnette</u>, 2022 WL 4457998, at *14. The Panel's holding that one must be employed in a specific industry to be an exempt transportation worker conflicts with the holdings of the Seventh Circuit and the First Circuit. <u>See</u>, <u>e.g.</u>, <u>Int'l Broth. of Teamsters Loc. Union No. 50 v. Kienstra Precast, LLC</u>, 702 F.3d 954, 957 (7th Cir. 2012) ("[A] trucker is a transportation worker regardless of whether he transports his employer's goods or the goods of a third party[.]"); <u>Saxon v. Sw. Airlines Co.</u>, 993 F.3d 492, 497 (7th Cir. 2021) ("[A] transportation worker need not work for a transportation company[.]"), <u>aff'd</u> <u>Saxon</u>, --- S. Ct. ---, No. 21-309, 2022 WL 1914099 (U.S. June 6, 2022); <u>Waithaka v. Amazon.com, Inc.</u>, 966 F.3d 10, 23 (1st Cir. 2020), <u>cert. denied</u>, ⸺ U.S. ⸺, 141 S. Ct. 2794 (2021) ("[A] class of workers [need not] be employed by an interstate transportation business or a business of a certain geographic scope to fall within the Section 1 exemption[.]"); <u>Canales v. Lepage Bakeries Park St. LLC</u>, 2022 WL 952130, at *6 (D. Mass. Mar. 30, 2022) (rejecting the argument that "an employer [must] be a transportation company for § 1 to apply"), appeal pending at No. 22-1268 (1ˢᵗ Cir.). Accordingly, even prior to

the Supreme Court's <u>Saxon</u> decision, the Panel's decision created an intercircuit conflict that would have required *en banc* review.

For nearly a century, bread companies in the United States have directly employed truck drivers to transport their products from large commercial bakeries to retail outlets throughout the United States so that the products can be sold to the general public. In this case, it is uncontested that the products that the Plaintiffs delivered were baked out of state and shipped hundreds of miles before arriving at a final retail location where they were sold. It is also uncontested that Flowers Foods "is one of the largest producers of packaged bakery foods in the United States. The company operates 47 highly efficient bakeries that produce a wide range of bakery foods for retail and food service customers in the U.S." <u>See</u> Joint Appendix at JA0003. Historically, employee delivery drivers of bread companies have played an integral role in interstate commerce. Labor unrest among these workers has caused serious disruptions of interstate commerce and everyday life. <u>See generally</u> <u>Loc. 50, Bakery & Confectionery Workers, Intern Union of Am., AFL v. Gen. Baking Co</u>, 97 F. Supp. 73, 74 (S.D.N.Y. 1951) (describing labor negotiations and strike of Bakery Drivers Union and production stoppage arising therefrom). This is indicative of the fact that the American transportation industry is comprised of some companies that choose to operate as "private carriers" to move their own goods and products in interstate commerce, while other companies

hire trucking companies (referred to as "contract carriers") to move their goods for them. Prior to the Panel's decision in this case, no court has ever held that "private carriers" operate outside of the transportation industry or that their employees cannot be transportation workers exempt from the FAA. Such a distinction is not supported by the text of the FAA, it conflicts with the holdings of other Courts of Appeals, and more importantly this type of industry-based approach has been specifically rejected by the Supreme Court in <u>Saxon</u>, which holds that in order to determine whether a worker exempt from the FAA, a court must look to what the worker actually does, as opposed to how the employer purports to characterize its business or account for its revenues. In light of these considerations, the Court should grant rehearing or rehearing *en banc* in this case.

### C.    There Were No Facts in the Record Supporting the Panel's Finding Regarding the Nature of Defendants' Business

Finally, even if the Panel's interpretation could somehow stand after <u>Saxon</u>, there were no facts supporting its application here. The Panel held that Plaintiffs were not transportation workers because they did not work in the transportation industry and their employer's "commerce is in breads, buns, rolls, and snack cakes—not transportation services." <u>Bissonnette v. LePage Bakeries Park St., LLC</u>, 33 F.4th 650, 656 (2d Cir. 2022). However, there were no facts in the record regarding each of the Defendant's "predominant sources of revenue" that may have supported such a finding. For example, Plaintiffs executed their Distributor

Agreements with Defendant CK Sales Co., LLC, a wholly owned subsidiary of Flowers Foods. Plaintiffs anticipate that further discovery would reveal that CK Sales does not earn any revenues from the sale of baked goods, and that it primarily generates revenue by designing "distribution territories" and selling the "distribution rights" to perform deliveries within those territories to Distributors like Plaintiffs—that is, it generates revenue through the distribution of goods, not the manufacturing of them. Given that the Panel announced a new rule and a new interpretation of the FAA that had never previously been used in this Circuit, in the very least Plaintiffs should have been permitted to return to the district court and develop a factual record regarding the sources of the Defendants' revenues and the transportation nature of their businesses in order to demonstrate that Plaintiffs are exempt from the FAA.

## CONCLUSION

Plaintiffs-Appellants respectfully suggest that rehearing *en banc* is necessary in this matter given that the Panel's Opinion directly conflicts with the Supreme Court's decision and with authoritative decision of other Circuit Courts of Appeals.

**Dated:** October 12, 2022

Respectfully submitted,

 */s/ Harold L. Lichten*
Harold L. Lichten,
Matthew W. Thomson
Zachary L. Rubin
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
hlichten@llrlaw.com
mthomson@llrlaw.com
zrubin@llrlaw.com

**CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rules of Appellate Procedure 35(b)(2), I hereby certify that this brief contains 3,898 words, excluding the parts of the brief exempted by Rule 32(f) as established by the word count of the computer program used for preparation of this brief.

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 14-point size Times New Roman font.

Dated: October 12, 2022

/s/ Harold L. Lichten_____
Harold L. Lichten, Esq.
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
hlicten@llrlaw.com

*Attorney for Plaintiffs-Appellants*

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 12, 2022, true and correct copies of the foregoing were served on counsel of record for each of the Defendants-Appellees, via the CM/ECF system.

Dated: October 12, 2022                    /s/ Harold L. Lichten
                                           Harold L. Lichten, Esq.
                                           Lichten & Liss-Riordan, P.C.
                                           729 Boylston Street, Suite 2000
                                           Boston, MA 02116
                                           (617) 994-5800
                                           hlichten@llrlaw.com

                                           *Attorney for Plaintiffs-Appellants*

# Exhibit A

20-1681-cv
<u>Bissonnette v. LePage Bakeries</u>

United States Court of Appeals
for the Second Circuit

AUGUST TERM 2021
No. 20-1681

NEAL BISSONNETTE, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY
SITUATED, AND TYLER WOJNAROWSKI, INDIVIDUALLY AND ON BEHALF OF ALL
OTHERS SIMILARLY SITUATED,
<u>Plaintiffs-Appellants</u>,

<u>v.</u>

LEPAGE BAKERIES PARK ST., LLC, C.K. SALES CO., LLC, AND FLOWERS FOODS, INC.,
<u>Defendants-Appellees</u>.

ARGUED: OCTOBER 22, 2021
DECIDED: MAY 5, 2022
AMENDED: SEPTEMBER 26, 2022

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF
CONNECTICUT

Before:     JACOBS, POOLER, <u>Circuit Judges</u>, GUJARATI, <u>District Judge</u>.*

---

* Judge Diane Gujarati of the United States District Court for the Eastern District
of New York, sitting by designation.

Plaintiffs, who deliver baked goods in designated territories in Connecticut, brought this action in the United States District Court for the District of Connecticut (Dooley, J.) on behalf of a putative class against the manufacturer of the baked goods that plaintiffs deliver.  The plaintiffs allege unpaid or withheld wages, unpaid overtime wages, and unjust enrichment.

The district court compelled arbitration pursuant to an arbitration agreement that is governed by the Federal Arbitration Act ("FAA") and Connecticut law.  Plaintiffs claim that they are not subject to the FAA because Section 1 of the FAA excludes contracts with "seamen, railroad employees, [and] any other class of workers engaged in foreign or interstate commerce."  9 U.S.C. § 1.  The exclusion is construed to cover "transportation workers."  The district court held that the plaintiffs did not qualify as transportation workers, ordered arbitration, and dismissed the case.  For the reasons below, we affirm.

Judge Jacobs concurs in a separate opinion, and Judge Pooler dissents in a separate opinion.

_____

2

HAROLD L. LICHTEN, Lichten & Liss-Riordan, P.C., Boston, MA (Matthew Thomson, Zachary L. Rubin, Lichten & Liss-Riordan, P.C., Boston, MA, <u>on the brief</u>), for Plaintiffs-Appellants.

TRACI L. LOVITT, Jones Day, New York, NY (Matthew W. Lampe, Jones Day, New York, NY; Amanda K. Rice, Jones Day, Detroit, MI; Margaret Santen Hanrahan, Ogletree Deakins Nash Smoak & Stewart, P.C., Charlotte, NC, <u>on the brief</u>), for Defendants-Appellees.

DENNIS JACOBS, <u>Circuit Judge</u>:

Plaintiffs deliver baked goods by truck to stores and restaurants in designated territories within Connecticut. They bring this action in the United States District Court for the District of Connecticut (Dooley, J.) on behalf of a putative class against Flowers Foods, Inc. and two of its subsidiaries, which manufacture the baked goods that the plaintiffs deliver. Plaintiffs allege unpaid or withheld wages, unpaid overtime wages, and unjust enrichment pursuant to the Fair Labor Standards Act and Connecticut wage laws. The district court granted the defendants' motion to compel arbitration and dismissed the case.

The decisive question on appeal is whether the plaintiffs are "transportation workers" within the meaning of the Federal Arbitration Act

("FAA"). That matters because the FAA, which confers on the federal courts an expansive obligation to enforce arbitration agreements, has an exclusion for contracts with "seamen, railroad employees, [and] any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. That exclusion is construed to cover "transportation workers." Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 119 (2001).

Of the issues subsumed in that question, some are settled. For example, an independent contractor can be a transportation worker, a point germane to this case in which the drivers own their routes and may sell them to others. New Prime Inc. v. Oliveira, 139 S. Ct. 532, 543-44 (2019).

The district court ruled that the plaintiffs are not "transportation workers" and "grant[ed] the Defendants' motion to dismiss in favor of arbitration." Special App'x 15. The court undertook a thorough review of the circumstances that might bear on the question, such as the extent of similarity between the plaintiffs' work and the work of those in the maritime and railroad industries. That analysis is consonant with the prescription in Lenz v. Yellow Transportation, Inc., 431 F.3d 348 (8th Cir. 2005), which approached the question

4

by considering eight non-exclusive factors.  We affirm without rejecting or

adopting the district court's analysis, which may very well be a way to decide

closer cases.  We hold that the plaintiffs are not "transportation workers," even

though they drive trucks, because they are in the bakery industry, not a

transportation industry.

In arriving at that holding, we first consider an alternative ground for

affirmance that might obviate the federal statutory question by allowing the

arbitration to proceed under Connecticut arbitration law, which has no exclusion

for transportation workers; but vexed questions beset a ruling that affirms on

that alternative basis.

We therefore must come to grips with whether the plaintiffs are

"transportation workers."  Our initial opinion on this appeal, Bissonnette v.

LePage Bakeries Park St., LLC, 33 F.4th 650 (2d Cir. 2022), concluded that they

are not.  The Supreme Court subsequently issued Southwest Airlines Co. v.

Saxon, 142 S. Ct. 1783 (2022) ("Saxon"), which provides guidance on the meaning

of "transportation workers," and the plaintiffs moved for rehearing or rehearing

en banc in light of this intervening authority.  We granted the motion for

rehearing and withdrew our opinion of May 5, 2022.  Now, after considering

Saxon, we again affirm the district court's order compelling arbitration and

dismissing the case.  Additional oral argument is unnecessary.[1]


# I

Flowers Foods, Inc. is the holding company of subsidiaries that produce

breads (including Wonder Bread), as well as buns, rolls, and snack cakes in 47

bakeries.  Other subsidiaries of Flowers Foods sell exclusive distribution rights

for the baked goods within specified geographic areas.  (Flowers Foods, Inc. and

its subsidiaries, including defendants LePage Bakeries Park St., LLC and C.K.

Sales Co., LLC, are hereinafter referred to as "Flowers.")  The individuals who

purchase the distribution rights--designated independent distributors--market,

sell, and distribute Flowers baked goods.  The relationship between Flowers and

---

[1] Defendants' request to respond to plaintiffs' petition for rehearing is denied as
moot.

6

each independent distributor is set out in a Distributor Agreement.  See Joint

App'x 84-159.

Plaintiffs Neal Bissonnette and Tyler Wojnarowski are two of these

independent distributors, both of whom own distribution rights in Connecticut.

Bissonnette, who previously delivered baked goods as an employee of Flowers,

entered into a Distributor Agreement with Flowers in 2017.  Wojnarowski

entered into a Distributor Agreement with Flowers in 2018.

Pursuant to the Distributor Agreement, the plaintiffs pick up the baked

goods from local Connecticut warehouses and deliver the goods to stores and

restaurants within their assigned territories.  Subject to certain adjustments, the

plaintiffs earn the difference between the price at which the plaintiffs acquire the

bakery products from Flowers, and the price paid by the stores and restaurants.

In their roles as independent distributors, the plaintiffs undertake to maximize

sales; solicit new locations; stock shelves and rotate products; remove stale

products; acquire delivery vehicles; maintain equipment and insurance; distribute

Flowers' advertising materials and develop their own (with prior approval by

Flowers); retain legal and accounting services; and hire help.  The plaintiffs may

7

also profit from the sale of their distribution rights.[2]  Though the plaintiffs are permitted to sell noncompetitive products alongside Flowers products, the plaintiffs concede that they do not work for any other company or entity, and that they typically work at least forty hours per week selling and distributing Flowers products.

The Distributor Agreement states that the parties may submit disputes arising from the Distributor Agreement to binding arbitration in accordance with the conditions set forth in an appended Arbitration Agreement.  The Arbitration Agreement provides that "any claim, dispute, and/or controversy . . . shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act (9 U.S.C. §§ 1, et seq.) . . ."  Joint App'x 117.  Arbitrability is an issue reserved to the arbitrator except for issues concerning the "prohibition

---

[2] The Distributor Agreement defines the plaintiffs as "independent contractor[s]" for all purposes, and makes clear that the plaintiffs are "independent business[es]."  The plaintiffs dispute that characterization.  But this distinction no longer matters for FAA purposes because the Supreme Court has clarified that the exclusion for "transportation workers" applies with equal force to employees and to independent contractors.  New Prime Inc. v. Oliveira, 139 S. Ct. 532, 543-44 (2019).

against class, collective, representative or multi-plaintiff action arbitration" and the "applicability of the FAA." Id. at 118. The Arbitration Agreement is "governed by the FAA and Connecticut law to the extent Connecticut law is not inconsistent with the FAA." Id. at 119.

## II

We have jurisdiction over the district court's order compelling arbitration and dismissing the case because it is a "final decision with respect to an arbitration" pursuant to Section 16(a)(3) of the FAA. See Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79, 86-87, 89 (2000).

## III

We review de novo the district court's order compelling arbitration. Atlas Air, Inc. v. Int'l Bhd. of Teamsters, 943 F.3d 568, 577 (2d Cir. 2019).

The Arbitration Agreement, which provides for arbitration "under the Federal Arbitration Act," elsewhere provides that it "shall be governed by the FAA and *Connecticut law to the extent Connecticut law is not inconsistent with the*

*FAA*."  Joint App'x 117, 119 (emphasis added).  Since Connecticut arbitration law has no exclusion for transportation workers, see Conn. Gen. Stat. Ann. § 52-408 (arbitration agreements shall be "valid, irrevocable and enforceable"), Flowers urges that we compel arbitration pursuant to Connecticut law, regardless of whether the FAA applies.

The Second Circuit has not ruled on the application of state law to arbitration agreements under the FAA.  One court within this Circuit has observed that "[m]ultiple courts" have rejected the proposition that "state arbitration law is preempted" when a plaintiff is excluded from the FAA.  Smith v. Allstate Power Vac, Inc., 482 F. Supp. 3d 40, 47 (E.D.N.Y. 2020) (Gershon, J.); see also Michel v. Parts Auth., Inc., 15 Civ. 5730 (ARR), 2016 WL 5372797, at *3 (E.D.N.Y. Sept. 26, 2016) ("Even assuming the FAA does not apply, New York state law governing arbitration does apply.").  Other Circuits lean the same way.[3]

_____

[3] See, e.g., Harper v. Amazon.com Servs., Inc., 12 F.4th 287, 295 (3d Cir. 2021) (observing that there is no language in the FAA that "explicitly preempts the enforcement of state arbitration statutes") (quoting Palcko v. Airborne Express, Inc., 372 F.3d 588, 595 (3d Cir. 2004)); see also Saxon v. Sw. Airlines Co., 993 F.3d 492, 502 (7th Cir. 2021) (explaining that even though the plaintiff qualified for the "transportation worker" exclusion to the FAA, she "could still face arbitration

Even if state law can compel arbitration when the FAA does not, the meaning of the phrase "not inconsistent" in the Arbitration Agreement is unclear. Joint App'x 119. Flowers argues that Connecticut law is "not inconsistent" with the FAA because the FAA does not *preclude* the enforcement of arbitration agreements with transportation workers. The plaintiffs counter that Connecticut law *is* inconsistent because the FAA excludes transportation workers while Connecticut law does not.

Prudence counsels against a remand for arbitration to proceed under Connecticut law. The availability of Connecticut arbitration entails the construal of a phrase with a disputed meaning. Ascertaining the intent of the parties would ordinarily involve a remand for fact finding. Although the Agreement provides that issues of arbitrability are reserved for the arbitrator, that expedient

---

under state law"), aff'd, 142 S. Ct. 1783 (2022); Oliveira v. New Prime, Inc., 857 F.3d 7, 24 (1st Cir. 2017), aff'd, 139 S. Ct. 532 (2019) (explaining that exclusion from the FAA pursuant to Section 1 "has no impact on other avenues (such as state law) by which a party may compel arbitration"); Cole v. Burns Int'l Sec. Serv., 105 F.3d 1465, 1472 (D.C. Cir. 1997) ("[W]e have little doubt that, even if an arbitration agreement is outside the FAA, the agreement still may be enforced.").

11

may be blocked because the arbitrator's ambit excludes the applicability of the FAA, which is implicated here.

True, "a court should decide for itself whether § 1's 'contracts of employment' exclusion applies before ordering arbitration." New Prime Inc., 139 S. Ct. at 537. But that prescription may not bear upon whether the availability of arbitration under state law can obviate the exclusion. See Harper v. Amazon.com Servs., Inc., 12 F.4th 287, 296 n.8 (3d Cir. 2021) (observing that "no binding precedent requires district courts to ignore arbitrability under state law when the applicability of § 1 is uncertain"); Hamrick v. Partsfleet, LLC, 1 F.4th 1337, 1353 (11th Cir. 2021) ("We would only look to state arbitration law *after* we decided the federal issue of whether the transportation worker exemption applied to the drivers.") (emphasis in original). Therefore, we proceed to decide whether the plaintiffs fall within the FAA exclusion.

**IV**

The FAA, which reflects a "liberal federal policy favoring arbitration agreements," Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1,

12

24 (1983), nevertheless excludes the employment contracts of "seamen, railroad employees, [and] any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. The class of workers encompassed by that residual clause is "transportation workers." Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 119 (2001). Since neither Congress nor the Supreme Court has defined "transportation worker," we define it by affinity. The two examples that the FAA gives are "seamen" and "railroad employees." 9 U.S.C. § 1. These examples are telling because they locate the "transportation worker" in the context of a *transportation industry*. See, e.g., Sw. Airlines Co. v. Saxon, 142 S. Ct. 1783, 1791 (2022) (explaining that "seamen" constitute a "subset of workers engaged in the maritime shipping industry").

One explanation advanced for the exclusion is that Congress "did not wish to unsettle established or developing statutory dispute resolution schemes covering specific workers." See Circuit City, 532 U.S. at 121. But that explanation does not limit or delineate the category. The specification of workers in a *transportation industry* is a reliable principle for construing the clause here.

Our cases have dealt with the exclusion, albeit in quite different contexts

and largely prior to <u>Circuit City</u>, 532 U.S. at 119, which narrowed the scope to transportation workers. The cases nevertheless adumbrated the principle that decides this case. The holding in <u>Erving v. Virginia Squires Basketball</u>, 468 F.2d 1064 (2d Cir. 1972)--that the FAA exclusion is limited to workers involved in the transportation industry--is still vital. <u>Id.</u> at 1069. For example, <u>Maryland Casualty Co. v. Realty Advisory Board on Labor Relations</u>, 107 F.3d 979 (2d Cir. 1997), ruled that employees of a commercial cleaner were not covered by the exclusion, which is "limited to workers involved in the transportation industries." <u>Id.</u> at 982. After <u>Circuit City</u>, 532 U.S. at 119, this Court observed that the exclusion did not apply to sheriffs because the clause is "interpreted . . . narrowly to encompass only 'workers involved in the transportation industries.'" <u>Adams v. Suozzi</u>, 433 F.3d 220, 226 n.5 (2d Cir. 2005) (quoting <u>Md. Cas. Co.</u>, 107 F.3d at 982).

Similarly, the Eleventh Circuit has held that an account manager at a company that rents and delivers furniture across state borders was subject to the FAA because he was "not a transportation industry worker." <u>Hill v. Rent-A-Ctr., Inc.</u>, 398 F.3d 1286, 1288 (11th Cir. 2005). <u>Hill</u> discerned that Congress intended

14

to exclude "a class of workers in the transportation industry, rather than . . . workers who incidentally transported goods interstate as part of their job in an industry that would otherwise be unregulated."  Id. at 1289; see also id. at 1290 ("[I]t is apparent Congress was concerned only with giving the arbitration exemption to 'classes' of transportation workers within the transportation industry.").  The test most recently articulated by the Eleventh Circuit is that the transportation worker exclusion applies if the employee is part of a class of workers: "(1) employed in the transportation industry; and (2) [who], in the main, actually engage[] in foreign or interstate commerce."  Hamrick, 1 F.4th at 1349 (remanding for the district court to consider whether last-mile delivery workers qualify for the exclusion).[4]

Although none of these cases defines "transportation industry," we

---

[4] The plaintiffs in this case cite Martins v. Flowers Foods, Inc., 463 F. Supp. 3d 1290 (M.D. Fla. 2020), which held that Flowers distributors perform their work in the transportation industry.  Id. at 1298.  But the Eleventh Circuit vacated the judgment by a summary order, directing reconsideration in light of Hamrick v. Partsfleet, LLC, 1 F.4th 1337 (11th Cir. 2021).  See Martins v. Flowers Foods, Inc., 852 F. App'x 519 (11th Cir. 2021) (summary order).  The district court has not yet issued a ruling on remand.

15

conclude that an individual works in a transportation industry if the industry in which the individual works pegs its charges chiefly to the movement of goods or passengers, and the industry's predominant source of commercial revenue is generated by that movement.

In <u>Erving</u> and <u>Maryland Casualty</u>, this Court set forth that only a worker in a transportation industry can be classified as a transportation worker. That point needed no elaboration in <u>Saxon</u> because there the plaintiff worked for an airline. An airline, an analog to transport by rail and sea, is in the business of moving people and freight, and its charges are for activity related to that movement. (Customers do not fly for the infotainment or the food.)

At the same time, as <u>Saxon</u> teaches, not everyone who works in a transportation industry is a transportation worker. To determine who is, we must consider "the actual work that the members of the class, as a whole, typically carry out," that is, what the worker "frequently" does for the employer. <u>See</u> 142 S. Ct. at 1788. It follows that not everybody who works in the airline industry is a transportation worker--many airline employees are engaged in accounting, regulatory compliance, advertising, and such. But in our case, the

distinctions drawn in <u>Saxon</u> do not come into play; those who work in the bakery industry are not transportation workers, even those who drive a truck from which they sell and deliver the breads and cakes.

The dissent's repeated incantation that the plaintiffs are exempt because they work in the "trucking industry" is erroneous. Although the plaintiffs spend appreciable parts of their working days moving goods from place to place by truck, the decisive fact is that the stores and restaurants are not buying the movement of the baked goods, so long as they arrive. Customers pay for the baked goods themselves; the movement of those goods is at most a component of total price. The commerce is in breads, buns, rolls, and snack cakes--not transportation services. <u>See, e.g.</u>, <u>Hill</u>, 398 F.3d at 1288-90 (holding that a Rent-A-Center manager whose "duties involved making delivery of goods to customers out of state in his employer's truck" did not work in the "transportation industry"). Although contractual parties cannot effectively stipulate to the status of employees as transportation workers (or not), the Distributor Agreement here recognizes and identifies the industry: "[m]aintaining a fresh market is a

17

fundamental tenet of the *baking industry*."[5]  Joint App'x 95 (emphasis added)**.**

Because the plaintiffs do not work in the transportation industry, they are

not excluded from the FAA, and the district court appropriately compelled

arbitration under the Arbitration Agreement.

**V**

The district court decided this case along the lines of analysis prescribed

by the Eighth Circuit in <u>Lenz v. Yellow Transportation, Inc.</u>, 431 F.3d 348 (8th

---

[5] Although the plaintiffs never leave the state of Connecticut, we do not consider whether this case could be decided on the ground that the interstate element of the exclusion is not satisfied.  The issue may not be simple.  <u>See, e.g.</u>, <u>Sw. Airlines Co. v. Saxon</u>, 142 S. Ct. 1783, 1789 n.2 (2022) (acknowledging that it can be difficult to define a class of workers' involvement in interstate commerce).  The baked goods originate outside of Connecticut; and there are railroads that operate within a single state, terminus to terminus--the Long Island Railroad comes to mind.

Notably, on successive days, two courts in the same district reached opposite conclusions as to whether rideshare drivers are engaged in interstate commerce.  <u>Compare</u> <u>Islam v. Lyft, Inc.</u>, 524 F. Supp. 3d 338, 353 (S.D.N.Y. 2021) (Abrams, J.) (exempt from the FAA because they perform "sufficient numbers of interstate rides, with sufficient regularity"), <u>with</u> <u>Aleksanian v. Uber Techs. Inc.</u>, 524 F. Supp. 3d 251, 262-63 (S.D.N.Y. 2021) (Carter, J.) (not exempt because "interstate trip[s]" are "occasional").

Cir. 2005). Lenz adduced eight "non-exclusive" factors for "determining

whether an employee is so closely related to interstate commerce that he or she

fits within the § 1 exemption":

> [F]irst, whether the employee works in the
> transportation industry; second, whether the employee
> is directly responsible for transporting the goods in
> interstate commerce; third, whether the employee
> handles goods that travel interstate; fourth, whether the
> employee supervises employees who are themselves
> transportation workers, such as truck drivers; fifth,
> whether, like seamen or railroad employees, the
> employee is within a class of employees for which special
> arbitration already existed when Congress enacted the
> FAA; sixth, whether the vehicle itself is vital to the
> commercial enterprise of the employer; seventh, whether
> a strike by the employee would disrupt interstate
> commerce; and eighth, the nexus that exists between the
> employee's job duties and the vehicle the employee uses
> in carrying out his duties (i.e., a truck driver whose only
> job is to deliver goods cannot perform his job without a
> truck).

Id. at 352. The district court relied upon certain Lenz factors, but not all, and not

explicitly. See Bissonnette v. Lepage Bakeries Park St., LLC, 460 F. Supp. 3d 191,

198-202 (D. Conn. 2020). Although we identify no error in the district court's

conscientious analysis, we resolve the question before us on the more

19

straightforward ground that the plaintiffs do not work in a transportation

industry.

We acknowledge that our approach is not a universal solvent.  We do not

attempt to decide issues that have arisen across the federal court system as to

which of the following workers may be a "transportation worker":

- Workers who transport goods or passengers within a state, when those goods or passengers originate out of state.  See, e.g., Wallace v. Grubhub Holdings, Inc., 970 F.3d 798, 802 (7th Cir. 2020) (holding that food delivery drivers who do not cross state lines are subject to the FAA); Capriole v. Uber Techs., Inc., 7 F.4th 854, 865-66 (9th Cir. 2021) (holding that Uber drivers are subject to the FAA because most of their trips are intrastate).

- Workers for major retailers who transport goods intrastate within a larger transportation network that is interstate.  Compare Rittmann v. Amazon.com, Inc., 971 F.3d 904, 917 (9th Cir. 2020), cert. denied, 141 S. Ct. 1374 (2021) (holding that Amazon contractors are transportation workers because they "complete the delivery of goods that Amazon ships across state lines and for which Amazon hires . . . workers to complete the delivery"); Waithaka v. Amazon.com, Inc., 966 F.3d 10, 26 (1st Cir. 2020), cert. denied, 141 S. Ct. 2794 (2021), reh'g denied, 141 S. Ct. 2886 (2021) (holding that "last-mile delivery workers who haul goods on the final legs of interstate journeys are transportation workers engaged in . . . interstate commerce," even if they do not themselves cross state lines) (internal quotation marks omitted), with Hamrick, 1 F.4th at 1351 (remanding to consider whether final-mile delivery workers "are in a class of workers employed in the transportation industry

20

that actually engages in foreign or interstate commerce").

We have no occasion to hazard answers to these questions.

## CONCLUSION

For the reasons stated above, we affirm the order compelling arbitration

and dismissing the case.

# Exhibit B

DENNIS JACOBS, Circuit Judge, concurring:

The obligation to consider appellate jurisdiction ordinarily entails a straightforward analysis.  In this case, the straightforward analysis leads to another and difficult question.

Having issued an order to compel arbitration, the district court dismissed the case, and assured the parties that "[i]f, after the arbitration, any party seeks further relief from the Court, the Clerk of Court shall direct assign any such motion or petition to the undersigned."  Special App'x 15.  The dismissal amounts to a final order, notwithstanding the contemplation of further initiatives--such as confirmation, vacatur, or modification of the award--that may be sought in future litigation.  So pursuant to Section 16(a)(3) of the Federal Arbitration Act ("FAA"), we have jurisdiction over this appeal.  But the contemplation of future litigation reflects an intuitive appreciation that the district court's role under the FAA may be unfulfilled.  The district court, having power to stay proceedings pending arbitration, should not have dismissed the case.

# I

When a district court grants an application to enforce an arbitration clause, there is a question as to whether Section 3 of the FAA requires that a stay be entered. Courts across the Circuits are divided on this question; some hold that a stay is mandatory, and others hold that a district court may dismiss the case.[1] In 2015, our decision in <u>Katz v. Cellco Partnership</u>, 794 F.3d 341 (2d Cir. 2015) ("<u>Katz</u>"), articulated the rule as follows: a stay is mandatory when "all claims have been referred to arbitration *and a stay requested*." <u>Id.</u> at 345 (emphasis added). Following <u>Katz</u>, courts in this Circuit are split on whether a stay is required even if no party requests one.[2]

This issue is consequential. When a case is stayed pending arbitration, the order compelling or directing arbitration is interlocutory, and therefore

--------

[1] <u>Compare, e.g.</u>, <u>Bender v. A.G. Edwards & Sons, Inc.</u>, 971 F.2d 698, 699 (11th Cir. 1992) (per curiam) ("Upon finding that a claim is subject to an arbitration agreement, the court should order that the action be stayed pending arbitration."), <u>with</u> <u>Bercovitch v. Baldwin School, Inc.</u>, 133 F.3d 141, 156 & n. 21 (1st Cir. 1998) ("[A] court may dismiss, rather than stay, a case when all of the issues before the court are arbitrable.").

[2] <u>Compare</u> <u>China Media Express Holdings, Inc. by Barth v. Nexus Exec. Risks, Ltd.</u>, 182 F. Supp. 3d 42, 53 (S.D.N.Y. 2016) (staying case "[p]ursuant to the Second Circuit's decision in <u>Katz</u>" even though parties seeking arbitration requested dismissal); <u>Merrick v. UnitedHealth Grp. Inc.</u>, 127 F. Supp. 3d 138, 154

2

unappealable; the parties must proceed forthwith to arbitration.  But when such a case is dismissed, the party resisting arbitration can appeal at once, and thereby delay the arbitration, with associated costs and uncertainties.  This appears to be where we are now.

How did we get here?  In this case, Flowers moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) and the FAA, or in the alternative, to compel arbitration.  For some reason, Flowers explicitly sought a dismissal "in lieu of a stay," see Joint App'x 73-74, and the plaintiffs, who resisted arbitration, did not request a stay.  Thus, the district court granted Flowers' "motion to dismiss in favor of arbitration," closed the case, and directed the Clerk of Court to assign any post-arbitration petitions for relief to the same judge.  Special App'x 15-16.  Today, we have affirmed the order compelling arbitration and dismissing the case.

---

(S.D.N.Y. 2015) (staying the action even though "no party has requested a stay"), with Benzemann v. Citibank N.A., 622 F. App'x 16, 18 (2d Cir. 2015) (summary order) (ruling that because the plaintiff did not request a stay, "Section 3 did not require the district court to stay the proceedings"); Zambrano v. Strategic Delivery Sols., LLC, No. 15 Civ. 8410, 2016 WL 5339552, at *10 (S.D.N.Y. Sept. 22, 2016) (observing that "because Defendants seek dismissal rather than a stay . . . this Court has discretion whether to stay or dismiss Plaintiffs' action under the FAA," and ultimately staying the case).

3

Katz can be read to mean that, when no stay is requested, the district court retains discretion to stay the case *or* dismiss it.  That reading is invited by Katz without being compelled by it.

## II

Katz construed Section 3 of the FAA to mandate a stay when "all claims have been referred to arbitration and a stay requested."  794 F.3d at 345. However, the FAA mandates a stay whether or not a party requests one.  This construal is consistent with the purpose of the FAA.

Properly construed, the text of Section 3 bars a court from enforcing an arbitration clause sua sponte; but if a party applies for enforcement of the clause, Section 3 requires a court that enforces it to stay proceedings in the interim:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, ***shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement,*** providing the applicant for the stay is not in default in proceeding with such arbitration.

4

9 U.S.C. § 3 (emphasis added).  Read naturally and in context, the referenced "application of one of the parties" is the application to enforce the arbitration clause.  The text does not contemplate (let alone require) a separate application to stay proceedings in district court.  See Cont'l Cas. Co. v. Am. Nat'l Ins. Co., 417 F.3d 727, 732 n.7 (7th Cir. 2005) ("[T]he proper course of action when a party seeks to invoke an arbitration clause is to *stay* the proceedings pending arbitration rather than to dismiss outright.") (emphasis in original).

Reading Section 3 to require a stay pending arbitration regardless of whether a stay has been requested is consistent with the FAA's pro-arbitration posture.[3]  Congress intended the FAA to "move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 22 (1983). That is why the FAA "provides two parallel devices for enforcing an arbitration

---

[3] For what it is worth, Katz does not clearly say otherwise.  Katz observes that Section 3's "plain language specifies that the court 'shall' stay proceedings pending arbitration, provided an application is made and certain conditions are met."  794 F.3d at 345.  Katz does not specify the type of "application" that must be made, though (in my view) Katz does (and must be read to) reference the application to enforce an arbitration clause.  Nor does Katz point to anything in the statute that says that a mandatory stay is dependent upon an explicit request for a stay.

agreement: a stay of litigation in any case raising a dispute referable to arbitration, 9 U.S.C. § 3"--at issue here--"and an affirmative order to engage in arbitration, § 4." Id. It is hard to square congressional intent with the idea that Section 3's mandatory stay is conditional upon a party's explicit request for a stay alongside its application to compel arbitration.

The FAA provision governing appeals underscores the congressional policy of "rapid and unobstructed enforcement of arbitration agreements." Moses, 460 U.S. at 23. Section 16 forecloses an appeal from an order that directs the parties to proceed with arbitration, including a stay order under Section 3:

> Except as otherwise provided in section 1292(b) of title 28 [interlocutory decisions], an appeal may not be taken from an interlocutory order--
> (1) granting a stay of any action under section 3 of this title;
> (2) directing arbitration to proceed under section 4 of this title;[4]
> (3) compelling arbitration under section 206 of this title [providing for enforcement abroad and court-appointed arbitrators]; or

---

[4] 9 U.S.C. § 4, which deals with enforcement of arbitration clauses regardless of whether the contract has become the subject of federal litigation, provides in part: "The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."

(4)     refusing to enjoin an arbitration that is subject to
        this title.

<u>See</u> 9 U.S.C. § 16(b).  That provision "is a pro-arbitration statute designed to

prevent the appellate aspect of the litigation process from impeding the

expeditious disposition of an arbitration."  <u>Augustea Impb Et Salvataggi v.</u>

<u>Mitsubishi Corp.</u>, 126 F.3d 95, 99 (2d Cir. 1997) (quoting David D. Siegel, <u>Practice</u>

<u>Commentary: Appeals from Arbitrability Determinations</u>, 9 U.S.C.A. § 16, at 352

(West Supp. 1997)).[5]  The purpose is defeated if a dismissal is entered instead of a

stay.  <u>See</u> <u>Arabian Motors Grp. W.L.L. v. Ford Motor Co.</u>, 19 F.4th 938, 942 (6th

Cir. 2021) ("Because a dismissal, unlike a stay, permits an objecting party to file

an immediate appeal, a district court dismissal order undercuts the pro-

arbitration appellate-review provisions of the Act.").

---

[5] Not to the contrary is the FAA provision that an appeal may be taken from "a
final decision with respect to an arbitration."  9 U.S.C. § 16(a)(3).  The FAA
allows an appeal from a final decision that is entered after the arbitration has run
its course, <u>id.</u>, as well as appeals from, <u>inter alia</u>, orders that refuse a stay of an
action or deny a petition to arbitrate, <u>see</u> 9 U.S.C. § 16(a)(1).

### III

Our opinion in <u>Katz</u> is regrettable, particularly as the Supreme Court has now given guidance that reinforces my view of Section 3.  See <u>Badgerow v. Walters</u>, 142 S. Ct. 1310 (2022) ("<u>Badgerow</u>").  <u>Badgerow</u> conducted a thorough analysis of the FAA's text, and held that the "look through" approach for finding federal jurisdiction in petitions under Section 4 does not apply to petitions under Sections 9 and 10 of the FAA.  This holding has ramifications when a district court dismisses a case after compelling arbitration because a dismissal will certainly require a district court to find an independent jurisdictional basis whenever a new FAA petition arises from the same case.  A stay, however, may enable the court and the parties to sidestep these consequences.

It is settled that a federal court deciding whether to enforce an arbitration agreement under Section 4 must find an independent jurisdictional basis, either on the face of the petition (for diversity jurisdiction) or by looking through to the petition to see if the underlying controversy arises under federal law (for federal question jurisdiction).  See <u>Vaden v. Discover Bank</u>, 556 U.S. 49, 62 (2009); <u>Hermes of Paris, Inc. v. Swain</u>, 867 F.3d 321, 324 (2d Cir. 2017).  But, under <u>Badgerow</u>, a district court lacks jurisdiction over a petition to confirm or vacate

an arbitral award under Sections 9 and 10, respectively, unless the jurisdictional basis appears on the "face of the application itself." Badgerow, 142 S. Ct. at 1317-18.  This means that there must either be diversity jurisdiction, or a federal question with respect to the award's confirmation or vacatur (no examples of the latter are supplied in Badgerow itself).  Id.  Unlike with Section 4 petitions, courts may not locate federal question jurisdiction by looking through to the underlying controversy.  Id.  As a result of this ruling, many more Section 9 and 10 petitions will be adjudicated in state courts.  Id. at 1321-22.  This will raise an impediment to parties seeking federal court assistance to facilitate their arbitrations when there is no jurisdictional basis on the face of their petitions.

It is too early to say whether issuance of a stay pursuant to Section 3 may allow parties to seek enforcement, vacatur, or modification of an award, 9 U.S.C. §§ 9-11, or seek other assistance under the FAA, see id. §§ 5 (appointment of arbitrators), 7 (summoning witnesses), without need for an independent basis for federal jurisdiction--though Justice Breyer's dissent in Badgerow suggests as much.[6]  As this Court has observed, "practitioners who wish to preserve access

---

[6] Indeed, foreseeing the chaos post-Badgerow, Justice Breyer suggested that a stay is the solution: "[i]f a party to an arbitration agreement files a lawsuit in federal court but then is ordered to resolve the claims in arbitration, the federal court may stay the suit and possibly retain jurisdiction over related FAA

9

to federal courts for later disputes over arbitrators, subpoenas, or final awards [may] attempt to 'lock in' jurisdiction by filing a federal suit first, followed by motions to compel and a stay of proceedings." Doscher v. Sea Port Grp. Sec., LLC, 832 F.3d 372, 387 (2d Cir. 2016), abrogated on other grounds by Badgerow v. Walters, 142 S. Ct. 1310 (2022); see also Ian R. MacNeil et al., Federal Arbitration Law: Agreements, Awards, and Remedies under the Federal Arbitration Act § 9.2.3.1 (Supp. 1999) (explaining that when a district court stays proceedings pending arbitration, "[a]fter an award, parties desiring to confirm, vacate, or modify the award, can return to the federal court in which the stayed litigation is pending for determination of those issues," as "[t]he court had federal question subject matter jurisdiction and has never lost it.").

In short, the stay of a suit pending arbitration is (in my view) arguably compelled and certainly prudent.

---

motions." Badgerow, 142 S. Ct. at 1326 (Breyer, J., dissenting) (citing § 3, Vaden v. Discover Bank, 556 U.S. 49, 65 (2009)).  For its part, the Badgerow majority did not address the effect of a stay on a district court's jurisdiction to resolve later-filed FAA petitions; it explicitly declined to consider whether a district court would have jurisdiction to resolve a Section 5 petition that is made "in tandem with" a Section 4 petition.  Id. at 1320 n.6.

# Exhibit C

1    POOLER, *Circuit Judge*, dissenting:

2         The plaintiffs are commercial truck drivers who deliver the defendants'

3    packaged baked goods to supermarkets and other retail outlets in Connecticut.

4    They allege that the defendants deprived them of the legal protections owed to

5    employees, including the right to overtime premiums, by misclassifying them as

6    independent contractors. On appeal now is whether this serious charge should be

7    litigated, as the drivers want, or arbitrated, as their employer prefers. The parties

8    have an arbitration agreement. But the Federal Arbitration Act, which empowers

9    federal courts to enforce those agreements, does not apply to employment

10   contracts of "any . . . class of workers engaged in foreign or interstate commerce,"

11   9 U.S.C. § 1—that is, "transportation workers," *Circuit City Stores, Inc. v. Adams*,

12   532 U.S. 105, 119 (2001). The question, then, is whether the plaintiffs are

13   transportation workers.

14        When we first considered this case a few months ago, I thought the answer

15   was clear: Of course these truckers are transportation workers. *See Bissonnette v.*

16   *LePage Bakeries Park St., LLC*, 33 F.4th 650, 662 (2d Cir. 2022) (Pooler, *J.*, dissenting).

17   After all, the "one area of clear common ground" concerning this exemption to the

18   FAA has been that truck drivers qualify. *Kowalewski v. Samandarov*, 590 F. Supp. 2d

1

477, 482-83 (S.D.N.Y. 2008) (Sullivan, *J.*) (collecting cases). In view of this consensus, I thought anomalous and unfounded the majority's contrary conclusion that because the plaintiffs do their trucking for a bakery company, they "are in the bakery industry, not a transportation industry," hence not transportation workers. *Bissonnette*, 33 F.4th at 652. Instead, I would have joined the several other courts that have recognized the obvious: "[A] trucker is a transportation worker regardless of whether he transports his employer's goods or the goods of a third party." *Int'l Broth. of Teamsters Loc. Union No. 50 v. Kienstra Precast, LLC*, 702 F.3d 954, 957 (7th Cir. 2012).

The Supreme Court's decision in *Southwest Airlines Co. v. Saxon*, issued a month after our ruling, reinforces my view. *See* 142 S. Ct. 1783 (2022). *Saxon* directs our attention to "the actual work that the members of the class, as a whole, typically carry out." *Id.* at 1788. Someone "is therefore a member of a 'class of workers' based on what she does" for her employer, "not what [the employer] does generally." *Id.* Yet the majority, caught flat-footed by *Saxon*, elects to ignore it. The majority's revised decision continues to hold that the plaintiffs are not transportation workers, even though they "spend appreciable parts of their working days moving goods from place to place by truck," because of what their

2

employer, a baked goods company, does generally. Maj. Op. at 17. From the start, this holding was textually baseless and inconsistent with the decisions of courts nationwide. Add to that list the Supreme Court. For the second time now, therefore, I must respectfully dissent.

## I.    The Plaintiffs Are Transportation Workers.

Latrice Saxon was a ramp supervisor for Southwest Airlines. Her work "frequently require[d] her to load and unload baggage, airmail, and commercial cargo on and off airplanes that travel across the country." *Saxon*, 142 S. Ct. at 1787. The question before the Supreme Court was whether she belonged to a class of workers engaged in foreign or interstate commerce. In concluding that she did—and that her employment contract was therefore exempt from the FAA—the Court employed a two-step analysis. First, the Court sought to "defin[e] the relevant 'class of workers' to which Saxon belong[ed]." *Id.* at 1788-89. Saxon argued that "because air transportation as an industry is engaged in interstate commerce, airline employees constitute a class of workers covered by § 1." *Id.* at 1788 (alterations and internal quotation marks omitted). The Court "rejected Saxon's industrywide approach." *Id.* Instead, it reasoned, "[t]he word 'workers' directs the interpreter's attention to the *performance* of work," and "the word

'engaged' . . . similarly emphasizes the actual work that the members of the class, as a whole, typically carry out." *Id.* (emphasis in original). Accordingly, Saxon was "a member of a 'class of workers' based on what she does at Southwest, not what Southwest does generally." *Id.* And because Southwest had "not meaningfully contested that ramp supervisors like Saxon frequently load and unload cargo," the Court "accept[ed] that Saxon belongs to a class of workers who physically load and unload cargo on and off airplanes on a frequent basis." *Id.* at 1788-89.

Second, the Court determined that this class of workers was "engaged in foreign or interstate commerce." *Id.* at 1789. Because "to be 'engaged' in something means to be 'occupied,' 'employed,' or 'involved' in it," and because commerce "includes, among other things, 'the transportation of . . . goods, both by land and by sea,'" the Court explained that "any class of workers directly involved in transporting goods across state or international borders falls within § 1's exemption." *Id.* The Court concluded that "[a]irplane cargo loaders are such a class," because, among other reasons, "it is 'too plain to require discussion that the loading or unloading of an interstate shipment by the employees of a carrier is so closely related to interstate transportation as to be practically a part of it.'" *Id.* (quoting *Baltimore & Ohio Sw. R. Co. v. Burch*, 263 U.S. 540, 544 (1924)).

4

Applying this framework here, the plaintiffs plainly belong to a class of workers engaged in interstate commerce. We start by defining the relevant class, with a focus on the actual work the class members typically carry out. The plaintiffs "work at least forty hours per week delivering the" defendants' baked goods. App'x at 17 ¶ 33. This work principally consists of driving Department of Transportation-registered commercial trucks "to stores within a territory designated by Defendants, delivering Defendants' products to these stores, and arranging the products on the shelves according to Defendants' standards." App'x at 17 ¶ 33. The plaintiffs therefore belong to a class of workers who, in the majority's words, "spend appreciable parts of their working days moving goods from place to place by truck." Maj. Op. at 17. Or, in common parlance, they are commercial truck drivers.

But are the plaintiffs "engaged in foreign or interstate commerce?" 9 U.S.C. § 1. At first, this may look like a closer question, because they do not cross state lines. But neither did Saxon. She merely "load[ed] cargo on a plane bound for interstate transit." *Saxon*, 142 S. Ct. at 1790. Still, the Supreme Court held, "airplane cargo loaders plainly do perform 'activities within the flow of interstate commerce' when they handle goods traveling in interstate . . . commerce." *Id.* at

1792. It did not matter that Saxon "d[id] not physically accompany freight across state or international boundaries." *Id.* at 1791. The same is true of these truckers. The loaves of Wonder Bread they transport are delivered to the defendants' warehouse from commercial bakeries outside Connecticut; they then transport the bread to its final destination in-state. Like Saxon, the plaintiff truckers handle goods traveling in interstate commerce every day. If Saxon is intimately involved with the transportation of those goods, the truckers here are, too. The majority opinion, in a footnote, states that the Court does not consider whether the case could be decided on the ground that the interstate element of the exclusion is not satisfied, noting that it is not a simple issue. *See* Maj. Op. at 18 n.5. However, the district court acknowledged that defendants' products are manufactured out of state and are delivered to warehouses in-state, and as such, the plaintiffs meet the threshold of being "engaged in . . . interstate commerce." *See* 9 U.S.C. § 1**;** *Bissonette v. Lepage Bakeries Park St., LLC*, 460 F. Supp. 3d 191, 198 (D. Conn. 2020).

Pre-*Saxon* cases furnish the same conclusion. "The great weight of authority . . . holds that interstate travel is not strictly necessary" to qualify someone as a transportation worker. *Haider v. Lyft, Inc.*, No. 20-cv-2997, 2021 WL 1226442, at *4 (S.D.N.Y. Mar. 31, 2021). The First and Ninth Circuits, for instance,

have held that so-called "last-mile delivery drivers" for Amazon are transportation workers "[b]y virtue of their work transporting goods or people 'within the flow of interstate commerce,'" despite never personally crossing state lines. *Waithaka v. Amazon.com, Inc.*, 966 F.3d 10, 26 (1st Cir. 2020); *see also Rittmann v. Amazon.com, Inc.*, 971 F.3d 904, 916 (9th Cir. 2020). The theory is that, when a product crosses state lines in a "single, unbroken stream of interstate commerce" from origin to customer, interstate commerce becomes a "central part" of the job description of even those delivery drivers who take the product on the last, intrastate leg of the journey. *Carmona v. Domino's Pizza, LLC*, 21 F.4th 627, 630 (9th Cir. 2021).

So it is here. Like the Amazon drivers, the plaintiffs carry the goods for a portion of a single interstate journey and are "indispensable parts of [an interstate] distribution system." *Waithaka v. Amazon.com, Inc.*, 404 F. Supp. 3d 335, 343 (D. Mass. 2019). These facts also distinguish the plaintiffs from those "workers whose occupations have nothing to do with interstate transport" whom the Seventh Circuit has worried might be "swe[pt] in" by an overbroad reading of the Section 1 exemption: for instance, the "dry cleaners who deliver pressed shirts manufactured in Taiwan and ice cream truck drivers selling treats made with milk

1    from an out-of-state dairy." *Wallace v. Grubhub Holdings, Inc.*, 970 F.3d 798, 802 (7th

2    Cir. 2020).

3         Because the movement of goods through interstate commerce is a central

4    part of the plaintiffs' occupation as truckers, I would hold that they belong to a

5    "class of workers engaged in foreign or interstate commerce," 9 U.S.C. § 1, and

6    that the FAA does not apply to their Distributor Agreements.

7    **II.    The Majority's Errors.**

8         When considering the majority opinion's erroneous contrary conclusion,

9    note what it does and does not hold. The majority does not hold, as had the district

10   court, that the plaintiffs are not transportation workers because their few

11   additional customer service and sales responsibilities make them "more akin to

12   sales workers or managers" than "traditional . . . long-haul trucker[s]." *Bissonette*,

13   460 F. Supp. 3d at 200.[1] Nor does the majority exclude the plaintiffs from the FAA's

---

[1] The district court's reasoning is itself unconvincing. I have no issue with the premise that a transportation worker's job duties must be more than "tangentially related to [the] movement of goods." *Lenz v. Yellow Transp., Inc.*, 431 F.3d 348, 351-52 (8th Cir. 2005); *see also, e.g.*, *Hill v. Rent-A-Center, Inc.*, 398 F.3d 1286, 1289 (11th Cir. 2005) (requiring that transportation work be more than "incidental" to a worker's employment). But it is impossible to conclude on this record that transportation work is merely incidental or tangential to the plaintiffs' employment. The title of their contracts—"Distributor Agreements"—defines their principal purpose. The additional tasks the Distributor Agreements obligate the plaintiffs to perform emanate from the delivery work. And the defendants

1    residual exemption on the ground that their work is insufficiently connected to

2    interstate commerce; this question, after all, "may not be simple," as "there are

3    railroads that operate within a single state, terminus to terminus." Maj. Op. at 18

4    n.4.

5        Instead, the majority concludes that, even assuming these plaintiffs are

6    traditional truckers, and even assuming the interstate element is satisfied, they are

7    still not transportation workers, because they work for a bakery. The majority

8    reasons that "[t]he specification of workers in a *transportation industry* is a reliable

9    principle for construing the [residual] clause." Maj. Op. at 13 (emphasis in

10   original). It then instructs—without reference to the FAA's text, any case law, the

11   business world, or even a dictionary—that "an individual works in a

12   transportation industry if the industry in which the individual works pegs its

────────────────

offer no evidence to counter the complaint's allegations that the actual delivery of product constituted the lion's share of the plaintiffs' work. It is not surprising, then, that in a case strikingly similar to this one, the District of Massachusetts recently concluded that a group of the same defendants' Massachusetts-based delivery drivers qualified as transportation workers, principally because those plaintiffs had submitted "sworn affidavits stating that they spend the majority of their time making deliveries" and "there [was] nothing in the record to suggest that Plaintiffs were carrying out all of the other responsibilities included in the[ir] Distributor Agreements and business plans, or that those other responsibilities took up more time than driving." *Canales v. Lepage Bakeries Park St. LLC*, No. 1:21-cv-40065-ADB, 2022 WL 952130, at *5-*6 (D. Mass. Mar. 30, 2022).

9

1   charges chiefly to the movement of goods or passengers, and the industry's

2   predominant source of commercial revenue is generated by that movement." Maj.

3   Op. at 16. The majority concludes that that the plaintiffs "are in the bakery

4   industry, not a transportation industry," Maj. Op. at 5, because "the stores and

5   restaurants are not buying the movement of the baked goods, so long as they

6   arrive. The bill they pay is for the baked goods themselves; the movement of those

7   goods is at most a component of total price." Maj. Op. at 17-18. Long story short,

8   the plaintiffs are not transportation workers because they do not work for a

9   trucking company.

10      Can this really be the law? Certainly not under *Saxon*. Only by looking to

11  what their employer does generally—making and selling bread—can the majority

12  conclude that the plaintiffs are not transportation workers.[2] The plaintiffs drive

---

[2] In any event, I am not sure this even accurately depicts the defendants' commerce. No facts in the record concerned each defendant's "predominant sources of commercial revenue." For their part, the plaintiffs aver that discovery "would reveal that CK Sales [the defendant with whom the plaintiffs executed the Distributor Agreements] does not earn any revenues from the sale of baked goods, [but rather] that it primarily generates revenue by designing 'distribution territories' and selling the 'distribution rights' to perform deliveries within those territories to Distributors like Plaintiffs—that is, it generates revenue through the distribution of goods, not the manufacturing of them." Plaintiffs-Appellants' Petition for Rehearing or for Rehearing En Banc at 18.

trucks; they are not bakers. And while they happen to be employed by the bakery whose bread they deliver, this is nothing new. *See Loc. 50, Bakery & Confectionary Workers v. Gen. Baking Co.*, 97 F. Supp. 73, 74 (S.D.N.Y. 1951) (describing labor negotiations and strike of Bakery Drivers Union and production stoppage arising therefrom). Nor is it uncommon today for a company to hire its own delivery drivers. Scores of truckers in the United States work directly for beverage companies, furniture companies, retailers, food manufacturers, energy companies, and grocery stores. One cannot get far on an interstate without seeing an eighteen-wheeler soliciting for "Drive4Walmart.com."[3] *Saxon* makes plain that the drivers these companies hire do not cease to be transportation workers the moment they are brought in-house. If the workers' principal daily tasks involve them in the actual movement of goods through interstate commerce, they are transportation workers. *See Saxon*, 142 S. Ct. at 1790 (describing as the "central feature of a transportation worker" the "active[] engage[ment] in transportation of . . . goods across borders via the channels of foreign or interstate commerce" (internal

---

[3] *See* WALMART CAREERS, https://careers.walmart.com/drivers-distribution-centers/drivers (last visited Aug. 16, 2022) ("Traveling over 900 million miles a year, our private fleet of over 12,000 Class A drivers deliver countless loads of merchandise to Walmart and Sam's Club locations across the nation while representing the values associated with our Spark.").

1  quotation marks omitted)). By focusing on the nature of the defendants' business,

2  and not on the nature of the plaintiffs' work, the majority offers the sort of

3  industrywide approach *Saxon* proscribes.

4      The majority, of course, tries to sidestep *Saxon*. Its argument seems to be that

5  because Saxon worked for a company that likely "pegs its charges chiefly to the

6  movement of goods and passengers," Maj. Op. at 16, while the plaintiffs (per the

7  majority) do not, the "distinctions drawn in *Saxon* do not come into play." Maj.

8  Op. at 17. Yet *Saxon* is not so limited. To the contrary, the Court squarely foreclosed

9  that Southwest Airlines' "predominant source of commercial revenue" could be

10  relevant to whether Saxon was a transportation worker. Again: "Saxon is . . . a

11  member of a 'class of workers' based on what she does at Southwest, not what

12  Southwest does generally." *Saxon*, 142 S. Ct. at 1788.

13      But the majority conflicts with more than just *Saxon*. For decades, the "one

14  area of clear common ground among the federal courts" has been "that truck

15  drivers—that is, drivers actually involved in the interstate transportation of

16  physical goods"—are transportation workers. *Kowalewski*, 590 F. Supp. 2d at 482-

17  83. *See also Lenz*, 431 F.3d at 351 (declaring it "[i]ndisputabl[e]" that, if the plaintiff

18  "were a truck driver, he would be considered a transportation worker"); *Palcko v.*

12

1   *Airbone Express*, 372 F.3d 588, 593-94 (3d Cir. 2004) (assuming that truck drivers fall

2   within the residuary exemption); *Harden v. Roadway Package Sys.*, 249 F.3d 1137,

3   1140 (9th Cir. 2001) ("delivery driver" was transportation worker); *Smith v. Allstate*

4   *Power Vac. Inc.*, 482 F. Supp. 3d 40, 46 (E.D.N.Y. 2020) (truck driver for waste

5   removal company was transportation worker); *Veliz v. Cintas Corp.*, No. 03-cv-

6   1180, 2004 WL 2452851, at *5 (N.D. Cal. Apr. 5, 2004) ("The most obvious case

7   where a plaintiff falls under the FAA exemption is where the plaintiff directly

8   transports goods in interstate [commerce], such as [an] interstate truck

9   driver . . . .").

10      A natural corollary, as several courts have correctly recognized, is that "a

11  transportation worker need not work for a transportation company." *Saxon v. Sw.*

12  *Airlines Co.*, 993 F.3d 492, 497 (7th Cir. 2021), *aff'd Saxon*, 142 S. Ct. 1783. Rather, "a

13  trucker is a transportation worker regardless of whether he transports his

14  employer's goods or the goods of a third party." *Kienstra*, 702 F.3d at 957; *see also*

15  *Waithaka*, 966 F.3d at 23 ("[A] class of workers [need not] be employed by an

16  interstate transportation business or a business of a certain geographic scope to

17  fall within the Section 1 exemption[.]"); *Canales*, 2022 WL 952130, at *6 (rejecting

18  the argument that "an employer [must] be a transportation company for § 1 to

13

apply"). These observations align with the FAA's text: Section 1 asks whether a worker belongs to a class of workers "engaged in interstate or foreign commerce." 9 U.S.C. § 1. It does not ask for whom the worker undertakes her transportation work.

The majority ignores all these cases. And the ones it does rely on do not support its novel rule that only those employed by transportation companies can be transportation workers. The Second Circuit cases allegedly demonstrating a "transportation industry" limitation involved workers whose occupations did not involve the movement of goods or passengers. *See Adams v. Suozzi*, 433 F.3d 220, 226 n.5 (2d Cir. 2005) (sheriffs); *Maryland Cas. Co. v. Realty Advisory Bd. on Lab. Rels.*, 107 F.3d 979, 982 (2d Cir. 1997) (commercial cleaning workers); *Erving v. Virginia Squires Basketball Club*, 468 F.2d 1064, 1069 (2d Cir. 1972) (the basketball player Julius "Dr. J" Erving). These cases tell us little about people like the plaintiffs, who actually transport goods through interstate commerce every day. Nor does *Hill v. Rent-A-Center, Inc.*, an Eleventh Circuit case, help the majority. The majority asserts that *Hill* held that "an account manager at a company that rents and delivers furniture across state borders was not excluded from the FAA because he was 'not a transportation industry worker.'" Maj. Op. at 14 (quoting 398 F.3d at

1  1288). But the majority omits the court's reasoning. It was not because Hill worked

2  for a "company that rents and delivers furniture" that he was deemed not to be a

3  transportation worker. Instead, the court focused on the nature of Hill's work for

4  the company. Hill was not "within a class of workers within the transportation

5  industry" because, unlike the truckers here, he was an account manager who only

6  "incidentally transported goods interstate" as part of that job. *Hill*, 398 F.3d at 1289.

7  Even *Hill* thus recognized what *Saxon* instructs and the majority rejects: that the

8  FAA requires us to characterize the work of the employed, not the employer.

9         In any event, the majority's analysis fails on its own terms. Even assuming

10  that "[t]he specification of workers in a *transportation industry* is a reliable principle

11  for construing the [residual] clause," Maj. Op. at 13, the plaintiffs *do* work in a

12  transportation industry: trucking. A company may employ different classes of

13  workers, some in transportation and some outside it. I have little doubt that the

14  people who bake Wonder Bread are not transportation workers. *See Signal-Stat*

15  *Corp. v. Loc. 475, United Elec. Radio & Mach. Workers of Am.*, 235 F.2d 298, 303 (2d

16  Cir. 1956), *overruled on other grounds by Coca-Cola Bottling Co. of N.Y., Inc. v. Soft*

17  *Drink & Brewery Workers Union Loc. 812*, 242 F.3d 52 (2d Cir. 2001) (factory workers

18  who manufactured automotive electrical equipment were not transportation

15

workers because they were "merely engaged in the manufacture of goods for interstate commerce"). But the plaintiffs' mission, reflected on the first page of their Distributor Agreements, is to move goods. *See* App'x at 86 (stating that plaintiffs will be operating a "distributorship business"). They are actively engaged in the enterprise of interstate transportation in a way those bakers are not. And to the extent that, in efficiently delivering the defendants' baked goods, the plaintiffs incidentally satisfy that "fundamental tenet of the bakery industry" of "[m]aintaining a fresh market," App'x at 95, they do so in the same way that all truckers serve the industries of the companies whose products they deliver.

There are few classes of workers more paradigmatically "engaged in foreign or interstate commerce" than those who operate commercial trucks to deliver products. Abandoning this universally recognized principle, the majority departs from the FAA's text, the Supreme Court's clear instructions, and decades of case law nationwide.

**III. Other Issues.**

As in my dissent the first time around, I address two other brief points before concluding. The first is the defendants' argument, unavailing in my view, that Connecticut law provides an alternative basis to compel arbitration regardless

16

1   of the FAA's applicability. A few district courts in this Circuit have enforced

2   arbitration clauses under state law where the clauses "d[id] not plausibly suggest

3   that the parties intended for the clause[s] to be discarded in the event that the FAA

4   was found inapplicable." *Islam v. Lyft, Inc.*, 524 F. Supp. 3d 338, 359 (S.D.N.Y. 2021);

5   *see also, e.g.*, *Valdes v. Swift Transp. Co., Inc.*, 292 F. Supp. 2d 524, 528 (S.D.N.Y. 2003);

6   *Burgos v. Ne. Logistics, Inc.*, No. 15-CV-6840 (CBA) (CLP), 2017 WL 10187756, at *4

7   (E.D.N.Y. Mar. 30, 2017). This case is different. The arbitration agreement states

8   that it "shall be governed by the FAA and <u>Connecticut</u> law to the extent

9   <u>Connecticut</u> law is not inconsistent with the FAA." App'x at 199 (underlining in

10  original). But Connecticut law and the FAA are crucially inconsistent here: While

11  the FAA exempts transportation workers like the plaintiffs, Connecticut law

12  contains no analogous carve-out. *See* Conn. Gen. Stat. Ann. § 52-408. Given this

13  inconsistency, the arbitration agreement itself prohibits recourse to Connecticut

14  law should the FAA be held inapplicable.

15      My second brief point is in response to the concurrence's view that, once a

16  court decides that arbitration is appropriate, "the FAA mandates a stay whether

17  or not a party requests one." Concur. Op. at 4. To be clear, because I conclude that

18  arbitration should not have been compelled here, resolution of this issue is not

necessary to my analysis. I write only to correct what I see as the concurrence's misreading of Section 3 of the FAA. That provision states that a district court, "upon being satisfied that [an issue] is referable to arbitration . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. Section 3's use of the mandatory "shall," we have held, means where a party specifically applies for a stay pending the outcome of arbitration, the district court lacks discretion to dismiss the case instead. *Katz v. Cellco P'ship*, 794 F.3d 341, 346 (2d Cir. 2015).

It does not follow, however, that where a party does not request a stay—or where, as here, a party expressly seeks dismissal—a district court is still required to issue a stay. Section 3 is triggered "on application of one of the parties [to] stay the trial" and where, among other things, the "applicant for the stay is not in default." 9 U.S.C. § 3. This reference to the "applicant for the stay" thus squarely contradicts the concurrence's assertion that "[t]he text does not contemplate (let alone require) a separate application to stay proceedings in the district court." Concur. Op. at 5. Accordingly, where a party does not request a stay, there is no

18

1   "application [to] stay the trial," and a district court retains the authority to dismiss

2   the action. *See Katz*, 794 F.3d at 346 (explaining that, absent a statutory mandate to

3   stay proceedings, district courts "enjoy an inherent authority to manage their

4   dockets"); *Nicosia v. Amazon.com, Inc.*, 384 F. Supp. 3d 254, 277 (E.D.N.Y. 2019)

5   ("Although Section 3 of the FAA only speaks of staying proceedings, it is well-

6   settled than an arbitrable dispute may be dismissed in lieu of a stay if the

7   defendant requests dismissal."); *Zambrano v. Strategic Delivery Sols., LLC*, No. 15-

8   CV-08410, 2016 WL 5339552, at *10 (S.D.N.Y. Sept. 22, 2016) ("[B]ecause

9   Defendants seek dismissal rather than a stay . . . this Court has discretion whether

10   to stay or dismiss Plaintiffs' action under the FAA."); *Benzemann v. Citibank N.A.*,

11   622 F. App'x 16, 18 (2d Cir. 2015) (summary order) (endorsing this view).

## Conclusion

13   The plaintiffs' daily work transporting goods in the stream of interstate

14   commerce places them in the transportation worker exemption's heartland. They

15   belong to a "class of workers engaged in foreign or interstate commerce,"

16   9 U.S.C. § 1; the FAA does not apply to their Distributor Agreements; and, for the

17   second time, I respectfully dissent. Now it rests with our Court as a whole, or the

18   Supreme Court, to correct the majority's mistakes.