# NO. 20-1681

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

Neal Bissonnette, Individually and on behalf of all others similarly situated,
Tyler Wojnarowski, Individually and on behalf of all others similarly situated,

*Plaintiffs-Appellants*,

v.

LePage Bakeries Park St., LLC,
C.K. Sales Co., LLC,
Flowers Foods, Inc.,

*Defendants-Appellees*.

On appeal from an order and judgment of the
United States District Court for the District of Connecticut,
Civil Action No. 3:19-cv-00965 (KAD)

**PLAINTIFFS-APPELLANTS' REPLY BRIEF REGARDING FURTHER
APPELLATE PROCEEDINGS**

Harold L. Lichten, Esq.
Matthew Thomson, Esq.
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
hlichten@llrlaw.com
mthomson@llrlaw.com
Attorneys for *Plaintiff-Appellants*

# **TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................1

II.   FLOWERS'S RECITATION OF THE FACTS IS INCONSISTENT WITH THE RECORD IN THIS CASE AND SIMILAR CASES .......................................2

III.  PLAINTIFFS ARE TRANSPORTATION WORKERS ...............................4

IV.  PLAINTIFFS ARE ENGAGED IN INTERSTATE COMMERCE ...............7

V.   DEFENDANTS WAIVED ANY ARGUMENT THAT THE AGREEMENT IS NOT A "CONTRACT OF EMPLOYMENT," AND REGARDLESS, THIS ARGUMENT FAILS ................................................................................9

VI.  CONNECTICUT LAW DOES NOT PROVIDE AN ALTERNATIVE GROUNDS TO COMPEL ARBITRATION ..........................................................12

# TABLE OF AUTHORITIES

Aleksanian v. Uber Techs. Inc.,
  2023 WL 7537627 (2d Cir. Nov. 14, 2023) ..................................................5

Amos v. Amazon Logistics, Inc.,
  74 F.4th 591 (4th Cir. 2023) ......................................................................11

Bogle-Assegai v. Connecticut,
  470 F.3d 498 (2d Cir. 2006) ........................................................................9

Brock v. Flowers Food, Inc.,
  673 F. Supp. 3d 1180 (D. Colo. 2023) .................................................. 13, 14

Canales v. CK Sales,
  67 F.4th 38 (1st Cir. 2023) ............................................................ 4, 6, 9, 12

Fli-Lo Falcon, LLC v. Amazon.com, Inc.,
  97 F.4th 1190 (9th Cir. 2024)............................................................ 11, 12

Green v. U.S. Xpress Enterprises,
  434 F. Supp. 3d 633 (E.D. Tenn. 2020). .....................................................14

Immediato v. Postmates,
  54 F.4th 67 (1st Cir. 2022) ...........................................................................8

Martins v. Flowers Foods, Inc.,
  463 F. Supp. 3d 1290 (M.D. Fla. 2020) ............................................. 13, 14

New Prime Inc. v. Oliveira,
  586 U.S. 105 (2019). ...................................................................... 1, 10, 11

Noll v. Flowers Foods, Inc.,
  442 F. Supp. 3d 345 (D. Me. Jan. 29, 2020) .................................................3

Rittmann v. Amazon.com, Inc.,
  971 F.3d 904 (9th Cir. 2020) .................................................................7, 15

Rivera v. Ryno Trucking, Inc.,
  2021 WL 5114490 (M.D. Fla. Nov. 3, 2021)..............................................13

Rejouis v. Greenwich Taxi, Inc.,
  750 A.2d 501 (2000)....................................................................................15

Schnabel v. Trilegiant Corp.,
  697 F.3d 110 (2d Cir. 2012) .........................................................................5

Sw. Airlines Co. v. Saxon,
  596 U.S. 450 (2022) .................................................................................6, 7

iii

Tillman Transportation, LLC v. MI Bus. Inc.,
   95 F.4th 1057 (6th Cir. 2024). ....................................................................12

Waithaka,
   966 F.3d at 26 .............................................................................................7

Wallace v. Grubhub,
   970 F.3d 798 (7th Cir. 2020) ......................................................................8

Walling v. Jacksonville Paper Co.,
   317 U.S. 564 (1943) ....................................................................................8

**Other Authorities**

Black's Law Dictionary
   (12th ed. 2024)..........................................................................................14

## I.     INTRODUCTION

There are two issues remaining regarding application of the Federal Arbitration Act in this case:  1) whether the Plaintiff truck drivers in this case were transportation workers, and 2) whether they were engaged in interstate commerce. On the current record, Plaintiffs-Appellants succeed on both issues, and they are exempt from the FAA.  To the extent that this issue cannot be resolved on the current record, then discovery should be permitted.

In their recent Response, Defendants-Appellees raise a new argument and contend that Plaintiffs are not subject to the Section 1 exemption because they did not sign "contracts of employment." See Def.'s Br. (ECF No. 228) at 19. That argument has been waived and, regardless, Defendants' new argument is foreclosed by New Prime Inc. v. Oliveira, 586 U.S. 105 (2019).

In addition, Defendants' argument that Connecticut state law requires arbitration of the dispute is a nonstarter because the arbitration agreement only permits application of Connecticut law where it is "not inconsistent" with the FAA.

**II.    FLOWERS'S RECITATION OF THE FACTS IS INCONSISTENT WITH THE RECORD IN THIS CASE AND SIMILAR CASES**

In an attempt to construct a factual scenario supporting its view, Flowers makes multiple allegations that are both unsupported by this record and contradicted by the facts of similar cases involving the same delivery drivers.[1]

For example, Flowers baldly asserts that the Plaintiffs are merely local businessmen who buy their products from Flowers at an in-state warehouse and then proceed to sell them to local stores.  See Def.s' Br. (ECF No. 228) at 8. But these are not the true facts and nothing in the record supports these assertions.

First, Flowers has always (until now) contended that its drivers are part of the interstate movement of goods because when its out-of-state bakeries fulfill orders for a large retail customer (such as a Walmart location), the product is shipped from the factory to a regional warehouse, and then almost immediately loaded on to delivery trucks driven by Plaintiffs to be delivered fresh to the intended supermarket. See JA36 (Defendants' Answer stating that "Plaintiffs … [were] transporting certain goods originating out of state, and [] there is a practical continuity of movement of these goods until they reach retail customers…."); Brief

---

[1]    Because Section 1 of the FAA looks at the "class of workers" involved, it is particularly appropriate to look to the several other Flower Foods cases around the country where the courts have made findings regarding the same or similar issues about this workforce.

of Appellees, <u>Ash v. Flowers Foods Inc.</u>, No. 23-30356 (5th Cir.), ECF No. 45 at 12 (submitted herewith at Add. 1 – Add. 61) ("[t]he Distributors' leg of the journey from a Louisiana warehouse to the Louisiana customer was part and parcel of the baked goods' interstate transportation from the out-of-state bakeries to the Louisiana customers.").

Flowers responds by saying that its factual showing in <u>Ash</u> should be disregarded because the breadth of "interstate commerce" under the FLSA and the FAA are distinct. This is a red herring. Defendants' assertions are not legal concessions; rather, Flowers has made this affirmative *factual* showing through Declarations in <u>Ash</u>, a sample of which is submitted here at Add. 62. This factual showing precludes re-litigation of the same issue in this case.

In another case, the court rejected Flowers's contention that the class of workers involved are actually salespersons, recognizing that drivers did not perform "sales" work because "[a]pproximately 95% of total sales are generated by large chain accounts" and Defendants have "primary responsibility for setting the terms for pricing, products, and volumes, as well as setting delivery expectations and customer requirements for these large accounts." See <u>Noll v. Flowers Foods, Inc.</u>, 442 F. Supp. 3d 345, 352 (D. Me. Jan. 29, 2020).

Thus, the vision created by Flowers's Brief does not exist, and certainly is not supported by this record. As Plaintiffs have averred, the full-time delivery

work that they perform is essentially the same work that these Plaintiffs did when they were full-time delivery employees of Flowers in 2015. JA0003.  Thus, for defendants to suggest that the Plaintiffs are simply buying the goods at the warehouse and then selling them to local stores is a fantasy.

### III.      PLAINTIFFS ARE TRANSPORTATION WORKERS

Defendants first rely on an argument that has already been rejected in Canales v. CK Sales.  See 67 F.4th 38 (1st Cir. 2023), cert. denied 144 S. Ct. 1391 (2024).  They argue that Plaintiffs "are business owners, not truck drivers," Defs.' Br. (ECF No. 228) at 2, and therefore they are not transportation workers exempt from the FAA.

However, the facts in Plaintiffs' Complaint clearly state that Distributors "work at least forty hours per week delivering [] baked goods for defendants…." JA17 at ¶ 33. The Plaintiffs pick-up bakery products "from one of Defendants' commercial bakery locations, and then transport those goods within the flow of interstate commerce by delivering them to various supermarkets and retail locations." JA15 at ¶ 18.  They perform this delivery work five days per week. JA17 at ¶ 30.

Defendants have **_never_** disputed the fact that Plaintiffs spend the majority of their time driving trucks and delivering bread products.  Up until now, Defendants have also agreed that the allegations in their pleadings are properly before the

4

Court. <u>See</u> Def.s' Resp. Br. (ECF No. 87) at 38 (agreeing that "this Court can resolve [the Section 1 issue] ***on the basis of the pleadings*** and the Distributor Agreement alone.") (emphasis added). Nevertheless, in their recent Brief, Defendants argue that a reviewing court should "disregard[]" the allegations in the Complaint. Defs.' Br. (ECF No. 228) at 27. This is incorrect. On a motion to compel arbitration, this Court "accept[s] as true for purposes of th[e] appeal factual allegations in the plaintiffs' complaint that relate to the underlying dispute between the parties." <u>Schnabel v. Trilegiant Corp.</u>, 697 F.3d 110, 113 (2d Cir. 2012); <u>Aleksanian v. Uber Techs. Inc.</u>, 2023 WL 7537627, at *2 (2d Cir. Nov. 14, 2023) (when "a court considers the motion to compel before discovery has taken place, and in the context of a motion to dismiss, it treats the allegations in plaintiffs' complaint as true.").[2]

Faced with undisputed facts regarding Plaintiffs' delivery work, Defendants contend that Plaintiffs' actual delivery work does not matter because, according to Defendants, Plaintiffs also had other non-transportation responsibilities, and they

---

[2] Defendants misrepresent Plaintiffs' position regarding the applicable standard and the evidence before the court. Below, Plaintiffs argued that "[t]o the extent Defendants now attempt to create a factual dispute regarding the nature of Plaintiffs' delivery work, at the motion to dismiss stage the factual assertions in the Complaint must be taken as true." JA0171. Plaintiffs also acknowledged that the standard was "similar" to the summary judgment standard, <u>see</u> JA0367, in that if Defendants had disputed the facts in the complaint, it could have created a "factual dispute" that prevented a determination of the issue. However, Defendants have ***never*** disputed the fact of Plaintiffs' full-time delivery work.

could have hired others to perform the deliveries.  Defs.' Resp. Br. (ECF No. 228) at 22.  Notably, there is nothing in the record identifying whether Plaintiffs ever performed these additional "responsibilities," and no evidence that Plaintiffs hired others to assist them.[3]

The First Circuit rejected this same argument, holding that the "actual work" of the plaintiffs that matters. Canales, 67 F.4th at 45 (holding that inquiry focuses on "the work that [plaintiff] actually did") see also Sw. Airlines Co. v. Saxon, 596 U.S. 450, 456 (2022) (holding that the Section 1 exemption emphasizes "the actual work" typically performed by workers). Where it is clear that workers "frequently" perform transportation work, they are exempt from the FAA, and they do not "have their transportation-worker status revoked merely because they also have other responsibilities." Canales, 67 F.4th at 45. Just as in Canales, here the "plaintiffs frequently deliver goods in trucks to stores. So they are transportation workers, even though they may also be responsible for other tasks …." Id. at 46.

---

[3]    Defendants falsely state that Plaintiffs' transportation work in this case was "voluntarily undertaken."  Defs.' Br. at 22.  This is incorrect.  The Distributor Agreement requires full delivery service to all of Flowers's customers in a specific geographic area.  See JA0087-0089.  Each Plaintiff was required to sign a "personal guaranty" stating that he would "immediately ensure timely and complete performance" if the work was not done. See JA 0112.

6

## IV.     PLAINTIFFS ARE ENGAGED IN INTERSTATE COMMERCE

Defendants also take the unprecedented position that Plaintiffs are not "engaged in foreign or interstate commerce" because they "never cross state lines." Defs.' Br. (ECF No. 228) at 12.  This argument has been rejected by the Supreme Court.  See Saxon, 596 U.S. at 461 (rejecting airline's argument that the "transportation worker exemption" is limited to "workers who physically move goods or people across foreign or international boundaries").

The courts that have addressed this issue in the context of truck drivers have similarly held that a driver is exempt from the FAA where she hauls "goods on the final legs of interstate journeys." See Waithaka, 966 F.3d at 26; Rittmann v. Amazon.com, Inc., 971 F.3d 904, 915 (9th Cir. 2020) (drivers are engaged in interstate commerce where they carry goods that "remain in the stream of interstate commerce"); see also Pl.'s Br. (ECF No. 224) (discussing cases).  This is true regardless of whether the worker crosses state lines.

Thus, the relevant question is whether the goods delivered by Plaintiffs "remain in the stream" of interstate commerce while Plaintiffs deliver them to the assigned grocery store.  That question has been answered by Flowers's pleadings, see JA0036, as well as Flowers showing in Ash that its drivers were engaged in interstate commerce because they transported goods that were on the final leg of a

continuous interstate journey. See Ash v. Flowers Foods, Inc., No. 23-30356, 2024 WL 1329970 (5th Cir. Mar. 28, 2024).

Defendants attempt to distinguish this case from Waithaka, Rittman, and the most relevant authority on the basis that, according to Defendants, the Plaintiffs "take title" to the products when they load them at the warehouse.[4] Defs.' Br. at 16. This does not sever the products' interstate jounrey. See Walling v. Jacksonville Paper Co., 317 U.S. 564, 569 (1943) ("The … circumstance that title to the goods passes [] on the intermediate delivery [at a warehouse] does not mean that the interstate journey ends at the warehouse").

Finally, the cases that Defendants rely on are inapposite. Defendants cite to Wallace v. Grubhub, 970 F.3d 798 (7th Cir. 2020), Immediato v. Postmates, 54 F.4th 67 (1st Cir. 2022), and similar decisions in which the workers were akin to pizza delivery drivers, picking up meals from restaurants and delivering them to local customers. See Postmates, 54 F.4th at 71. However, these decisions analyze a different segment of the interstate transportation of goods. In Postmates, the First Circuit observed that after a meal is prepared at a local restaurant, the delivery

---

[4] Further, it is not correct that Plaintiffs take full "title" to the products. The Distributor Agreement sets forth countless ways that Flowers maintains control over the products after Plaintiffs pick them up. This includes controlling where products may be taken, the price of the products, display requirements, and how long the products may remain on the store shelves before they are deemed "stale" and must be returned to Flowers. See generally JA0085-0106.

driver responsible for bringing the food to the customer is no longer moving goods in interstate commerce.  See Postmates, 54 F. 4th at 78.  However, Postmates and similar cases hold that the leg of the journey from a warehouse to a retailer – the precise leg performed by Plaintiffs in this case – *is part of the interstate journey of the goods*.  See id. at 80 (distinguishing Postmates drivers from drivers who "make deliveries on behalf of wholesalers or distributors that transport goods to local retail establishments").  Thus, the cases relied upon by Defendants support Plaintiffs' position.

## V.  DEFENDANTS WAIVED ANY ARGUMENT THAT THE AGREEMENT IS NOT A "CONTRACT OF EMPLOYMENT," AND REGARDLESS, THIS ARGUMENT FAILS

It is "well-established" that an appellate court will not consider an issue raised for the first time on appeal. Bogle-Assegai v. Connecticut, 470 F.3d 498, 504 (2d Cir. 2006).  Over the past five years, Defendants have raised only three arguments regarding the Section 1 exemption:  1) Plaintiffs do not work in the "transportation industry," see JA0063; 2) Plaintiffs are not "transportation workers" because they have "business owner" responsibilities, see JA0065; and 3) Plaintiffs' transportation work is not "interstate."  See JA0069.  Defendants have *never* argued that Plaintiffs' Agreements are not "contracts of employment. This

issue cannot be raised at this advanced stage of the case, after full briefing at the district court, the Court of Appeals, and the Supreme Court.[5]

To the extent the Court reaches this argument, it is foreclosed by the Supreme Court's decision in New Prime.  See 586 U.S. 105 (2019).  There, the Supreme Court held that the term "contract of employment" is defined as it was in 1925 when the FAA was enacted. New Prime, 586 U.S. at 114.  The Court held that one's "modern intuition" regarding employment is irrelevant, because at the time the FAA was enacted, a contract of employment "meant nothing more than an agreement to perform work[,]" encompassing agreements "between employers and employees but also agreements that require independent contractors to perform work." Id.[6]  Here, Plaintiffs performed work for Defendants and the Distributor Agreement is the contract under which they performed this work; thus, the Distributor Agreement is a "contract of employment."

Though Defendants argue that Plaintiffs here signed their agreements on behalf of corporate entities, this is exactly what the company argued in New Prime,

---

[5] Defendants' waiver of this argument is not surprising because these same Defendants, represented by many of the same counsel, also waived this argument when they failed to raise it in Canales.  See 67 F.4th at 44.

[6]      The record in New Prime was replete with dozens of examples of contemporaneous references to "contracts of employment" of independent contractors, law firms, and numerous other "contracts of employment" that bear no little resemblance to a twenty-first century employment contract.  See Add. at 90.

and those arguments were rejected. There, the defendant argued that the truck drivers did not work under "contracts of employment" because the contracts permitted them "to hire other drivers to provide … services under the Agreements," and the contracts were signed on behalf of "an independent business, Hallmark Truck LLC." Petitioner's Br. at 4, New Prime, Inc. v. Oliveira, 2018 WL 2278112, at *4, *33 (U.S. May 14, 2018) (Add. 72). Thus, Defendants' new "contract of employment" argument was presented and rejected in New Prime.

Defendants cite to several decisions holding that a corporation is not a "transportation worker" exempt from the FAA.[7] See, e.g., Fli-Lo Falcon, LLC v. Amazon.com, Inc., 97 F.4th 1190, 1195–96 (9th Cir. 2024) (holding that "a nonnatural person such as a business entity … is not and cannot be a transportation worker…."). These cases involve instances in which corporate entities *as named plaintiffs* have brought suit asserting breach of contract and similar claims, and attempted to argue that they were exempt from the FAA pursuant to the transportation worker exemption. That issue is not present in this case, where Plaintiffs Bissonnette and Wojnarowski are individual workers invoking the Section 1 exemption, just like Mr. Oliveira in New Prime. Indeed, the lower court

---

[7]     Importantly, the definition of a "transportation worker" is distinct from the definition of a "contract of employment."

11

in <u>Fli-Lo Falcon</u> specifically distinguished the circumstances in that case from

<u>Canales v. CK Sales</u>, noting that in <u>Canales</u> (as in this case), the plaintiffs had

"filed suit in their individual capacity." <u>Fli-Lo Falcon, LLC v. Amazon.com Inc.</u>,

2022 WL 4451273, at *6 (W.D. Wash. Sept. 8, 2022), aff'd, 97 F.4th 1190 (9th Cir.

2024). The court in <u>Tillman</u> made a similar observation when it held that the

corporation that had brought suit was not a "transportation worker," pointing out

that Mr. Tillman "individually did not bring this lawsuit. His company did."

<u>Tillman Transportation, LLC v. MI Bus. Inc.</u>, 95 F.4th 1057, 1063 (6th Cir. 2024).

Thus, the decisions in <u>Fli-Lo Falcon</u>, <u>Tillman,</u> and similar cases expressly

distinguished their holdings from the precise circumstances of this case.

### VI.  CONNECTICUT LAW DOES NOT PROVIDE AN ALTERNATIVE GROUNDS TO COMPEL ARBITRATION

As explained above, Plaintiffs are exempt from the FAA. Contrary to

Defendants' argument, the district court correctly held that in the absence of the

FAA, Connecticut law cannot be applied to compel arbitration.

Procedurally, Defendants argue that the Court should sidestep the Section 1

exemption question and simply order arbitration under Connecticut law.  But that

process is foreclosed by the language of the Parties' agreement, which Flowers

drafted.  The agreement states that covered disputes "shall be submitted to and

determined exclusively by binding arbitration under the Federal Arbitration Act (9

12

U.S.C. §§ 1, et seq.) ("FAA")…." JA0117. The governing law provision further states: "This Arbitration Agreement shall be governed by the FAA and Connecticut law to the extent Connecticut law is not inconsistent with the FAA." See JA0119. Thus, a reviewing court must first assess the applicability of the FAA (if any), otherwise there is no way to determine in the first instance whether Connecticut law may be "inconsistent" with it.[8]

Similar to the lower court there, two other courts have encountered this identical provision in Flowers's distributor agreement and have agreed with Plaintiffs. See Martins v. Flowers Foods, Inc., 463 F. Supp. 3d 1290 (M.D. Fla. 2020), vacated and remanded, 852 F. App'x 519 (11th Cir. 2021);[9] Brock v. Flowers Food, Inc., 673 F. Supp. 3d 1180, 1190 (D. Colo. 2023). Those courts first considered the applicability of the FAA and the Section 1 transportation worker exemption. Upon holding that the drivers were exempt from the FAA, the

---

[8]    Importantly, this is not a question of whether state arbitration law is constitutionally preempted by the FAA.   The only question is one of contract interpretation.

[9]    The decision in Martins was reversed and remanded based on the then-applicable Eleventh Circuit law regarding the Section 1 exemption.  However, the portion of the Martins ruling regarding interpretation of the contract "remains valid." Rivera v. Ryno Trucking, Inc., 2021 WL 5114490, at *2 (M.D. Fla. Nov. 3, 2021).

13

courts proceeded to determine whether the designated state law was "inconsistent" with the FAA.

The Martins court addressed this precise question (albeit one that referenced Florida and Georgia law, not Connecticut) as follows:

> The FAA does not govern the agreements because… Plaintiffs are transportation workers exempt from the Act. Florida or Georgia law are in that regard both "inconsistent with" the FAA because neither contains a similar transportation worker exemption. Given this fundamental inconsistency, it appears that it is precisely *against* the parties' intent to apply Florida or Georgia law to the arbitration agreements.

Martins, 463 F. Supp. 3d at 1299 (internal quotation marks and citations omitted). The Court held the same in Brock. Brock, 673 F. Supp. 3d at 1190 ("application of the [Colorado's] Uniform Arbitration Act, which does *not* have a similar transportation worker exemption, would be wholly inconsistent with § 1").

Defendants argue that they intended for Connecticut law to "fill the gap even if a court were to somehow find that the FAA did not apply." Defs.' Br. (ECF No. 228) at 24. If that was their intent, Flowers could have written that the agreement was governed by "the Federal Arbitration Act . . . or, if the Federal Arbitration Act is held not to apply, the arbitration laws of the State of [Connecticut]." See Green v. U.S. Xpress Enterprises, 434 F. Supp. 3d 633, 637 (E.D. Tenn. 2020). It did not do so.

Finally, the Parties agree that there is no ambiguity. The term "inconsistent" plainly means that two things lack agreement or are not compatible. See Black's

14

Law Dictionary (12th ed. 2024). Even if there were ambiguity, it would be construed against Flowers, which drafted the Agreement. Rejouis v. Greenwich Taxi, Inc., 750 A.2d 501, 506 (2000). As in Rittmann, "[b]ecause it is not clear that the parties intended to apply Washington law to the arbitration provision in the event the FAA did not apply, we construe ambiguity in the contract against Amazon to avoid that result." 971 F.3d at 920.

Finally, Flowers placed this "inconsistency" language its agreements nationwide for a self-serving reason. Flowers was fine having the FAA and any state arbitration law *consistent* with the FAA govern, but it did not wish to be burdened by any future changes to state arbitration law that might be more favorable to workers than what is available under the FAA. Thus, Flowers chose language prohibiting application of state arbitration law whenever it was *inconsistent* with the FAA. Having used this language to specifically protect itself against present and future state arbitration laws that it considered problematic, it should not be given a "do over" so that it can apply an inconsistent state arbitration law.

15

**Dated:** July 31, 2024                    Respectfully submitted,


 */s/ Harold L. Lichten*
Harold L. Lichten,
Matthew W. Thomson
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
hlichten@llrlaw.com
mthomson@llrlaw.com

16

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rules of Appellate Procedure 32(a)(7)(B), and 29(d), I hereby certify that this brief contains 3,496 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii), as established by the word count of the computer program used for preparation of this brief.

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 14-point size Times New Roman font.

Dated: July 31, 2024

/s/ Harold L. Lichten_____
Harold L. Lichten, Esq.
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
hlicten@llrlaw.com

*Attorney for Plaintiff-Appellants*

17

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 31, 2024, true and correct copies of the foregoing were served on counsel of record for each of the Defendants-Appellees, via the CM/ECF system.

Dated: July 31, 2024       /s/ Harold L. Lichten_____
                       Harold L. Lichten, Esq.
                       Lichten & Liss-Riordan, P.C.
                       729 Boylston Street, Suite 2000
                       Boston, MA 02116
                       (617) 994-5800
                       hlichten@llrlaw.com

                       *Attorney for Plaintiffs-Appellants*